# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSHUA MELLO

and RACHEL WARE
                    *Plaintiff,*

                                        C.A. No. 1:23-cv-000479-JJM-LDA;
vs.                                         1:23- cv-000480-JJM-LDA

JOHN ROCCHIO and EDWARD ARRUDA
*Defendants*


## RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS FROM

## PLAINTIFF'S JOSHUA MELLO &  RACHEL WARE


Dear Attorney Scott-Benevides,

I am writing in response to your request for documents dated March 14, 2024, in connection with the above-referenced case.

After a careful review of your request, it has been determined that several of the documents sought are not relevant to the claims or defenses at issue in this case. Specifically, Requests No. 8,9,11,12 and 13.

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The documents you have requested do not appear to meet this standard, as they do not pertain to the matters at issue as outlined in the complaint and subsequent pleadings.

We have prepared all relevant and discoverable documents that pertain directly to the

claims and defenses in this case.

In the meantime, we request that you withdraw your request for the aforementioned documents. Should we not hear back from you within 10 business days, we will proceed under the assumption that you have agreed to this adjustment in your request.

Thank you for your understanding and cooperation. Please feel free to contact me if you wish to discuss this matter further.

Sincerely,

Joshua Mello
Rachel Ware
57 Rolfe Square unit 10113
Cranston, RI 02910
kskustomsrideons@gmail.com

## II. DOCUMENT REQUESTS

1. See folder on jump drive called damages

2. See folder on jump drive called claims.

3. There is no correspondence about the mattress set forth in the complaint with the city of Cranston.

4. There are several agencies we have submitted complaints to about the matters set forth in the complaint. Several have their own complaint form submission and we are not able to supply what we submitted. The copies of the complaints that we have are supplied here in this request for documents. We filed complaints with the Office of Professional Standards at the Cranston Police Department, the RI ACLU, the FBI, the US Attorney General's Office, and the RI Attorney General's office.

5. There is no correspondence about the matters set forth in the complaint with the Cranston School Department.

2

6. Western Hills Middle School is part of the Cranston School department please refer to answer number 5.

7. Please refer to the answer in number 5.

8. Not applicable

9. Not applicable

10. These were supplied and already asked for in question 1.

11. Not applicable

12. Not applicable

13. Not applicable

14. Not available as of the date of this request.

15. To supply what you are asking for we have submitted the Police Report from 10-21-21, the school surveillance video, the trial audio, and the complaints we have submitted to other agencies, along with the cell phone videos from 10-21-21.

16. Attorney Steven Crawford's recusal letter to the courts.

17. The Western Hills surveillance video and the cell phone videos have already been supplied.

18. We have supplied the complaints we submitted to the Office of Professional Standards, Officer Parker at the Cranston Police Department.

## PLAINTIFFS DISCOVERY SUPPLIED

1. Western Hills Middle School Surveillance from 10/21/21

2. Cell phone video from the incident that happened at Western Hills Middle school on 10/21/21.

3. The trial audio of Mr. Mello's case from Kent County Courthouse, recorded in November of 2022.

4.  Joshua Mello's tax information for his small business.

5.  News articles of  the incident at Western Hills Middle School.

6.  Documents for the legal grounds for the complaint.

7.  US codes that were violated.

8.  Receipt for payment of trial audio.

9.  Complaint responses from RIACLU, Cranston PD, US Attorney General

10. The RI Interlocal Trust Risk Management Insurance Certificate for Cranston Public
    Schools.

11. Joshua Mellos complaints to the Office Of Professional Standards.

12. Medical records for Joshua Mello from the ER visit.

13. Acknowledgement receipt for receiving my file from Carl Hurvich

14. Image of Officer John Rocchio kneeling on Joshua Mello.

15. Recusal letter from Joshua Mello's Lawyer, Attorney Stephen Crawford.

16. Cranston Police Report

As we all know, police officers are held to a higher standard and are entrusted with the duty to serve and protect our communities. However, when an officer deliberately lies while testifying, it not only undermines the integrity of our justice system but also jeopardizes the lives and futures of those affected by their dishonesty. Law enforcement officers are held to a higher standard. They are entrusted with the responsibility to serve and protect, upholding the principles of truth and justice. When an officer engages in perjury, it is not only a breach of their duty but also a criminal offense that should be met with appropriate accountability.

In the case at hand, Officer John Rocchio's false statements had a significant impact on the outcome. Perjury is a serious criminal offense that should not be taken lightly. There is an expectation that law enforcement officials will uphold the truth and act with integrity at all times and when providing sworn testimony. Lives are affected, justice is compromised, and faith in our legal system is shaken when this integrity is broken. It is imperative that actions are taken to address this matter promptly and transparently. By doing so, you will send a clear message that dishonesty within law enforcement will not be tolerated, ultimately upholding the principles upon which our justice system was built.

During the District Court case that Officer Rocchio testified at, in November of 2022 he made various false statements while under oath. Starting with his statement that the court order was in effect, to the moment before my assault where he was "moving me back", to him fabricating the actions that took place during the assault and handcuffing of me, along with lies about why an officer of the law decided to smash a Father who was under arrest off the hood of a police cruiser These actions are unbecoming an officer of the law.

The moment a person is handcuffed and told they are under arrest there is a certain level of care expected when being transported and detained. After being assaulted, then handcuffed and unlawfully arrested, my civil rights were further violated as the two SRO's walked me out to the cruiser parked in the fire lane outside Western Hills Middle School. Both Officer Arruda and Officer Rocchio were on either side of me, holding my arms. When we

reached the front of the cruiser Officer Rocchio, who was on my right side, placed both of his hands on my back and smashed me so hard off the hood of the police cruiser that both my feet came off the ground. Under oath at Kent County courthouse he states that while walking me out to the car I was pushing back and because of the pushing back when we reached the cruiser he went to push me forward and I ended up on the car. The video evidence shows the contrary. Watch Western Hills Middle School surveillance of the main entrance outside, go to 8:45 am and see that I was not pushing back. Officer Rocchio decided to continue assaulting me while I was in handcuffs.He put both of his hands on my back and pushed me aggressively forward. And then he lies under oath about the event in which there is video evidence. RI General Law 11-33-1 states that every person under oath or affirmation who knowingly makes any false material declaration shall be deemed guilty of perjury. Perjury is a criminal offense committed by a person who, having been sworn to tell the truth in a matter pending in a court of justice, willfully and deliberately lies.

    Prior to this display of use of force, the assault took place inside the school and I was unlawfully arrested. Subsequently Rocchio continues to fabricate what happened to justify his actions while testifying in the court of law. He stated that he was moving me back to get Rachel and I closer to the exit. There is video evidence again which will prove this too is a lie. I was asking for 6 feet, I wanted to regain my personal space. I took a few decent steps away from the SRO's which landed me closer to the exit, unfortunately they were immediately back on top of me. There was no officer moving me back. I was retreating away due to their aggressive and hostile manner. Officer Rocchio was present for 4 minutes before he puts hands on me and started assaulting me.I was not pushing off the walls in the vestibule while handcuffed. I was in pain and asking to be stood up. He said I was resisting when I was already under arrest after two grown men landed on top of me assaulted me and then handcuffed me. Even a judge found me not guilty of resisting arrest as my own video shows them on top of me and I am unable to move.  No warning saying you are under arrest, just straight attack. Deescalation does not

happen in that short of a window of interaction. Lets also keep in mind that Officer Rocchio is a certified L.E.A.D.S. instructor by Lockup for Cranston Police Department. The tactical options they teach were not applied to this situation.

Another discrepancy in this case in which Officer Rocchio continued to lie, is the differences between his Narrative in the police report and what he swore to while on the stand. If you refer to his Narrative in the police report from October 21, 2021, he wrote that he measured the knives, and they were photographed and logged for evidence. Specifically under oath he mentioned how now BCI took custody of the property and measured, and photographed the knives.Even while on the stand he says he put the knives in his pocket when I have video evidence that shows him handing them to Officer Arruda. The lies continue as Rocchio states in his narrative in the police report that  he was able to secure all three knives in my pants pocket? The officer lied in the police report and then continues to lie under oath. This is not acceptable. Chain of custody is a pretty big deal. Knowing who did what with the evidence too. Why does his story change? Both his narrative and testimony are to be truthful and without false statements. Yet they do not match up.He also states under oath that there was an active court order they were following. The order was null and void and they know that the document was incorrect especially because the correct and only court order was brought in the very next day to not only Mr. Vesey at Western Hills but brought to  the Briggs Building and given to the Superintendent. Why were the charges not dropped? I was proven to be telling the truth. This is unacceptable.The women who they called to confirm if the court order was valid, lied while the police were doing an active investigation yet no charges were brought against her?

Office Rocchio not only broke RI General laws but US Laws too by lying. 18 U.S. Code § 1621 - Perjury generally - Whoever having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration,



deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true.

　　　As advocates for justice and fairness, it is crucial that we address such behavior swiftly and decisively. Lying under oath not only undermines the credibility of our justice system but also tarnishes the reputation of law enforcement as a whole. We firmly believe that officers should be held accountable for their actions, especially when they deviate from the standards expected of them. The consequences for such actions should reflect the severity of their impact. Police officers hold a position of authority and are entrusted with protecting and serving their communities. With this responsibility comes a greater expectation for transparency, accountability, and adherence to ethical standards. It is essential to remember that police officers are entrusted with upholding the law and protecting citizens. With this responsibility comes an elevated standard of conduct and ethics. When an officer chooses to engage in criminal behavior or act unbecomingly, it not only jeopardizes public trust but also undermines the hard work and dedication demonstrated by countless other officers who uphold their duty with honor. We urge you to thoroughly investigate these allegations against Officer Rocchio and take appropriate action as necessary. By doing so, you will reaffirm your commitment to maintaining transparency, accountability, and professionalism within your department.

Respectfully Submitted,

Joshua Mello

Name: _____                    Date:    7-21-23

(1) arruda

Different professions have different levels of respect and expectations from citizens. Doctors help the sick, firefighters run into burning buildings and police are supposed to serve and protect.  When police misconduct happens most people want to believe that the police are still right in their actions. Police misconduct sometimes involves law enforcement officers who violate state and federal laws, as well as the civil rights of the citizens they are sworn to protect. On November 11, 2022 Officer Edward Arruda, a School Resource Officer for the city of Cranston took the stand to testify about the events that took place at Western Hill Middle School on October 21, 2021. He swore under oath to tell the truth. I will be demonstrating how Officer Arruda lied under oath about a multitude of matters including matters of material fact. Police officers are held to a higher standard and have a professional responsibility to not lie. RI General Law 11-33-1 states that every person under oath  or affirmation who knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing it contains any false material declaration, shall be deemed guilty of perjury. Perjury is a criminal offense committed by a person who, having been sworn to tell the truth in a matter pending in a court of justice, willfully and deliberately lies. To constitute perjury, a statement must be made under oath in a judicial proceeding and be material to the issue being tried. Officer Arruda lied under oath on several of those material matters.

        As an officer of the law it is important to tell the truth. It is also part of your training to be observant and remember details as that is a huge part of your job. Officer Arruda stated under oath during cross examination that he watched videos to refresh himself of the events that took place on the morning in question. He also had his written narrative from the police report. Being in the position to affect people's lives to the capacity that an officer can, knowingly speaking

Name:                                    Date:  7/21/23

(2) arruda

false statements under oath are not acceptable. And when the incorrect information is compounded with various levels of lying it brings into question the credibility of that individual. Especially when there is video evidence that goes against what the officer is stating happened. When this situation took place in October of 2021, some COVID protocols were still in place. Cranston Schools required that masks be worn in the schools. Being that Officer Arruda was a School Resource Officer, he would be well versed in the school policies. While on the stand, Attorney Catalno asks him if he was wearing a mask. Officer Arruda responds "I originally had a mask on, knowing that Cranston Public Schools required masks." There is video evidence that Officer Arruda never had on a mask when he came to Western Hills Middle School for the incident the morning of October 21, 2021. Stating that he was wearing one, and later in his testimony he mentions how he took his mask down to "team up" with us are blatant lies. Even when Officer Arruda came back into the school after I was taken away he still walked back into the school without a mask on. See the school surveillance video. These are actions unbecoming of an officer of the law. Nor should they be acceptable. The act of perjury he has committed has an effect on the person who was on trial.

Within a few minutes of Officer Arruda being present at the school, a conversation was taking place with Mr. Vesey and myself. Mr. Vesey came out of the office with a document in his hand. He joined Office Arruda and myself and then handed the document to me. The video from Western Hills surveillance shows this taking place. Under oath Officer Arruda several times lied about this incident. Since this is stated as one of the reasons I was charged with Disorderly Conduct it would matter if the truth was being told by an officer of the law. In Arruda's sworn testimony he says, "It was an argument over the piece of paper which I asked to see. So Mr. Vesey went behind the scenes, grabbed the paper, and before I could actually grab the paper and read it, Mr. Mello grabbed the paper instead and started ripping it up." It is blatantly clear that Mr Vesey extends his arm towards me to hand the paper and not towards Office Arruda.

Name: _____    Date: 7/31/23


arruda

When Arruda was on the stand, he had his narrative/statement he wrote the day of the incident. In his statement for the police report he wrote and I quote " Mr.Vesey brought out a copy of the family court order and presented it to Josh. Josh took the paperwork out of Mr.Vesey's hand and started to rip up the document before I grabbed it away from him". That statement is from the day of the incident, which was in front of him, and he watched the videos to refresh his memory yet he deliberately lies under oath about this incident. This is not acceptable. Perjury is a criminal offense. While I was holding the document I turned it sideways and was about to tear the paper, which I never did because Officer Arruda grabs the document very aggressively from my hand which is ultimately what rips the paper up. To further discuss how Arruda is perjuring himself, from his own statement the day of the incident he writes in the Cranston Police Report Not only has Officer Arruda broken RI General Laws he also broke US Laws too by lying. 18 U.S. Code § 1621 - Perjury generally - Whoever having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true. His misconduct is not acceptable. The false statements that he makes during his testimony had an effect on the outcome of what the Judge decided I was guilty of.

Officer Arrunda continues to fabricate the incidents that took place that morning which takes away his credibility as a witness. After speaking with Tonya, Karissa's mother, on the phone, he rejoins Officer Rocchio, Rachel and I in the lobby by the main entrance. He comes out stating that," We remember you now, you did the same thing at Peters". Not only does the officer have incorrect information about a prior incident, he is now using an expunged case against me and forming a biased opinion about me and my actions.  Per RI Rhode Island General Law 12-1.3-4 Effect of expungement of records — Access to expunged records —

Name: _____        Date: 7/21/23



Wrongful disclosure states any person having his or her record expunged shall be released from all penalties and disabilities resulting from the crime of which he or she had been convicted. General Order 320.50 Bias Based Profiling policy of the Cranston Police Department prohibits the use of bias based profiling in traffic contacts, field contacts, and asset seizure and forfeiture efforts. Officer Arruda and Officer Rocchio, the morning of the unlawful arrest, used bias based profiling to dictate their actions.

A few minutes after Arruda made the false statement about how I did the same thing at Peters, the two SRO's were grabbing and aggressively tackling me to the ground while assaulting me. While still under oath and testify against me in court, Arruda lied again. He said, "He wouldn't give us his hands or his wrist. So Officer Rocchio was towards his upper body and I was down by his feet at first." There are actually two different videos of this incident that show Officer Arruda with his arm around my neck taking me to the ground and choking me. He is never seen by my feet, nor was he by my feet. All of these false statements made while under oath are completely unacceptable. How can an officer of the law, knowing details are a very big part of your job, tell so many lies. Officer Arruda doesn't even remember that it was his cruiser that was parked in the fire lane that Officer Rocchio smashed me off of while being handcuffed and then aggressively tossed me to the ground after I was complaining about the pain he was inflicting on my knees being push hard against the front grill of Arruda's cruiser. These fabrications have implications on my life. The law locally, and federally has been broken. Officer Edward Arruda should have consequences for his inappropriate actions, perjury being one.

From the very beginning of his testimony, it became apparent that Officer Arruda made false statements. When he entered Western Hills that morning, Mr. Vesey and I were not at a standoff, the court order did not say anything about permission to take the child from Western Hills, Mr. Vesey was grabbing the court order to show me, not to show Officer Arruda. This fact is corroborated in his written narrative but strangely altered during his sworn testimony. This

Name: _____    Date: 7/21/23

inconsistency raises concerns about his credibility as a witness. He also lied about masking, and he lied about being at my feet during the assault. It is crucial to ensure that the facts are accurately presented, as they form the foundation of justice. Also in his written statement he mentions walking me out in handcuffs to his cruiser, but under oath he states how it was Officer Rocchio's cruiser. There are so many inconsistencies and blatant lies to paint a false narrative to the court of what actually took place that morning. The misstatements made by Officer Arruda have serious implications on the outcome of this case, and it is imperative that all parties involved have access to accurate information. I kindly request that these concerns be thoroughly investigated. It is essential for the integrity of our justice system that all involved parties are held accountable for their statements.

Thank you for your attention to this matter. Should you require any further information or clarification on these issues, please do not hesitate to reach out to me.

Best regards,

Joshua Mello

Name:

Date: 7/21/23

Different professions have different levels of respect and expectations from citizens. Doctors help the sick, firefighters run into burning buildings and police are supposed to serve and protect.  When police misconduct happens most people want to believe that the police are still right in their actions. Police misconduct sometimes involves law enforcement officers who violate state and federal laws, as well as the civil rights of the citizens they are sworn to protect. On November 11, 2022 Officer Edward Arruda, a School Resource Officer for the city of Cranston took the stand to testify about the events that took place at Western Hill Middle School on October 21, 2021. He swore under oath to tell the truth. I will be demonstrating how Officer Arruda lied under oath about a multitude of matters including matters of material fact. Police officers are held to a higher standard and have a professional responsibility to not lie. RI General Law 11-33-1 states that every person under oath  or affirmation who knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing it contains any false material declaration, shall be deemed guilty of perjury. Perjury is a criminal offense committed by a person who, having been sworn to tell the truth in a matter pending in a court of justice, willfully and deliberately lies. To constitute perjury, a statement must be made under oath in a judicial proceeding and be material to the issue being tried. Officer Arruda lied under oath on several of those material matters.

As an officer of the law it is important to tell the truth. It is also part of your training to be observant and remember details as that is a huge part of your job. Officer Arruda stated under oath during cross examination that he watched videos to refresh himself of the events that took place on the morning in question. He also had his written narrative from the police report. Being in the position to affect people's lives to the capacity that an officer can, knowingly speaking

Name:                                                    Date:  7/21/23



false statements under oath are not acceptable. And when the incorrect information is compounded with various levels of lying it brings into question the credibility of that individual. Especially when there is video evidence that goes against what the officer is stating happened. When this situation took place in October of 2021, some COVID protocols were still in place. Cranston Schools required that masks be worn in the schools. Being that Officer Arruda was a School Resource Officer, he would be well versed in the school policies. While on the stand, Attorney Catalno asks him if he was wearing a mask. Officer Arruda responds "I originally had a mask on, knowing that Cranston Public Schools required masks." There is video evidence that Officer Arruda never had on a mask when he came to Western Hills Middle School for the incident the morning of October 21, 2021. Stating that he was wearing one, and later in his testimony he mentions how he took his mask down to "team up" with us are blatant lies. Even when Officer Arruda came back into the school after I was taken away he still walked back into the school without a mask on. See the school surveillance video. These are actions unbecoming of an officer of the law. Nor should they be acceptable. The act of perjury he has committed has an effect on the person who was on trial.

Within a few minutes of Officer Arruda being present at the school, a conversation was taking place with Mr. Vesey and myself. Mr. Vesey came out of the office with a document in his hand. He joined Office Arruda and myself and then handed the document to me. The video from Western Hills surveillance shows this taking place. Under oath Officer Arruda several times lied about this incident. Since this is stated as one of the reasons I was charged with Disorderly Conduct it would matter if the truth was being told by an officer of the law. In Arruda's sworn testimony he says, "It was an argument over the piece of paper which I asked to see. So Mr. Vesey went behind the scenes, grabbed the paper, and before I could actually grab the paper and read it, Mr. Mello grabbed the paper instead and started ripping it up." It is blatantly clear that Mr Vesey extends his arm towards me to hand the paper and not towards Office Arruda.

Name: _____    Date: 7/31/23



When Arruda was on the stand, he had his narrative/statement he wrote the day of the incident. In his statement for the police report he wrote and I quote " Mr.Vesey brought out a copy of the family court order and presented it to Josh. Josh took the paperwork out of Mr.Vesey's hand and started to rip up the document before I grabbed it away from him". That statement is from the day of the incident, which was in front of him, and he watched the videos to refresh his memory yet he deliberately lies under oath about this incident. This is not acceptable. Perjury is a criminal offense. While I was holding the document I turned it sideways and was about to tear the paper, which I never did because Officer Arruda grabs the document very aggressively from my hand which is ultimately what rips the paper up. To further discuss how Arruda is perjuring himself, from his own statement the day of the incident he writes in the Cranston Police Report Not only has Officer Arruda broken RI General Laws he also broke US Laws too by lying. 18 U.S. Code § 1621 - Perjury generally - Whoever having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true. His misconduct is not acceptable. The false statements that he makes during his testimony had an effect on the outcome of what the Judge decided I was guilty of.

Officer Arrunda continues to fabricate the incidents that took place that morning which takes away his credibility as a witness. After speaking with Tonya, Karissa's mother, on the phone, he rejoins Officer Rocchio, Rachel and I in the lobby by the main entrance. He comes out stating that," We remember you now, you did the same thing at Peters". Not only does the officer have incorrect information about a prior incident, he is now using an expunged case against me and forming a biased opinion about me and my actions.  Per RI Rhode Island General Law 12-1.3-4 Effect of expungement of records — Access to expunged records —

Name: _____            Date: 7/21/23



Wrongful disclosure states any person having his or her record expunged shall be released from all penalties and disabilities resulting from the crime of which he or she had been convicted. General Order 320.50 Bias Based Profiling policy of the Cranston Police Department prohibits the use of bias based profiling in traffic contacts, field contacts, and asset seizure and forfeiture efforts. Officer Arruda and Officer Rocchio, the morning of the unlawful arrest, used bias based profiling to dictate their actions.

A few minutes after Arruda made the false statement about how I did the same thing at Peters, the two SRO's were grabbing and aggressively tackling me to the ground while assaulting me. While still under oath and testify against me in court, Arruda lied again. He said, "He wouldn't give us his hands or his wrist. So Officer Rocchio was towards his upper body and I was down by his feet at first." There are actually two different videos of this incident that show Officer Arruda with his arm around my neck taking me to the ground and choking me. He is never seen by my feet, nor was he by my feet. All of these false statements made while under oath are completely unacceptable. How can an officer of the law, knowing details are a very big part of your job, tell so many lies. Officer Arruda doesn't even remember that it was his cruiser that was parked in the fire lane that Officer Rocchio smashed me off of while being handcuffed and then aggressively tossed me to the ground after I was complaining about the pain he was inflicting on my knees being push hard against the front grill of Arruda's cruiser. These fabrications have implications on my life. The law locally, and federally has been broken. Officer Edward Arruda should have consequences for his inappropriate actions, perjury being one.

From the very beginning of his testimony, it became apparent that Officer Arruda made false statements. When he entered Western Hills that morning, Mr. Vesey and I were not at a standoff, the court order did not say anything about permission to take the child from Western Hills, Mr. Vesey was grabbing the court order to show me, not to show Officer Arruda. This fact is corroborated in his written narrative but strangely altered during his sworn testimony. This

Name: _____    Date: 7/21/23



inconsistency raises concerns about his credibility as a witness. He also lied about masking, and he lied about being at my feet during the assault. It is crucial to ensure that the facts are accurately presented, as they form the foundation of justice. Also in his written statement he mentions walking me out in handcuffs to his cruiser, but under oath he states how it was Officer Rocchio's cruiser. There are so many inconsistencies and blatant lies to paint a false narrative to the court of what actually took place that morning. The misstatements made by Officer Arruda have serious implications on the outcome of this case, and it is imperative that all parties involved have access to accurate information. I kindly request that these concerns be thoroughly investigated. It is essential for the integrity of our justice system that all involved parties are held accountable for their statements.


Thank you for your attention to this matter. Should you require any further information or clarification on these issues, please do not hesitate to reach out to me.

Best regards,

Joshua Mello

Name: _____                Date: 7/21/23



# INSURANCE CERTIFICATE
# PROPERTY AND LIABILITY COVERAGE

| | |
|---|---|
| **Insured Member** | **Cranston Public Schools** |
| | (Excluding the City of Cranston but including those boards, commissions and departments represented in the Cranston Public Schools' application.) |
| **Coverage Term** | |
| | July 1, 2021 - June 30, 2022 |
| **Coverages Provided** | |
| | Per Coverage Policy Documents on file with the Rhode Island Interlocal Risk Management Trust ("The Trust") as summarized below: |

## Section 1 - Liability Coverage - Limit of Liability

All limits of liability are provided on a "Per Occurrence" basis, except: with respect to claims arising under the Public Officials'/School Board Liability and Employee Benefits Liability Insuring Agreements which are provided on a "Claims Made" basis and annual aggregate basis and subject to a retroactive date of 11/1/2000; and with respect to Products Completed Operations Hazard which is provided on an annual aggregate basis; and with respect to Pollution Liability Coverage, only coverage for a fire department or hazardous response team responding to a third-party contamination event is provided on an annual aggregate basis.

| | |
|---|---|
| **School Board Legal Liability** | Limit: $3,000,000 per occurrence and annual aggregate<br>Deductible: $2,500 per occurrence |
| **Employee Benefit Liability** | Limit: $3,000,000 per occurrence and annual aggregate<br>Deductible: $2,500 per occurrence |
| **Automobile Liability** | Limit: $3,000,000 per occurrence<br>Deductible: $0 per occurrence |
| **Medical Service Providers Liability** | Limit: $3,000,000 per occurrence<br>Deductible: $2,500 per occurrence |
| **Uninsured Motorist** | Limit: $1,000,000 per occurrence<br>Deductible: $0 per occurrence |
| **Medical Payments, Automobile Medical Payments** | Limit: $10,000/$100,000 any one person/any one loss<br>Deductible: $0 per occurrence |
| **Comprehensive General Liability** | Limit: $3,000,000 per occurrence<br>Deductible: $2,500 per occurrence |

# INSURANCE CERTIFICATE
## PROPERTY AND LIABILITY COVERAGE



RHODE ISLAND INTERLOCAL
**The Trust**
RISK MANAGEMENT TRUST

---

### Section 2 - Property Coverage - Limit of Liability

Property including Buildings and Contents, Flood and Earthquake, Auto Physical Damage, Business Interruption, Extra Expense, Architects' Fees, Transit, EDP Media, Equipment and Extra Expense, Crime and Employee Dishonesty and Miscellaneous Property; By an Equipment Breakdown Endorsement to the Property Policy, The Trust also covers Boiler & Machinery including Boilers, Fired and Unfired Vessels, Refrigeration, Air Conditioning Equipment, Mechanical and Electrical Equipment

| | |
|---|---|
| **Auto Physical Damage** | Actual Cash Value<br>Deductible: $2,500 per occurrence |
| **Building and Contents** | Replacement Cost, not to exceed $419,192,933 per occurrence<br>Newly Acquired Property, $500,000<br>Deductible: $7,500 per occurrence |
| **Money & Securities**<br>**(Inside and Outside)** | Limit:  $150,000 per occurrence<br>Deductible: $250 per occurrence |
| **Crime and Employee Dishonesty** | Limit: $200,000 per occurrence<br>Deductible: $250 per occurrence |
| **Equipment Breakdown** | Limit: $100,000,000 per occurrence<br>Deductible: $7,500 per occurrence |

Varying sublimits for other Property and Equipment Breakdown risks

# INSURANCE CERTIFICATE
# PROPERTY AND LIABILITY COVERAGE



## Section 2 - Property Coverage (Continued)

### Aggregate Liability Limits:

All limits of liability above are further subject to the following aggregate liability limits

A. The Trust's limit of liability for Electronic Property, in the aggregate for all Trust Insured Members, is $1 million per occurrence.

B. The Trust's limit of liability for Property coverage, in the aggregate for all Trust Insured Members, is $500 million per occurrence.

C. The Trust's limit of liability for loss caused by a "Named Windstorm", in the aggregate for all Trust Insured Members, is $250 million per "Occurrence".

The respective aggregate limits for A., B., and C. above will be shared by all Insured Members which experience a covered loss in a given occurrence. If the aggregate is met for an occurrence, an Insured Member will receive the same percentage of the aggregate limit as the percentage which its covered loss bears to all covered losses of all Insured Members for the occurrence.

D. The Trust's limit of liability in the aggregate for all Trust Insured Members for a Flood loss is $100 million per period of insurance, except that in the event of a Flood loss for properties in National Flood Insurance Program Zones A and V the aggregate limit of liability per period of insurance is $50 million.

E. The Trust's effective limit of liability in the aggregate for all Trust Insured Members for any Earthquake loss is $100 million per period of insurance.

The respective aggregate limits for D. and E. above will be shared by all Insured Members which experience a covered loss in a given period of insurance. If the aggregate is met during the period of insurance, an Insured Member will receive the same percentage of the aggregate limit as the percentage which its covered loss bears to all covered losses of all Insured Members in the period of insurance.

**NOTE: In the event of a loss involving coverage under multiple Sections of this Certificate, only the highest deductible will apply.**

This space is intentionally left blank

# INSURANCE CERTIFICATE
## PROPERTY AND LIABILITY COVERAGE



RHODE ISLAND INTERLOCAL
RISK MANAGEMENT TRUST

**Section 3 - General Conditions**

This Certificate is issued under the authority granted to The Trust pursuant to Rhode Island General Law §45-5-20.1. All insurance coverages are subject to the terms, conditions, and limitations of the Membership Participation Agreement entered into between The Trust and the Insured Member and the Coverage Policy Documents in current use by The Trust. Except with respects to the Limits of Liability stated herein, this Certificate does not amend, extend or alter the coverage afforded by the Coverage Policy Documents which are on file at The Trust offices and available upon request.

Unless the Trust determines otherwise, coverage will automatically renew July 1, 2022 provided the Insured Member has not given notice at least 60 days prior to July 1, 2022 of its intent to not renew coverage.

7/1/2021         By:

Ian C. Ridlon, Esq.
President and Executive Director
Rhode Island Interlocal Risk Management Trust



RHODE ISLAND INTERLOCAL

RISK MANAGEMENT TRUST

# CYBER COVERAGE ENDORSEMENT

This Endorsement modifies the coverage provided under the
Property Insurance Policy and Liability Insurance Policy

**Cranston Public Schools**
**July 1, 2021 to June 30, 2022**

In consideration of the premium paid, the insurance is extended to cover:

Against loss resulting from a Cyber Incident defined as an occurrence or observable event that actually or potentially results in adverse consequences or poses a threat to an information system or the information that the system processes, stores, or transmits, including any security policies, security procedures, or acceptable use policies, which may require a response action to mitigate the consequences.

It is agreed and understood that this coverage is further defined by the insurance agreement in place between Beazley Syndicate AFB 2623/623 and Alliant Insurance Services, on behalf of the APIP program, and The Rhode Island Interlocal Risk Management Trust and its Members as Named Insureds to the program. The coverages, terms, and conditions of the Beazley Cyber Policy will apply in the event of a Cyber Incident.

## COVERAGES AND LIMITS

<u>Annual Policy and Program Aggregate Limit of Liability:</u> $ 25,000,000 (subject to policy exclusions) for all Insureds/Members combined (Aggregate for all coverage's combined, including Claims Expenses), subject to the following sub limits as noted. Program limit.

<u>Annual Aggregate Limit of Liability for each Insured/Member:</u> $ 2,000,000 (Aggregate for all coverages combined, including Claim Expenses) subject to the following sub limits as noted:

- <u>Breach Response Costs:</u> $500,000 Aggregate Limit of Liability for each Insured/Member (Limit is increased to $1,000,000 if Beazley Nominated Services Providers are used).
- First-Party Loss
    - <u>Business Interruption Loss Resulting from Security Breach</u>: $2,000,000 Aggregate Limit of Liability for each Insured/Member.
    - <u>Business Interruption Loss Resulting from System Failure:</u> $500,000 Aggregate Limit of Liability for each Insured/Member.
    - <u>Dependent Business Loss Resulting from Security Breach</u>: $750,000 Aggregate Limit of Liability for each Insured/Member.
    - <u>Dependent Business Loss Resulting from System Failure</u>: $100,000 Aggregate Limit of Liability for each Insured/Member.
    - <u>Cyber Extortion Loss:</u> $2,000,000 Aggregate Limit of Liability for each Insured/Member.
    - <u>Data Recovery Costs:</u> $2,000,000 Aggregate Limit of Liability for each Insured/Member.

*Rhode Island Interlocal Risk Management Trust*
*Cyber Insurance Coverage Endorsement*
*Page 2 of 2*

## LIABILITY

Data & Network Liability: $2,000,000 Aggregate Limit of Liability for each Insured/Member for all Damages and Claims Expenses.

Regulatory Defense & Penalties: $2,000,000 Aggregate Limit of Liability for each Insured/Member for all Damages and Claims Expenses.

Payment Card Liabilities & Costs: $2,000,000 Aggregate Limit of Liability for each Insured/Member for all Damages and Claims Expenses.

Media Liability: $2,000,000 Aggregate Limit of Liability for each Insured/Member for all Damages and Claims Expenses.

## eCRIME

Fraudulent Instruction: $75,000 Aggregate Limit of Liability for each Insured/Member.

Funds Transfer Fraud: $75,000 Aggregate Limit of Liability for each Insured/Member.

Telephone Fraud: $75,000 Aggregate Limit of Liability for each Insured/Member.

## CRIMINAL REWARD

Criminal Reward: $25,000 Aggregate Limit of Liability for each Insured/Member.

## COVERAGE ENDORSEMENT(S)

Consequential Reputational Loss: $ 50,000 Aggregate Limit of Liability for each Insured/Member.

Computer Hardware Replacement Costs: $75,000 Aggregate Limit of Liability for each Insured/Member.

Retention:
- Cyber Insurance Coverage deductible: $2,500
- Dependent/Business Interruption Loss: 8-Hour waiting period

Subject otherwise to all terms, clauses, and conditions as heretofore.

7/1/2021                          By:

Ian C. Ridlon, Esq.
President and Executive Director
Rhode Island Interlocal Risk Management Trust



*Mayor Kenneth J Hopkins*



Colonel Michael J. Winquist
Chief of Police

## CRANSTON POLICE DEPARTMENT
## OFFICE OF PROFESSIONAL STANDARDS

### *CITIZEN COMPLAINT*

**FOR DEPARTMENT USE ONLY:** Type or print legibly. To be completed by the receiving Commanding Officer or Supervisor for all complaints received against the Cranston Police Department or its employees regardless of source (Written, in person, or anonymous). The original *Citizens Complaint Report* is to be forwarded <u>within 24 hours to the Office of Professional Standards.</u>

Date of complaint:                    Time of Complaint:                    O.P.S.Case #:

Date of Alleged Incident: 3-21-21    Time: 8.30 AM  Location: Western Hills Middle School
                                                                        400 Phenix Ave

Name of Commanding Officer receiving complaint:    Duty Assignment:    Code#:

Name of Investigating Supervisor (if different from above):  Duty Assignment:    Code#:

Origin of Complaint: _____ **By Phone**    X **In Person**    X **In Writing**

_____ **Anonymous**    _____ **Outside Agency (Identify)** _____

Complainant's Name:                                    Date of Birth:
Joshua Mello                                            8-18-75
Home Address:                                          Home Phone:
5 Le P Simon, unit 1413                                 401-390-7778
City, State, Zip:                                       Work Phone:
Cranston RI

Witness (s):
Name:                    Address:                    Phone #:
1. Rachel Duhe          Western Hills Middle School    401-667-7764
                         Cranston RI
2. _____

| Name of accused employee (s) (if known): | Rank | Division | Code # | Commanding Officer |
|---|---|---|---|---|
| 1. John Rocchio #425 | | SRO | | |
| 2. | | | | |
| 3. | | | | |

Describe employee (s) activity at time of incident (Traffic stop, arrest, off-duty, court, etc.)

Officer Rocchio was responding to a call at Western Hills for an alleged suspect person. He was one of two responding school resource officers who used excessive force, attacked and assaulted me and then unlawfully arrested me. He did NOT use exhaust every reasonable means of de-escalation before resorting to use of force. He stated under oath that he was the Cranston Police de-escalation trainer yet without video evidence and personal experience the [illegible] was what he was taught.

Type of misconduct:

___ Criminal Activity
_X_ Excessive Force
_X_ Civil Rights
_X_ False Arrest
_X_ Mistreatment
___ Harassment
_X_ Improper Demeanor
___ Integrity/Behavior
___ Poor Performance
___ Other ___

Was force used:

_X_ Yes ___ No

IF YES, Type of force used (describe type and by whom) Officer Rocchio – excessive force, unwarranted, intimidator Kneed on neck smashed off ground – Slammed off hood while in h[illegible]

Injuries sustained:

_X_ Yes ___ No

IF YES, Describe Injury: abrasion of forehead/scar Shoulder pain Neck pain Cervical Spine Strain concussion

Photograph injury

Obtain Medical Authorization

Property damaged:

___ Yes _X_ No

IF YES, Provide owners Name & Address (if Known)

IF YES, Description of property damage:

Was the complainant or any other party arrested as a result of the Incident _X_ Yes ___ No

IF YES, Indicate Charge (s) Disorderly Conduct ___ Felony _✓_ Misdemeanor ___ Violation

Resisting Legal/n Illegal arrest ___ Felony _✓_ Misdemeanor ___ Violation

Weapons other than firearms prohibited ___ Felony _✓_ Misdemeanor ___ Violation

CR#: ___ Summons: ___ Court Date ___

CITIZENS COMPLAINT    O.P.S. Case #:_____    Page:_____    Of:_____

## NATURE OF INCIDENT

On October 24, 2021 on or about 8:55AM I was unlawfully arrested when I was trying to pick up my daughter for a feminine emergency. This took place at Western Hills Middle school at 400 Phenix Ave Cranston, RI. I had every legal right to be there to help my child. The school called two school resource officers for an alleged upset parent according to their own statements. Officer Edward Arruda was the first to arrive. He never had a mask on during this whole fiasco. Arruda was part of an interaction I was having with Mr. Vesey, who was handing me the incorrect court order, Officer Arruda ripped the document from my hand aggressively which ended up tearing the paper. He seemed agitated and visibly shaken while doing so. I was explaining to Mr. Vesey that this was not the current court order. Shortly after the second school resource officer Rocchio entered both officers escalated and never deescalated the situation that was taking place in a school setting.

The two SRO's attacked and assaulted me before and even while I had my hands cuffed behind my back. I had to be rushed to the hospital after they used unnecessary force and unlawfully arrested me that morning, preventing me from helping my child. This was unethical and an abuse of power. I was asking for space and even took several steps back away from the officers trying to gain personal space. Instead they encroach on me more. Next thing I know two officers are aggressively tackling me. They decided to take the most extreme and unwarranted path to achieve their goal, never seeing any other option. The officers never told me I was under arrest and under oath they both even stated how they never told me to leave the building. Officer Rocchio said if I didn't like it I could leave but that was the extent of it.

SRO Arruda comes out of the office and as he is walking up to me states, "We remember you now, you did the same thing at George Peters" within minute to SRO Rocchio grabbed Josh's right arm and started to pull on him. Dragging and pulling forcefully on his arm. SRO Arruda jumps in and puts his right arm around Josh's neck. Both officers

CITIZENS COMPLAINT    O.P.S. Case #:_____    Page:_____    Of:_____

## NATURE OF INCIDENT

Yet after being assaulted assaulted and arrested Josh was now being treated for that. A few days later he was still having a hard time breathing and he went to the Garden City treatment center when he found out he also had severely bruised ribs.

All this unnecessary and unlawful violence was done to a Dad who had every legal authority to help his child. This police brutality is a violation of my civil rights. Aranda and Rocchio used intimidation, excessive force, they assaulted me and falsely arrested me. These police officers did not exhaust every reasonable means of apprehension before resorting to the use of force of any kind. During his own testimony, Officer Rocchio said he was the de-escalation specialist for Cranston Police and a certified instructor. Yet there was no evidence he tried to de-escalate anything that morning. I stepped away and asked for space. Instead he kept pushing into my personal space and talking over me. Clearly these actions would not help de-escalate anyone. They caused emotional distress, and forced and abused their authority in a school setting. There was no threat or action the warranted the type of violence that resulted. They never said Mr. Mello, you are under arrest. Again they chose the most harmful and violent way to handle the situation. The officers violated my 4th Amendment rights by using excessive force to arrest me unlawfully and after I was in handcuffs they continued to force and abuse me. Under the fourth Amendment anyone in the United States has the constitutional right to be free from excessive force by police officers. It is very evident from the school surveillance footage, they used excessive force and violate numerous rights. These officers failed to uphold their oath and used excessive force against a member of the public when it was unwarranted.

CITIZENS COMPLAINT    O.P.S. Case #:_____    Page:_____    Of:_____

## NATURE OF INCIDENT

are now pulling on him violently in two opposite directions. At one point Arruda swung himself around Josh's neck pulling Josh through the front doors into the foyer. Rocchio still is holding onto his arm. Arruda is wrenching Josh's neck, using all of his body weight to pull him down. They all land on the floor forcefully. Josh now has two grown men about 240lbs each on top of him. ~~They will~~ He is face down now. Josh is saying he can't breathe. Arruda and Rocchio are on top of him with all their weight. He is being handcuffed with his arms behind his back. He is still having a hard time breathing. Rocchio kneels on his neck ~~her~~ and head near his ear. He continues to prevent Josh from getting up. He then kneels on Josh's chest close to his throat. All of this was happening while Josh was handcuffed with his hands behind his back. Josh wants Rocchio off him. Rocchio picks Josh up and slams him to the ground. He keeps manhandling Josh. He is also bleeding from being smashed off the ground. He has a large abrasion. Arruda and Rocchio get Josh to his feet and walk him to the police cruiser that is out front of the school. Once at the cruiser, they have Josh right up against the front bumper. Each officer is on either side of Josh. Officer ~~Arruda~~ Rocchio violently and unprovoked slams Josh so hard on the hood of the car that both of Josh's feet come off the ground. They continue to push hard on Josh and keep pushing his knees into the front grill of the cruiser. Josh is complaining about the pain from the pressure. Officer Rocchio then throws Josh on the ground. Another patrol arrives and they take Josh away in that vehicle. They do not bring him right to the Cranston Police Station for booking, they rush him to Roger Williams ER. At the ER Josh was seen and had an abrasion to his forehead, shoulder pain and neck pain and the doctor said he also had a cervical spine strain also known as whiplash from the assault. The cervical spine strain happens when your neck is quickly whipped forward and back and most commonly caused by a car accident.

I supplied ~~on~~ ~~and~~ Version ~~DiB~~ trauma ~~issue unit~~ ~~with injury~~



*Mayor Kenneth J Hopkins*



Colonel Michael J. Winquist
Chief of Police

### CRANSTON POLICE DEPARTMENT
### OFFICE OF PROFESSIONAL STANDARDS

### *CITIZEN COMPLAINT*

**FOR DEPARTMENT USE ONLY:** Type or print legibly. To be completed by the receiving Commanding Officer or Supervisor for all complaints received against the Cranston Police Department or its employees regardless of source (Written, in person, or anonymous). The original *Citizens Complaint Report* is to be forwarded <u>within 24 hours to the Office of Professional Standards.</u>

Date of complaint:            Time of Complaint:           O.P.S.Case #:

Date of Alleged Incident: _10-21-23_    Time: _8 3908AM_ Location: _Western Hills Middle School_
_400 Phenix Ave Cranston_

Name of Commanding Officer receiving complaint:      Duty Assignment:       Code#:

Name of Investigating Supervisor (if different from above):   Duty Assignment:      Code#:

Origin of Complaint: _____ **By Phone**     _____ **In Person**     _X_ **In Writing**

                 _____ **Anonymous**     _____ **Outside Agency (Identify)** _____

Complainant's Name:    _Joshua Mello_          Date of Birth: _3-18-75_

Home Address:    _59 Reif Square Unit 1318_        Home Phone: _401-486-0778_

City, State, Zip:    _Cranston RI 02920_            Work Phone:

Witness (s):
Name:                 Address:                Phone #:
1. _Asha Wu_        _59 Reif Square Unit 1318_    _401-447-7765_

2. _____

Page 2                    CITIZENS COMPLAINT                    O.P.S. Case:

| Name of accused employee (s) (if known): | Rank | Division | Code # | Commanding Officer |
|---|---|---|---|---|
| 1. Edward Arruda #409 | | SRU | | |
| 2. | | | | |
| 3. | | | | |

Describe employee (s) activity at time of incident (Traffic stop, arrest, off-duty, court, etc.)

Officer Edward Arruda was 1st in responding to a Level of Westminster incident where he an alleged unknown arms. He was one of two responding school figures officers who was declared force, attacked and assaulted before unlawfully arresting me. He did not use or exhaust every reasonable means of deescalation before resorting to using force.

**Type of misconduct:**

| | | |
|---|---|---|
| ____ Criminal Activity | _X_ False Arrest | _X_ Improper Demeanor |
| _X_ Excessive Force | _X_ Mistreatment | ____ Integrity/Behavior |
| _X_ Civil Rights | ____ Harassment | ____ Poor Performance |
| | | ____ Other |

Was force used:          IF YES. Type of force used (describe type and by whom)

_X_ Yes ____ No          Officer Arruda- excessive force, unwarranted, wrapped his arm around my neck- intimidating

Injuries sustained:       IF YES. Describe Injury: abrasion of forehead/scar
                          shoulder pain/back pain
_X_ Yes ____ No          Cervical spine strain
                          concussion
Photograph injury

Obtain Medical Authorization

Property damaged:         IF YES. Provide owners Name & Address (if Known)

____ Yes _X_ No

                          IF YES. Description of property damage:

Was the complainant or any other party arrested as a result of the Incident ___ _X_ Yes _____ No

IF YES. Indicate Charge (s) Disorderly Conduct ___Felony _X_Misdemeanor ___Violation
        Resisting legal arrest ___Felony _X_Misdemeanor ___Violation
        weapon other than firearm (pepper ball) ___Felony _X_Misdemeanor ___Violation

CR#_____ Summons_____ Court Date_____

CITIZENS COMPLAINT    O.P.S. Case #: _____ Page: _____ OR _____

## NATURE OF INCIDENT

On October 21, 2021 on or about 8:50am I was unlawfully arrested when I was trying to pick my daughter up for a feminine emergency. This took place at Western Hills Middle School at 400 Phenix Ave, Cranston RI. I had every legal right to be there to help my child. The school called two school resource officers for an alleged upset parent according to their own statements. Officer Edward Arruda was the first one to arrive. He never had a mask on ever during this whole fiasco. Under oath he stated he had one on and took it down to let my wife and I know he was trying to team up with us. Video evidence shows otherwise. Arruda was part of an interaction I was having with Mr. Vesey, who was handing me the incorrect court order. Officer Arruda ripped the document from my hand aggressively which ended up tearing the paper. He seemed agitated and visibly shaken while doing so. I was explaining to Mr. Vesey that this was not the current court order. Shortly after the second school resource officer Foehrie entered. Both officers escalated and never deescalated the situation that was taking place in a school setting. Its important to note neither officer stated I was under arrest. Also Officer Arruda used an expunged case, that he had incorrect information on, which caused his prejudice against me. Not only did he mention the expunged case that morning, its in the police report and mentioned while under oath in trial. Tony, Josh's ex-girlfriend, was the one who lied to Arruda and told him the court document was still valid. Even though she knew 7 months prior the new order existed in which she had signed and agreed to. She lied to a police officer while he was in pursuit of his duty. Why is she not charged with obstruction of justice?

The two SROs attacked and assaulted me several times even while I had my hands cuffed behind my back. I had to be rushed to the hospital after they used unnecessary force and unlawfully arrested me that morning, preventing me from helping my child. This was unethical and an abuse of power. I was asking for space and even took several steps away from the officers trying to gain personal space. Instead they encroach on me even more. Next thing I know two officers are aggressively

CITIZENS COMPLAINT    O.P.S. Case #:_____    Page:_____    Of_____

## NATURE OF INCIDENT

tackling me. They decided to take the most extreme, violent and unwarranted path to achieve their goal, never seeing any other option. The officers never told me. I was under arrest, and under oath they both stated that they never told me to leave the building.

SRO Arruda comes out of the office and as he is walking up to me he states "We remember you now, you did the same thing at George Peters". Within minutes SRO Pacchio grabbed Josh's right arm and started to pull on him. Dragging and pulling forcefully on his arm. SRO Arruda jumps in and puts his right arm around Josh's neck. Both officers are now pulling on him violently in two opposite directions. At one point Arruda swung himself around Josh's neck pulling Josh through the front doors into the foyer. Pacchio still is holding onto his arm. Arruda is wrenching Josh's neck using all of his body weight to pull him down. They all land on the floor forcefully Josh now has two grown men about 240 lbs each on top of him. He is face down now. Josh is saying he can't breathe. Arruda and Pacchio are on top of him with all their weight. He is being handcuffed with his arms behind his back. He is still having a hard time breathing Pacchio kneels on his neck and head near his ear. He continues to prevent Josh from getting up. He then kneels on Joshs chest close to his throat. All of this was happening while Josh was handcuffed with his hands behind his back. Josh wants Pacchio off him. Pacchio picks him up and slams him to the ground. He keeps manhandling Josh. He is also bleeding on his forehead from being smashed to the ground. He has a large abrasion. Arruda and Pacchio get Josh to his feet and walk him to the police cruiser that is out in front of the school. Once at the cruiser, they have Josh right up against the front bumper. Each officer is on either side of Josh. Officer Pacchio slams Josh unprovoked so hard onto the hood of the car that both of Josh's feet come off the ground. They continue to push hard on Josh and keep pushing his knees into the front of the cruise grill. Josh is complaining about the pain from the pressure. Officer Pacchio then throws Josh to the ground. Another patrol

CITIZENS COMPLAINT    O.P.S. Case #:                Page:                Of:

## NATURE OF INCIDENT

arrives and they take Josh away. They do not bring him to the Cranston Police department for booking, they rush him to the ER at Roger Williams Hospital. At the ER Josh was seen and he had an abrasion to his forehead, shoulder pain, neck pain and the doctor said he also had a cervical spine strain, also known as whiplash from the assault. The cervical spine strain happens when your neck is quickly whipped forward and back and is most commonly caused by a car accident. Yet after being assaulted and arrested Josh was now being treated for that. A few days later he was still having a hard time breathing and he went to the Garden City treatment center, where he found out he had several bruised ribs.

All this unnecessary and unlawful violence was done to a Dad who had every legal authority to help his child. The police brutality is a violation of my civil rights. Arcade and Rocchio used intimidation, excessive force, they assaulted me and falsely arrested me. These Police officers did not exhaust every reasonable means of apprehension before resorting to the usage of force of any kind. During his own testimony, Officer Rocchio said he was the de-escalation specialist for the Cranston Police and a certified instructor. Yet there was no evidence he tried to de-escalate anything that morning. I stepped away and asked for space instead he kept pushing into my personal space and talking over me. Clearly these actions would not help de-escalate anyone. They caused emotional distress, and forced and abused their authority in a school setting. There was no threat or action that warranted that type of violence that resulted. They never said Mr. Mello, your under arrest. Again they choose the most harmful and violent way to handle the situation. The officers violated my 4th Amendment rights by using excessive force to arrest me unlawfully and after I was in hand cuffs they continued to forceable abuse me. Under the fourth Amendment anyone in the United States has the constitutional right to be free from excessive force by police officers. It is evident from the school surveillance footage, the used excessive force and violated my rights. These officers failed to uphold their oath and used excessive force against a member of the public when it was unwarranted.

Page 1 of 6



Patient: MELLO,JOSHUA J
Account Num: V036941944
Med Rec Num: M1432836
Location: ER ACUTE CARE
Physician: READY,ANDREW D.O.
Date: 10/21/21

## Patient Visit Information

**You were seen today for:**

Abrasion of forehead
Shoulder pain
Neck pain

## Staff

Your caregivers today were:

| | |
|---|---|
| Physician | READY,ANDREW D.O. |
| Nurse | D H |

## Patient Instructions Reviewed

Cervical Spine Strain
Abrasion

received 10/21/21 - 1013

## Follow-up

Please contact the following to make an appointment for follow-up care:

PATIENT DOES NOT HAVE A PCP

Note: Your health care plan may require a referral from your primary care provider prior to making an appointment.



Patient: MELLO,JOSHUA J
Account Num: V036941944
Med Rec Num: M1432836
Location: ER ACUTE CARE
Physician: READY,ANDREW D.O.
Date: 10/21/21

## Cervical Spine Strain

**WHAT YOU SHOULD KNOW:**

Cervical spine strain is when the tissues and muscles in your neck are stretched. It is called whiplash because it happens when your neck is quickly whipped forward and back. The pain may be sudden, or it may begin hours after the injury. Cervical spine strain is most commonly caused by a car accident or a contact sports injury.

**INSTRUCTIONS:**

**Medicines:**
- **NSAIDs** help decrease swelling and pain or fever. This medicine is available with or without a doctor's order. NSAIDs can cause stomach bleeding or kidney problems in certain people. If you take blood thinner medicine, **always** ask your healthcare provider if NSAIDs are safe for you. Always read the medicine label and follow directions.

- **Acetaminophen:** This medicine decreases pain. It is available without a doctor's order. Ask how much to take and how often to take it. Follow directions. Acetaminophen can cause liver damage if not taken correctly.

- **Pain medicine:** You may be given medicine to take away or decrease pain. Do not wait until the pain is severe before you take your medicine.

- **Muscle relaxers:** This medicine helps relax your muscles. It is also given to decrease pain and muscle spasms.

- **Take your medicine as directed.** Call your healthcare provider if you think your medicine is not helping or if you have side effects. Tell him if you are allergic to any medicine. Keep a list of the medicines, vitamins, and herbs you take. Include the amounts, and when and why you take them. Bring the list or the pill bottles to follow-up visits. Carry your medicine list with you in case of an emergency.



Patient: MELLO,JOSHUA J
Account Num: V036941944
Med Rec Num: M1432836
Location: ER ACUTE CARE
Physician: READY,ANDREW D.O.
Date: 10/21/21

---

**Soft collar:** You may need to wear a soft cervical collar to support your neck and hold it still. You may need to wear this collar for 7 to 10 days. By day 3, your primary healthcare provider may tell you to take the collar off for short periods of time. He may tell you to wear the collar less each day until you no longer need it.

**Self-care:**
- **Rest:** Avoid moving your neck as your injury heals. This will help decrease the risk of more damage to your neck. Gradually return to your normal activities. Stop if you have pain. Avoid activities that can cause more damage to your neck, such as heavy lifting or strenuous exercise.

- **Ice:** Ice your neck to help decrease swelling and pain. Put crushed ice in a plastic bag. Cover the ice bag with a towel and place it on your neck for 15 to 20 minutes every hour. Do this for as many days as directed.

- **Heat:** Apply heat to your neck for 15 to 20 minutes several times each day. You can alternate heat and ice to help with your pain.

- **Sleep:** Sleep without a pillow to help decrease pain. Instead of a pillow, you may roll a small towel tightly and place it under your neck. A soft collar may also help you sleep.

**Physical therapy:** You may need to see a physical therapist to teach you special exercises. These exercises help improve movement and decrease pain. Physical therapy can also help improve strength and decrease your risk for loss of function.

**Contact your primary healthcare provider if:**
- Your neck pain is getting worse.

- You have questions or concerns about your condition or care.

**Return to the emergency department if:**
- You have pain, numbness, tingling, or weakness of your arms, legs, face, or

Page 4 of 6



Patient: MELLO,JOSHUA J
Account Num: V036941944
Med Rec Num: M1432836
Location: ER ACUTE CARE
Physician: READY,ANDREW D.O.
Date: 10/21/21

scalp.

- You have shortness of breath, a hoarse voice, or problems swallowing.

© 2014 Truven Health Analytics Inc. Information is for End User's use only and
may not be sold, redistributed or otherwise used for commercial purposes. All
illustrations and images included in CareNotes® are the copyrighted property of
A.D.A.M., Inc. or Truven Health Analytics.

The above information is an educational aid only. It is not intended as medical
advice for individual conditions or treatments. Talk to your doctor, nurse or
pharmacist before following any medical regimen to see if it is safe and effective
for you.



Patient: MELLO,JOSHUA J
Account Num: V036941944
Med Rec Num: M1432836
Location: ER ACUTE CARE
Physician: READY,ANDREW D.O.
Date: 10/21/21

## Abrasion

**WHAT YOU SHOULD KNOW:**

An abrasion is a scrape on your skin. It occurs when you fall and rub your skin against a rough surface, such as the ground, road, or sidewalk. It may also happen during a car or bike accident or if you slide across carpet with bare skin (rug burn). An abrasion may occur on any part of your body.

**INSTRUCTIONS:**

**Care for your abrasion:**
- **Clean and cover your wound:**

  - Clean all the debris, such as dirt or rocks, out of the wound. Any debris left in the wound may cause your skin to heal a different color from the rest of your skin.

  - You may need to use a bandage to keep germs out and help your wound heal. Use a large enough bandage to cover the entire wound. Keep the bandage smooth when you cover your wound. Wrinkles in your bandage may cause pain. Use a bandage that does not stick to your wound and has a spongy layer to absorb fluid. Clean your wound and change your bandage every day, or as directed. Also change it when it gets dirty, wet, or soaked in fluid from your wound.

- **Rub antibiotic ointment on your wound:** Your primary healthcare provider may tell you to gently rub a topical antibiotic ointment on your wound in between bandage changes. This will help prevent infection and help your wound heal faster. It may also keep the bandage from sticking to your wound. Ask which topical antibiotic ointment to use.

- **Elevate your wound:** You may be told to raise your injured body part above your heart. This will help reduce pain and swelling. You can use pillows to raise the injured area.



Patient: MELLO,JOSHUA J
Account Num: V036941944
Med Rec Num: M1432836
Location: ER ACUTE CARE
Physician: READY,ANDREW D.O.
Date: 10/21/21

---

**Follow up with your healthcare provider as directed:** Write down your questions so you remember to ask them during your visits.

**Take your medicine as directed.** Call your healthcare provider if you think your medicine is not helping or if you have side effects. Tell him if you are allergic to any medicine. Keep a list of the medicines, vitamins, and herbs you take. Include the amounts, and when and why you take them. Bring the list or the pill bottles to follow-up visits. Carry your medicine list with you in case of an emergency.

**Contact your primary healthcare provider if:**
- You feel there is something stuck inside your wound, even after it heals.

- You have questions or concerns about the care of your abrasion.

**Return to the emergency department if:**
- You have painful swelling, redness, or warmth around your wound.

- You have pus leaking from your wound, or you have red streaks on your skin.

© 2014 Truven Health Analytics Inc. Information is for End User's use only and may not be sold, redistributed or otherwise used for commercial purposes. All illustrations and images included in CareNotes® are the copyrighted property of A.D.A.M., Inc. or Truven Health Analytics.

The above information is an educational aid only. It is not intended as medical advice for individual conditions or treatments. Talk to your doctor, nurse or pharmacist before following any medical regimen to see if it is safe and effective for you.

**Kenneth Hopkins**
Mayor



**Colonel Michael J. Winquist**
Chief of Police

*"A Nationally Accredited Agency"*

FIVE GARFIELD AVENUE
CRANSTON, RHODE ISLAND 02920
Phone (401) 942-2211 TDD 943-1410
Fax (401) 477-5112

June 23rd, 2023

Mr. Joshua Mello
57 Rolfe Square, Unit 10113
Cranston, RI 02920

Dear Mr. Mello,

The Cranston Police Department Office of Professional Standards wishes to inform you that we have initiated an internal administrative investigation due to your recent complaint.

The Cranston Police Department strives to maintain the highest standards of integrity and professionalism amongst law enforcement professionals. I would like to extend our gratitude to you for bringing this important matter to our attention, and I will be in touch regarding the outcome of the investigation.

Respectfully,

Captain Sean Parker
**Office of Professional Standards**
*Sparker@cranstonpoliceri.com*
23-12-IA



**U.S. Department of Justice**

*United States Attorney's Office*
*District of Rhode Island*

One Financial Plaza, 17th Floor          (401) 709-5000
Providence, Rhode Island 02903     FAX (401) 709-5001

July 13, 2023

**Via U.S. Mail**

Joshua Mello & Rachel Ware
57 Rolfe Square
Unit 10113
Cranston, RI 02919

Re:     <u>Civil Rights Complaint against Cranston Police Department, et al.</u>

Dear Mr. Mello and Ms. Ware:

      We received your recent civil rights complaints, and accompanying correspondence, on June 20, 2023, July 5, 2023, and July 11, 2023, regarding the Cranston Police Department and two of its officers. We appreciate the information you provided to our office. However, after careful consideration of the materials submitted to our office, we have concluded that we do not have jurisdiction over any claims that you are alleging.

      Please be aware that filing a complaint with this office has no effect on any statute of limitations that might apply to any claim you may have. By filing a complaint with this office, you have not commenced a lawsuit or other legal proceeding, and this office has not initiated a suit or proceeding on your behalf. This office cannot provide legal representation to you regarding your complaint against Cranston Police Department or any individual officer or entity. If you wish to pursue any legal claims you may have, please contact an attorney. You may wish to contact the Volunteer Lawyer Project at (401) 421-7758 or the Rhode Island Attorney General's Office (see https://riag.ri.gov/about-our-office/divisions-and-units/civil-division/public-protection/civil-community-rights/police).

      We will not be providing a response to any further correspondence from you unless it provides new information for our consideration that alleges claims that do fall within our jurisdiction and are not being litigated elsewhere. Thank you again for reaching out to us. We wish you the best.

      Sincerely,

      ZACHARY A. CUNHA
      United States Attorney

      Amy R. Romero
      Assistant U.S. Attorney



AMERICAN CIVIL LIBERTIES UNION
Rhode Island

128 Dorrance Street, Suite 400
Providence, RI 02903
Phone: (401) 831-7171
Fax: (401) 831-7175
www.riaclu.org
info@riaclu.org

July 26, 2023

Joshua Mello
Rachel Ware
57 Rolfe Square, Unit 10113
Cranston, RI 02910

Dear Mr. Mello & Ms. Ware,

This is in response to your recent complaints to our office regarding your encounter with school resource officers (SRO) at Western Hills Middle School two years ago. Our legal committee reviewed your complaints at its most recent meeting, and while they share your concerns about the way you indicate the SROs treated you, they concluded that we are not in a position to provide legal assistance on this matter.

As a small non-profit organization relying solely on cooperating attorneys to handle our legal work, we are very limited in the number and types of cases we can handle. As a result, a decision not to provide you representation should not be taken as a decision on the merits of your claims, but instead is a reflection of our limited resources. There are a few additional aspects to your complaints that led to the committee's conclusion.

It is rare for us to handle cases where the only legal remedy involves a request for monetary damages, and your complaint falls in that category. Because of the possibility of financial remuneration, these are cases that can often be handled by private attorneys on a contingency fee basis. We also generally shy away from cases that are very fact-specific and whose resolution is not likely to have a broader impact on the law. While in recent years we have represented a few *students* who have been mistreated by SROs, those cases have allowed us to seek other forms of relief in terms of SRO responsibilities vis-a-vis students that would not be available in a case like this involving an adult's interaction with them. Finally, the committee noted that there are still pending criminal charges arising from this incident, and the outcome of those charges could potentially have a significant impact on the presentation and viability of any civil claims.

For these reasons, we are not able to take legal action on your behalf. We would instead encourage you to consult with private counsel if you wish to pursue the matter. If you do not know any attorneys, you can reach out to the RI Bar Association's Lawyer Referral service at 401-421-7799 or seek suggestions from your criminal defense counsel.

Thank you for bringing this incident to our attention, and we're sorry we can't be of more assistance.

Sincerely,

Megan Khatchadourian
Assistant to the Director

# OFFICIAL RECEIPT
## State of Rhode Island
### District Court
### Noel Judicial Complex
### 222 Quaker Lane
### Warwick, RI 02886
### (401) 822-6750(phone)

Payor
JOSHUA MELLO

Receipt N
**DC3D-2023-00029**

Transaction Dat
01/9/202

| Description | Amount Paid |
|---|---|
| Miscellaneous Payment | |
| Recording/Tape Fee Schedule | |
| Recording/Tape Fee | **10.00** |
| **SUBTOTAL** | 10.00 |
| | **10.00** |

| PAYMENT TOTAL | **10.00** |
|---|---|

| Cash Tendered | 10.00 |
|---|---|
| Total Tendered | **10.00** |
| Change | 0.00 |

| 01/09/2023 03:09 PM | Cashier Station kendis00 | Audit 18041248 |
|---|---|---|

# OFFICIAL RECEIPT

| Form COL | **Violation Warning** **Denial of Rights Under Color of Law** Violation Warning-- 18 U.S.C. §242; 18 U.S.C. §245 U.S.C. §1983 | |
|---|---|---|

| Name and Address of Citizen Joanna Smith 2020 Freedom Avenue City of Angeles, Heaven 77777 | Name and Address of Notice Recipient John Doe, President School Board Arizona 1234 33rd Street Scottsdale AZ 95326 |
|---|---|

Citizen's Statements I hereby declare that John Doe, President of the school board in Scottsdale AZ refused to supply me with his oath of office, proof of insurance, or his surety bond upon request. I also hereby declare he has broken the following laws: See attachment

I certify that the forgoing information stated here is true and correct
Citizen signature

>                                                                    Date> March 17, 2022

### Legal Notice and Warning

Federal law provides that it is a crime to violate the Constitutional Rights of a citizen under the Color of Law. You can be arrested for this crime and you can also be held personally liable for civil damages.
Attempting to coerce or deceive a citizen to surrender his Constitutional Rights is a Federal Crime. Federal Courts have found that your ignorance of the law is no excuse.

**18 USC §242** provides that whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined under this title or imprisoned not more than one year, or both, and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

**18 USC §245** provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both, and if death results or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be subject to imprisonment for any term of years or for life or may be sentenced to death.

42 USC §1983 provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Warning,** you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages. Also understand that the law provides that you can be held personally responsible and liable, as well as your company or agency.

You are advised to cease and desist with your demand and to seek *personal* legal counsel if you do not understand the law.

Notice of Service:
I, John Doe, President of the School Board _____certify that I personally delivered this notice to above
named recipient
and address on 1234 33rd Street. Scottsdale, AZ 95326_____ at 8:15 pm_____(am/pm).

Public Domain—Privacy Form COL(02)

Crimes Committed Under Color Of Law

| Breach | Penalty | Authority |
|---|---|---|
| **VIOLATION OF OATH OF OFFICE** | $250,000.00 | 18 USC 3571 |
| **CONSPIRACY AGAINST RIGHTS** | $10,000.00 | 18 USC 241 |
| **DEPRIVATION OF RIGHTS UNDER COLOR OF LAW** | $1,000.00 | 18 USC 242 |
| **BRIBERY CONCERNING RECEIVING FEDERAL FUNDS** | $5,000 per violation (10 years in prison) | 18 USC 666 |
| **EXTORTION** | $5,000 | 18 USC 872 |
| **OFFICIER OR EMPLOYEE OF THE UNITED STATES** | Fined and imprisoned not more than 2 years | 18 USC 912 |
| **FRAUD STATEMENT OF ENTRIES GENERALLY** | $10,000.00 | 18 USC 1001 |
| **FALSIFICATION OF DOCUMENTS** | $10,000 | 18 USC 1001 |
| **ACKNOWLEDGMENT OF APPEARANCE OR OATH** | Fined and or imprisoned not more than 2 years | 18 USC 1016 |
| **OFFICIAL CRTIFICATES OR WRITINGS** | Fined or imprisoned not more than 1 year | 18 USC 1018 |
| **FALSE INFORMATION AND HOAXES** | Fined and 5 years to life in prison | 18 USC 1038 |
| **RICO/RACKETEERING (CIVIL)** | 25,000.00 | 18 USC 1964(C) |
| **GENOCIDE** | $1,000,000.00 | 18 USC 1091 |
| **PERJURY** | $2,000 | 18 USC 1621 |
| **SUBORNATION OF PERJURY** | $2000 | 18 USC 1622 |
| **OBSTRUCTING AND DELAYING COMMERCE and unlawfully taking and obtaining personal property under fear of threat** | 10 years in prison minimum | 18 USC 1951 "Hobbs Act" |
| **DEFENSE DENIED EVIDENCE (RECORDS)** | $250,000 | 18 USC 3571 |
| **SLAVERY (FORCED COMPLIANCE TO CONTRACT NOT HELD)** | $250,000 | 18 USC 3571 |

| DENIED PROVISIONS IN THE CONSTITUTION | $250,000 | 18 USC 3571 |
|---|---|---|
| **TREASON (combined actions above) and allowing unelectedand $250,000.00 18 USC 3571 Page 7 of 16 unaccountable agencies and agents to dictate and shape policy that violates due process rights** | $250,000.00 | 18 USC 3571 |

The following is a list of laws you have broken since 2021 and continue to break today:

1. False information concerning masks and the EUA status from the FDA. You failed to supply each of us with the fact sheet so we could accept or refuse this option for our children. Instead you sent home a letter indicating if we did not sign the letter our children would not be allowed back in school and would need to stay home to continue their remote learning.
2. Funds were appropriated from the Federal Government under ESSER III. This was hidden from the parents and the information was not made available.
3. You followed the CDC rules and guidelines to file your ESSER III application to receive these funds.
4. My child was abused in the classroom for not wearing her mask. The teacher in her class would arrive in front of her desk to demand her to put the mask back on. If she refused the teacher would put the mask back on.
5. My child was illegally detained and held in a locked room where she was denied her freedom to leave this room because she refused to wear a mask
6. On numerous occasions I receive a letter or an email from the school or the school board threatening me that if my child did not comply with your mandates she would be removed from school. If you removed her from school you threatened to call social services and report her delinquent.
7. You have sat up here and lied to all the parents that you are forced to enforce these rules. I have proof from a school's risk management insurance carrier stating just the opposite. In the contract it states very clearly if you break the law you are liable for all damages. You voted to enforce these laws therefore you are liable for the damages you have caused to my child and all the children of this school district.

You have exactly 7 business days to cease and desist all these unlawful mandates, rules, regulations, and publically admit the real reason behind

this scam. You voted to accept money from the Federal Government that had conditions attached from the CDC. You voted to accept these conditions and follow the guideline the CDC handed you to follow in order to receive these funds. You have committed fraud, civil rights violations, denial of supplying me with your oath of office and your surety bond or insurance liability policy.

If this does not end immediately and you do not resign from this school board I will follow through and file this claim with Risk Management and in Federal Court against you and all members on this school board.

Sincerely,

Joanna Smith

## 18 U.S. Code § 241 - Conspiracy against rights
### AND
## 18 U.S. Code § 242 - Deprivation of rights under color of law
### And
### Color of Law

# <u>18 U.S. Code § 241 - Conspiracy against rights</u>

Current through Pub. L. <u>114-38</u>. (See <u>Public Laws for the current Congress</u>.)

- <u>US Code</u>
- <u>Notes</u>
- <u>Authorities (CFR)</u>

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(June 25, 1948, ch. 645, <u>62 Stat. 696</u>; <u>Pub. L. 90–284, title I</u>, § 103(a), Apr. 11, 1968, <u>82 Stat. 75</u>; <u>Pub. L. 100–690, title VII</u>, § 7018(a), (b)(1), Nov. 18, 1988, <u>102 Stat. 4396</u>; <u>Pub. L. 103–322, title VI</u>, § 60006(a), title XXXII, §§ 320103(a), 320201(a), title XXXIII, § 330016(1)(L), Sept. 13, 1994, <u>108 Stat. 1970</u>, 2109, 2113, 2147; <u>Pub. L. 104–294, title VI</u>, §§ 604(b)(14)(A), 607(a), Oct. 11, 1996, <u>110 Stat. 3507</u>, 3511.)

# <u>18 U.S. Code § 242 - Deprivation of rights under color of law</u>

Current through Pub. L. <u>114-38</u>. (See <u>Public Laws for the current Congress</u>.)

- <u>US Code</u>
- <u>Notes</u>

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(June 25, 1948, ch. 645, 62 Stat. 696; Pub. L. 90–284, title I, § 103(b), Apr. 11, 1968, 82 Stat. 75; Pub. L. 100–690, title VII, § 7019, Nov. 18, 1988, 102 Stat. 4396; Pub. L. 103–322, title VI, § 60006(b), title XXXII, §§ 320103(b), 320201(b), title XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 1970, 2109, 2113, 2147; Pub. L. 104–294, title VI, §§ 604(b)(14)(B), 607(a), Oct. 11, 1996, 110 Stat. 3507, 3511.)

# Color of Law

**Color of law.**
**"The appearance or semblance, without the substance, of legal right.'**
**"Misuse of power, possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state, is action taken under "Color of law" [Black's Law Dictionary, 5th ed., Pg. 241]**

Also found in: Dictionary, Thesaurus, Wikipedia.

# Color of Law - *The appearance of a legal right.*

The act of a state officer, regardless of whether or not the act is within the limits of his or her authority, is considered an act under color of law if the officer purports to be conducting himself or herself in the course of official duties.

Under the CIVIL RIGHTS ACT of 1871 (42 U.S.C.A. Section 1983), color of law is synonymous with State Action, which is conduct by an officer that bears a sufficiently close nexus to a state so that the action is treated as though it is by the state.

# color of law

n. the appearance of an act being performed based upon legal right or enforcement of statute, when in reality no such right exists. An outstanding example is found in the civil rights acts which penalize law enforcement officers for violating civil rights by making arrests "under color of law" of peaceful protestors or to disrupt voter registration. It could apply to phony traffic arrests in order to raise revenue from fines or extort payoffs to forget the ticket.

# Color (law)

Also found in: Dictionary, Thesaurus, Legal.

Color (law)

In U.S. law, the term **color of** denotes the "mere semblance of legal right", the "pretense or appearance of" right; hence, an action done under **color of law** colors (adjusts) the law to the circumstance, yet said apparently legal action contravenes the law.[1] **Under color of authority** is a legal phrase used in the United States[2] indicating a person is claiming or implying the acts he or she is committing are related to and legitimized by his or her role as an agent of governmental power, especially if the acts are unlawful.

## Color of law

**Color of law** refers to an appearance of legal power to act but which may operate in violation of law. For example, though a police officer acts with the "color of law" authority to arrest someone, if such an arrest is made without probable cause the arrest may actually be in violation of law. In other words, just because something is done with the "color of law", that does not mean that the action was lawful. When police act outside their lawful authority and violate the civil rights of a citizen, the FBI is tasked with investigating.[3]

The Supreme Court has interpreted the United States Constitution to construct laws regulating the actions of the law enforcement community. Under "color of law", it is a crime for one or more persons using power given to him or her by a governmental agency (local, state or federal), to willfully deprive or conspire to deprive another person of any right protected by the Constitution or laws of the United States. Criminal acts under color of law include acts within and beyond the bounds or limits of lawful authority. Off-duty conduct may also be covered if official status is asserted in some manner. Color of law may include public officials and non-governmental employees who are not law enforcement officers such as judges, prosecutors, and private security guards.[4] Furthermore, in many states it is unlawful to falsely impersonate a police officer, a federal officer or employee, or any other public official or to use equipment used by law enforcement officers, such as flashing lights or a fake police badge. Possession of a firearm also can enhance the penalty for false impersonation of a police officer.[5]

Color of office

**Color of office** refers to an act usually committed by a public official under the appearance of authority, but which exceeds such authority. An affirmative act or omission, committed under color of office, is sometimes required to prove malfeasance in office.

Color of title

In property law, **color of title** refers to a claim to title which appears valid, but may be legally defective. Color of title may arise when there is evidence, such as a writing, suggesting valid legal title. The courts have ruled that deeds are mere color of title; the actual title to land is secured with an irrefutable instrument like a land patent, then when that land is subsequently conveyed to another owner by a deed, the deed colors the title to show the new owner. Thus, the chain of title from the land patent to the present may include many deeds, the actual title remains with the land patent and lawful deeds show the chain of title to the present landowner. Because the ownership in land is a very specific thing requiring precise and proper transfers of ownership, in times past, people always required a certified abstract be provided with a deed to insure the deed was not merely a color of title fiction. Today, title companies offer title insurance to secure such documents. Still, only a proper and lawful title, like the land patent, provides actual title to land; and, only a proper and lawful chain of title (deeds, etc.) from such a patent to the present can secure land rights to the landowner.

However, even with land secured by patent, the proper grant of title can be implied by adverse possession, which is the basis for claims exemplified in Torrens title. The Torrens system operates on the principle of "title by registration", in which the act of registering an interest in land in a state-operated registry creates an indefeasible title in the registrant, which, like the land patent, can be challenged only in very limited circumstances.

## Appropriation of name or likeness

Although this is a common-law tort, most states have enacted statutes that prohibit the use of a person's name or image if used without consent for the commercial benefit of another person. A person's exclusive rights to control his or her name and likeness to prevent others from exploiting personal information without permission is protected in similar manner to a title or trademark action with the person's likeness and personal information, rather than the trademark or title, being the subject of the protection.[6]

The tort of false light involves a misappropriation or "major misrepresentation" of a person's "character, history, activities or belief."[7] Some bodies of law also explicitly mention the estate of a person; false claims of nobility are most common. In the United States, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability for invasion of privacy, if:

1. The false light would be highly offensive to a reasonable person; and
2. The actor acted with *malice*—had reason to know of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

See Section 652E of the Restatement (Second) of Torts.

Public disclosure of private facts arises where one person reveals information which is not of public concern, and the release of which would offend a reasonable person.[8]

References

1. ^ *Law Dictionary* Fourth Edition, Steven H. Gifis, p. 86
2. ^ *Judicial and Statutory Definitions of Words and Phrases*. West Publishing Company, West Publishing Co., St. Paul. p. 763.
3. ^ Color of Law, Federal Bureau of Investigation
4. ^ Hate Crimes. Federal Bureau of Investigation, Miami Division, February 22, 2005. Via the Internet Archive Wayback Machine.
5. ^ Impersonating a Police Officer, LegalMatch
6. ^ Invasion of Privacy, Appropriation of Name or Likeness. CSE/ISE 334 "Introduction to Multimedia Systems" Lectures and Recitations, Stony Brook University.
7. ^ *Gannett Co., Inc. v. Anderson*, 2006 WL 2986459 at 3 (Fla. 1st DCA Oct. 20, 2006).
8. ^ Common Law Privacy Torts

This article is copied from an article on Wikipedia®

Motion Date: March 31, 2023
Courtroom 9

## STATE OF RHODE ISLAND

PROVIDENCE, SC                                        SUPERIOR COURT

STATE OF RHODE ISLAND                :
                                     :
           vs.                       :          Ca. No.:  P3-2022-4224A
                                     :
JOSHUA MELLO                         :

## MOTION TO WITHDRAW

    Now comes recently Court-appointed attorney of record Steven H. Crawford, Esq. for the defendant, Joshua Mello, in the above-entitled matters and hereby moves that he be allowed to withdraw his appearance entered in this case. In support therefore states that he is a friend of the arresting officer, Robert Arruda, and has known said officer before he began his career in law enforcement for the City of Cranston.

    The defendant is charged with disorderly conduct and weapons other than a firearm prohibited. The defendant's arrest involved use of force by Officer Arruda. Counsel states that he will not be able to adequately represent the defendant due to this conflict. And, that his continued representation may lead to issues for appeal.

    WHEREFORE, Counsel hereby moves that this Honorable Court grant his motion and that he be allowed to withdraw his appearance in the above-entitled matter and that other Counsel be appointed to represent the defendant.

## NOTICE OF HEARING

    Please take notice the above-captioned Motion will be heard before a Justice of the Providence Superior Court, located at 250 Benefit Street, Providence, Rhode Island in courtroom 9 at 9:30 a.m., on the **31ˢᵗ day of March, 2023**, or as soon thereafter as counsel may be heard.

Respectfully Submitted,
Court Appointed Counsel,

/s/ Steven H. Crawford, Esq.
130 Dorrance Street
Shakespeare Hall
Providence, R.I. 02903
401-621-9700

## CERTIFICATION

I, the undersigned, do hereby certify that I electronically filed this Motion with the Rhode Island Court Odyssey file and serve site and mailed a copy of the motion to Mr. Joshua Mello, P.O. Box 10113 Cranston, RI 02910 on the 24th day of March 2023.

/s/ Steven H. Crawford, Esq.



### *ACKNOWLEDGMENT*

I, _Joshua Mello_ , hereby acknowledge receipt of the entire original file

including CD/USB from Moretti Perlow & Bonin Law Offices pertaining to my criminal case on

_17th_ day of _January_ 2023. I further acknowledge that Moretti Perlow

& Bonin Law Offices has release said file without maintaining any copies of the documents

contained therein.

_____
CLIENT'S NAME

_____
WITNESS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSHUA MELLO

and RACHEL WARE
                              *Plaintiff,*

                                              *Defendants*
vs.                                           C.A. No. 1:23-cv-000479-JJM-LDA;
                                                    1:23- cv-000480-JJM-LDA

JOHN ROCCHIO and EDWARD ARRUDA

**RESPONSES TO INTERROGATORIES,** ~~JOSHUA MELLO~~ Rachel Ware

Dear Attorney Scott-Benevides,

Thank you for your request dated March 14, 2024. I understand the need to gather

relevant information for this case; however, I believe that the details you have requested

regarding present residence address, educational background, and employment history are not

pertinent to the claims or defenses at issue in this matter. After a careful review of your request,

it has been determined that several other details  sought are not relevant to the claims or defenses

at issue in this case. Specifically, Requests No. 3,4,8,9,11,13,14,15, ~~17 and 19.~~ and 17.

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, discovery must be relevant

to any party's claim or defense and proportional to the needs of the case. The information you

have requested does not appear to meet this standard, as they do not pertain to the matters at

issue as outlined in the complaint and subsequent pleadings.

In the meantime, we request that you withdraw your request for the aforementioned

documents. Should we not hear back from you within 10 business days, we will proceed under

the assumption that you have agreed to this adjustment in your request.

Thank you for your understanding and cooperation. Please let me know if you need any

further information that is directly relevant to the case.

1

Sincerely,

Rachel Ware
57 Rolfe Square unit 10113
Cranston, RI 02910
kskustomsrideons@gmail.com

## II. INTERROGATORIES

1. Rachel Ware, 7/04/1979.
2. Attorney Steven Crawford, 127 Dorrance Street, Providence, RI 02903, Mr. Mello's former lawyer.
3. N/A
4. N/A
5. We have not consulted or retained any experts yet
6. All information that is material has been supplied with the request for production of documents.
7. We have supplied this information with the request of documents.
8. N/A
9. N/A
10. The cost of damages were calculated using the RI Interlocal Trust Insurance Policy.
11. N/A
12. The description of the events that took place on October 21. 2021 are written several times in the complaints supplied.
13. N/A
14. N/A
15. N/A
16. Gerber Fast Draw tanto, a razor knife, and 1 other one
17. The complaints supplied explain my involvement in the incident at Western Hills Middle School on October 21, 2021.

<u>CERTIFICATION</u>

I certify that a true and accurate copy of the within was mailed, postage prepaid, to on the 21th day of May 2024:

Julia K. Scott- Benevides, Esq. (#10408)
DESISTO LAW LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
julia@desistolaw.com

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSHUA MELLO

and RACHEL WARE
            *Plaintiff,*

                                    *Defendants*

vs.                                 C.A. No. 1:23-cv-000479-JJM-LDA;
                                         1:23- cv-000480-JJM-LDA

JOHN ROCCHIO and EDWARD ARRUDA

### **RESPONSES TO INTERROGATORIES, JOSHUA MELLO**

Dear Attorney Scott-Benevides,

Thank you for your request dated March 14, 2024. I understand the need to gather relevant information for this case; however, I believe that the details you have requested regarding present residence address, educational background, and employment history are not pertinent to the claims or defenses at issue in this matter. After a careful review of your request, it has been determined that several other details  sought are not relevant to the claims or defenses at issue in this case. Specifically, Requests No. 8,9,11,13,14,15, 17 and 18.

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, discovery must be relevant to any party's claim or defense and proportional to the needs of the case. The information you have requested does not appear to meet this standard, as they do not pertain to the matters at issue as outlined in the complaint and subsequent pleadings.

In the meantime, we request that you withdraw your request for the aforementioned documents. Should we not hear back from you within 10 business days, we will proceed under the assumption that you have agreed to this adjustment in your request.

Thank you for your understanding and cooperation. Please let me know if you need any further information that is directly relevant to the case.

Sincerely,

Joshua Mello
57 Rolfe Square unit 10113
Cranston, RI 02910
kskustomsrideons@gmail.com

## II. INTERROGATORIES

1. Joshua James Mello, 3/18/1975.
2. Attorney Steven Crawford,127 Dorrance Street, Providence, RI 02903, my former lawyer.
3. N/A
4. N/A
5. We have not consulted or retained any experts yet
6. All information that is material has been supplied with the request for production of documents.
7. We have supplied this information with the request of documents.
8. N/A
9. N/A
10. The cost of damages were calculated using the RI Interlocal Trust Insurance Policy.
11. N/A
12. The description of the events that took place on October 21. 2021 are written several times in the complaints supplied.
13. N/A
14. N/A
15. N/A
16. Gerber Fast Draw tanto, a razor knife, and 1 other one
17. N/A
18. N/A

<u>CERTIFICATION</u>

I certify that a true and accurate copy of the within was mailed, postage  prepaid, to on the 21th day of May 2024:

Julia K. Scott- Benevides, Esq. (#10408)
DESISTO LAW LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
julia@desistolaw.com