**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**JOSHUA MELLO AND RACHEL WARE, PLAINTIFFS**
v.
**EDWARD ARRUDA AND JOHN ROCCHIO, DEFENDANTS**
**CASE NOS.: 1:2023-CV-00479 & 1:2023-CV-00480**

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO MOTION TO COMPEL DISCOVERY AND EMERGENCY MOTION FOR DISCOVERY CONFERENCE**

## I. Introduction

Plaintiffs, Joshua Mello and Rachel Ware, acting pro se, respectfully submit this response to Defendants' objections to Plaintiffs' Motion to Compel Discovery and Emergency Motion for a Discovery Conference. Defendants' objections fail procedurally and substantively under the Federal Rules of Civil Procedure (FRCP). Defendants' arguments, including the assertion that the Attorney General of Rhode Island holds exclusive authority over misconduct claims and objections regarding the relevance and proportionality of Plaintiffs' discovery requests, are procedurally and substantively flawed. Plaintiffs seek judicial intervention to address the inadequacies in the discovery process, as well as discrepancies in documents provided, which have compromised the integrity of these proceedings. Plaintiffs respectfully request the Court deny Defendants' objections and compel Defendants to produce the requested discovery.

## II. Defendants' Noncompliance with FRCP

### 1. Procedural Failures Under FRCP 37(a)(1)

Defendants argue that Plaintiffs failed to meet and confer as required by FRCP 37(a)(1). However, Plaintiffs made documented good faith efforts to resolve discovery disputes, including

letters sent on September 16, 2024, and December 13, 2024, specifically addressing deficiencies in Defendants' responses. Despite these efforts, the Defendants never requested to meet and confer to discuss the issues we brought to their attention. Defendants provided inadequate or evasive responses, necessitating judicial oversight. They remained silent for 15 days after the Plaintiffs last email to them on December 18, 2024 and then the Defendants submitted the objections to the Plaintiffs  motions on the very last day allowed January 2, 2025. Plaintiffs understand that these dates included holidays however historically the Defense counsel has responded on days such as Thanksgiving and weekends. Given the context and severity of the concerns brought forth to the Defendants counsel, one would anticipate a timely response. Even to this day Plaintiffs have not received an adequate reply to the issues brought forth, highlighting the reasons why the court was motioned.

It is important to address that the Plaintiffs do not fail to provide a basis for the motion. The Defendants fail to recognise and address  the basis for the "Motion to Compel". The Defendants never address the issue brought forward by the Plaintiffs as the information sought is critical to deciding liability and damages not only for the Defendants but the Cranston Police department as well.

## 2. Evasive Responses and Boilerplate Objections (FRCP 33, 34)

Defendants improperly and repeatedly rely on vague objections such as "confusing," "overly broad," or "speculative" without specificity, violating FRCP 33(b)(4), which requires objections to be stated clearly with supporting reasoning. Courts routinely reject such boilerplate objections as insufficient (*Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014)). **

Example:

- **Interrogatory No. 16 (Arruda):**

  Plaintiffs requested clarification on Officer Arruda's testimony about being videotaped during the incident. The defendants' objection as "confusing" fails because the question directly references his prior sworn testimony under oath during the November 2022 trial for Plaintiff Mello, and seeks clarification central to the excessive force claim that he testified about.

- Defendants have employed identical or substantially similar repeated objections across multiple interrogatories, using terms such as "vague," "confusing," and "lacks context" without specific justification. These generic and repeated objections violate Rule 33(b)(4), which requires objections to be stated with specificity. Courts have held that boilerplate objections are insufficient and tantamount to a failure to respond. See *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) ("An objection that does not explain why the interrogatory is objectionable is tantamount to no objection at all."). The repeated use of such objections demonstrates a clear intent to obstruct the discovery process.

## 3. Evasive and Insufficient Responses to Document Requests (FRCP 34)

The Defendants objected to the Plaintiffs' requests for insurance policies and departmental protocols, asserting that the City is "self-insured" and that L.E.A.D.S./L.O.C.K.U.P. training programs are conducted externally. However, during Plaintiff Mello's trial on November 15, 2022, Officer Rocchio testified under oath that he is an instructor for L.E.A.D.S. within the Cranston Police Department (CPD). He further stated at 13:48 that he had minutes into his testimony that he just left an In-Service Training at the Cranston Police Department before

appearing in court. The Official Audio Transcript of this testimony was provided to the Defendants at the outset of discovery.

Despite this, the Defendants' objections claim that L.E.A.D.S./L.O.C.K.U.P. training is not utilized by the CPD, asserting instead that officers are merely permitted to participate in these programs. Furthermore, the Defendants contend that the Plaintiffs mischaracterized the training as "CPD L.E.A.D.S./L.O.C.K.U.P." and argue that Defendant Rocchio cannot fully respond to related inquiries without speculation, even though the Plaintiffs are referencing documents that Defendant Rocchio himself provided during discovery.(reference bates number…)

This approach appears to be circular and constitutes a delay tactic. Under Federal Rule of Civil Procedure 34(b)(2), responses to discovery requests must clearly state whether responsive documents exist and provide specific grounds for any objections. The Defendants' responses fall short in the following ways:

1. They fail to provide documentation substantiating the City's self-insured status or clarifying whether employee coverage is addressed under the collective bargaining agreement.

2. They fail to adequately address the Plaintiffs' concerns regarding the relevance of officer training to the case.

## 3. Misapplication of *Monell* Liability

Defendants argue that Plaintiffs' requests are irrelevant absent *Monell* claims. This mischaracterizes the law. Discovery into departmental training, policies, and prior investigations is not limited to establishing *Monell* liability but also supports individual liability claims under §

1983 (*Tennessee v. Garner*, 471 U.S. 1 (1985)). Such evidence contextualizes the officers' actions and demonstrates patterns of misconduct that may have influenced their behavior during the incident.

Plaintiffs assert claims under 42 U.S.C. § 1983 for violations of their constitutional rights, including excessive force and police misconduct (Fourth Amendment), deprivation of due process including police misconduct (Fifth Amendment), and denial of equal protection (Fourteenth Amendment). These claims are further supported by Rhode Island's constitutional protections under Article I, Section 2, and statutory remedies under 42 U.S.C. § 1983. Plaintiffs also allege that the officers acted under color of law, violating 18 U.S.C. § 242, which prohibits the deprivation of rights under color of law. Defendants keep inappropriately stating that the only place Plaintiffs stated in their compliant related to Police Misconduct was the 34 U.S.C. § 12601 yet Defendants muddy the water and cause confusion as several times Plaintiffs mention and address the police misconduct which included use of deadly force (chokehold, neck restraint), and assault on a handcuffed prisoner for instance, in their initial complaint. It's important to not overlook that this is not just a use of force complaint.

The Court accepted Plaintiffs' complaint in its entirety following scrutiny under 28 U.S.C. § 1915(e)(2)(B), which requires dismissal of frivolous or insufficient claims. Although Plaintiffs inadvertently cited 34 U.S.C. § 12601 in the complaint, the Court's acceptance of the complaint in its entirety affirms that all asserted claims, including those related to police misconduct, are valid and relevant. Notably, this is the first time Defendants have raised the issue of the applicability of § 12601, despite over a year of litigation and including the past seven months of discovery.

During the discovery process, additional evidence has surfaced further supporting and compounding on the Plaintiffs' claims of police misconduct against the Defendants and incorporating the Cranston Police department. We received an email in which Officer John Rocchio admitted to failing to notify Mr.Mello that he had a no-trespass order before he was released from the Cranston Police Department, later resulting in an unnecessary, unlawful, and retaliatory arrest in February 2022. The Defendants, the Cranston police department, and Cities law department all were aware that Mr.Mello had never been formally notified of the "No Trespass Order". Additionally they pursued charges against Plaintiff Mello when he was addressing several sensitive and personal matters with the school and school administration. Such as sexually suggestive videos and images being sent between students, including his own daughter and a suicide note written by her as a result of teacher's (at that time) behavior towards the students. Some of which being juvenil in nature, were forwarded to Defendant Rocchio for investigation.

Additionally, a copy of the unofficial police report was leaked to WPRI and the Providence Journal. The unofficial report had a statement made by Office Rocchio that was not included in the official police report. He stated in the leaked and unofficial report "I later responded to the cell block and informed Mello of the two formal No Trespass Warnings". This did not happen. The media reported from the unofficial police report further casting a false light and defaming Mr. Mello. When the Plaintiffs received the batch of emails which included Officer Rocchio's email stating he didn't inform Mello of the no trespass, there were additional emails included. One was an email with a PDF attached sent from Defendant Rocchio to Defendant Arruda. Plaintiff's requested a copy of that PDF and when received on 11/28/24 discovered it was the exact unofficial police report that WPRI had received to report on.  This further highlights a

pattern of misconduct within the Cranston Police Department, raising serious concerns about the unauthorized dissemination of unofficial police reports to local media outlets.

In another exhibit supplied on 11/28/24 during discovery which has revealed that the Cranston Police Department prematurely and intentionally even against CPD policy destroyed Plaintiff Mello's knives while he was in the appeal process. The knife is and was a charge he was actively contesting. He still is addressing the false charge in an Appeal to his PCR yet in violation of their own protocols the Cranston Police Department destroyed the evidence. These actions highlight systemic disregard for policies and procedures which reinforce Plaintiffs' allegations of misconduct of not only the individual officers involved but the department as a whole.

### III. Response to Defendants' Objections

## Explicit Argument on Misstatement of § 12601 and Relevance of Discovery to Plaintiffs' Claims

Defendants argue that Plaintiffs improperly rely on 34 U.S.C. § 12601 for their claims of police misconduct. While Plaintiffs acknowledge that § 12601, which grants the Attorney General authority to address systemic law enforcement misconduct, may have been cited inadvertently, this misstatement does not undermine the validity of Plaintiffs' claims. Plaintiffs' allegations of police misconduct are grounded in well-established constitutional and statutory provisions, including 42 U.S.C. § 1983, which provides a private right of action for individual violations of constitutional rights. Plaintiffs also cite other legal bases supporting their claims, including state constitutional protections and statutory remedies.

### 1. Plaintiffs' Claims Are Not Dependent on § 12601

- Plaintiffs' claims of police misconduct are based on violations of their constitutional rights under the Fourth, Fifth, and Fourteenth Amendments, as actionable under § 1983. These claims are further bolstered by Rhode Island constitutional protections under Article I, Section 2, and remedies available under state law.

- The potential misstatement of § 12601 does not negate the Court's prior acceptance of Plaintiffs' complaint under 28 U.S.C. § 1915(e)(2)(B). The Court's review and acceptance of the complaint in its entirety confirms that the claims of police misconduct are legally sufficient and properly pled under applicable laws.

**B. Procedural Screening and Relevance of Misconduct Allegations**

Plaintiffs' complaint underwent rigorous scrutiny during the Court's screening under 28 U.S.C. § 1915(e)(2)(B). The Court's acceptance of the complaint indicates that all asserted claims—including police misconduct—are legally sufficient and relevant. The sudden introduction of the Attorney General argument, after over a year of litigation and including the past seven months of discovery, appears to be a tactical attempt to limit Plaintiffs' access to evidence rather than a substantive defense.

**C. Relevance of Discovery Requests**

Plaintiffs' discovery requests, including inquiries into officer training, internal investigations, and departmental policies, are directly relevant to their excessive force claims. Defendants' objections regarding relevance and proportionality are unsupported and contrary to well-established precedent in § 1983 litigation.

Discovery into officer training and departmental policies helps establish whether officers acted reasonably and within the bounds of their training. Such evidence is critical to assessing whether Defendants' actions violated constitutional protections. Courts consistently allow discovery into these areas, recognizing their importance in determining liability and damages in excessive force cases.

**D. Defendants' Reliance on Procedural Arguments**

Defendants' procedural objections, including claims of confusion and irrelevance, fail to address the substance of Plaintiffs' claims. Plaintiffs' discovery requests are narrowly tailored to issues central to this litigation. For example:

- **Officer Training**: Plaintiffs seek information on use-of-force protocols and training, which are critical to evaluating the reasonableness of Defendants' actions.
- **Prior Misconduct**: Evidence of prior misconduct or failure to follow departmental policies is relevant to establishing a pattern of behavior and assessing credibility.
- **Destruction of Evidence**: The destruction of Plaintiff Mello's knives, which is and was key evidence in an active appeal, highlights systemic misconduct and a disregard for established protocols, further emphasizing the need for comprehensive discovery.

Defendants' reliance on procedural deficiencies, such as failure to meet and confer under Rule 37, ignores Plaintiffs' demonstrated good faith efforts to resolve these disputes, as evidenced by prior correspondence.

**E. Addressing Defendants' "Monell" Arguments**

Defendants argue that Plaintiffs lack standing to assert a *Monell* claim due to the absence of direct allegations against the municipality. However, Plaintiffs' focus on departmental standards and policies is not limited to establishing *Monell* liability. Such discovery provides critical context for understanding whether the individual officers acted within their training and departmental guidelines. Even without a direct *Monell* claim, evidence of systemic failures may be admissible to support Plaintiffs' excessive force claims.

---

### IV. Plaintiffs' Rebuttal to Defendants' Objection on Document Tampering Allegations

### 1. Addressing Defendants' Assertions on Document Authenticity

Defendants assert that Plaintiffs' concerns about the Cranston Police Property Form are "frivolous and incorrect." However, Plaintiffs' concerns are based on clear and material discrepancies in the document provided during discovery, which include:

- Page 1: Titled "Cranston Police Department Property Form" Irregularities in text alignment and lineage.

- Page 1: Titled "Cranston Police Department Property Form" Font and ink inconsistencies.

- Page 1: Titled "Cranston Police Department Property Form" The presence of unexplained visual blemishes.

- Page 2: Titled "Tracking" is a blank page. No information filled out. Raising additional questions as to why?

- Page 3: Titled "Inventory Tracking Report for Cranston Police Department 11/18/2024" has strange text blocks and editability.

- Page 4-7 Titled "3rd District Court Case Summary", has strange text blocks and editability.

- Metadata discrepancies that raise questions about the 7 documents and their origin and creation process.

These issues were identified in Plaintiffs' December 13, 2024, Good Faith Letter. Plaintiffs raised specific, valid questions about the 7 received documents, their integrity and handling. Additionally any and all modifications, all of which remain unanswered and evaded by Defendants. Defendants contend however that our simple and plain terms in English are somehow "hard to understand" and is "confusing". Which not only compounds the delays but additionally seem to be a deflective and repeated tactic to not address the issues at core of these motions and any further developments or evidence discovered during discovery. For instance not completely addressing this recent PDF which contain the 7 questioned documents that were received in a pdf on 11/28/2025.

## 2. Defendants' Admissions Highlight Unresolved Questions

Defendants admit the following:

- The document was received by their counsel on November 18, 2024.

- It was Bates stamped and produced to Plaintiffs on November 25, 2024.

- Their counsel did not personally scan or create the PDF version provided in discovery.

While these admissions clarify part of the document's handling, they fail to address the substantive concerns about discrepancies within the document. Notably, Defendants have not explained how the irregularities identified by Plaintiffs—such as visual inconsistencies and metadata anomalies—occurred. This lack of transparency undermines the credibility of their

objections. The defendants admit the document was Bates numbered on November 25, 2024, aligning with the plaintiffs' allegations regarding the alteration. While the intent is to deny tampering, this admission does support the plaintiffs' timeline and raise questions about the document's integrity.

### 3. Materiality of Document Discrepancies

The Cranston Police Property Form is tied to critical evidence and charges, which are directly tied to Plaintiffs' claims under § 1983 such as misconduct. The document's and their integrity is especially important given its connection to the destruction of Plaintiff Mello's knives, which was and is key evidence in his appeal and current PCR appeal. Any such discrepancies or alterations compromise the discovery process and prejudice Plaintiffs' ability to litigate effectively.

### 4. Procedural and Substantive Noncompliance with FRCP

The Defendants contend that the Plaintiffs failed to request the 7 original documents under Federal Rule of Civil Procedure 34. However, the documents in question was initially supplied as part of Defendant Rocchio's response to Interrogatory #20 on November 28, 2024, and later referenced in response to Interrogatory #4 and Production of Document #1 in an email dated December 15, 2024. These actions have unnecessarily complicated the matter, creating confusion instead of addressing the core issues at hand.

Moreover, the Defendants' counsel has delayed the production of the requested 7 documents, citing the unavailability of a police captain who is on vacation until after the holidays. That was stated in an email dated 12/15/24 and as of today 01/07/25 those documents have yet to be produced.. This demonstrates a disregard for the court's authority and the obligation to facilitate

the expeditious progression of this litigation and is demonstrating how we are being harassed as Pro Se Litigants. After receiving the documents in question, Plaintiffs promptly emailed the Defendants' counsel to request the original versions of the 7 contained pages and are still awaiting a response outside of compel me for it as stated by defense counsel.

It is important to note that under FRCP Rule 26(g), parties are required to certify that their discovery responses are accurate, complete, and not misleading. The production of the documents containing identifiable discrepancies, such as text misalignment and ink variations, without addressing these issues, constitutes a violation of this rule. Counsel has admitted to adding the bates numbered, which would mean that upon opening the document and adding those numbers would have seen the over abundance of text fields and other glaring issues that Plaintiffs are seeking to have addressed.

Plaintiffs explicitly raised these concerns in a Good Faith Letter dated December 13, 2024, requesting clarification regarding discrepancies in text alignment, ink variations, and metadata for instance. Instead of providing a substantive response, the Defendants deferred their explanation, stating that their designated contact, a Cranston Police Captain, was unavailable until returning from vacation. This delay further undermines the transparency required in discovery.

This delay demonstrates a lack of due diligence in addressing the legitimate concerns raised by Plaintiffs. Furthermore, Defendants' failure to provide clear answers in response to Plaintiffs' December 14 and December 15, 2024, correspondence exacerbates these notable and redundant deficiencies. The Defendant's lawyer suggested putting in a motion to compel to get the

requested documents. Since Plaintiffs did put in the motion to compel, as suggested by Defendants counsel, Plaintiffs then get an objection from the defendant's lawyer.

## 5. Defendants' Objection Mischaracterizes Plaintiffs' Intent

At no point did Plaintiffs accuse Defendants of directly or indirectly tampering or altering the documents, just that the documents had been. Plaintiffs simply identified discrepancies in the documents produced during discovery and sought clarification about its creation and authenticity. Defendants' objection attempts to deflect attention from these valid concerns by labeling them as "frivolous." Plaintiffs' detailed and specific questions—concerning metadata, visual irregularities, and formatting issues—were made in good faith and are consistent with FRCP's emphasis on transparency in discovery

---

## V. New Evidence from APRA Request

On January 2, 2025, the Plaintiffs obtained Plaintiff Mello's Cranston Police Property Form, detailing the evidence confiscated on October 21, 2021, via an APRA request. This document exhibits significant discrepancies compared to the version provided during discovery. Key differences include the presence of the Cranston Police Department crest on the APRA version, as well as variations in formatting, text clarity, and other visual elements. The Defendant's lawyer asserts that "tampering or alterations" did not take place with the documents inconclusive but the document received from an APRA shows clear differences. Faced with the need to file a motion to compel, the Plaintiffs opted to submit an APRA request to the Cranston Police Department to obtain another copy for comparison. When asked about the additional pages that Plaintiffs had thought would accompany that document the captain who responded told us "That document is not considered public.  However, it may possibly be obtained by Discovery process

through the court." We will be mailing out a copy of the APRA document to the Defendants in good faith.

Key differences include:

- The presence of the Cranston Police Department crest on the APRA version.
- Differences in formatting, text clarity, and other visual elements.

These discrepancies raise critical questions, for instance:

1. Why does the discovery version lack the official crest?
2. What other alterations or omissions may exist if that was removed?

Such inconsistencies compromise the discovery process and reinforce concerns regarding the Defendants' compliance with FRCP as well continue to validate police misconduct.

The material discrepancies in the Cranston Police Property Form raise legitimate and significant concerns about document integrity, which is critical to Plaintiffs' ability to litigate their claims effectively. These inconsistencies—whether due to tampering, negligence, or poor handling—undermine confidence in the Defendants' discovery process. Moreover, the document itself reveals that the Cranston Police Department destroyed key evidence, specifically Plaintiff Mello's knives, while he was actively pursuing an appeal. This destruction not only violated the department's own policies but also demonstrates a broader pattern of misconduct and systemic disregard for proper procedures within the police department. Judicial oversight and remedies such as forensic analysis, custodian certification, and the production of original 7 documents are necessary to ensure fairness and accountability. Without resolution of these discrepancies and

proper judicial intervention, Plaintiffs will continue to face undue prejudice and burden, compromising their constitutional claims under § 1983 and the broader integrity of this case.

## VI. Defendants' Delay Tactics

Defendants have employed a pattern of delay tactics throughout this litigation that undermine the principles set forth in FRCP Rule 1, which mandates the "just, speedy, and inexpensive determination" of cases. Specifically, Defendants consistently wait until the last possible moment to respond to Plaintiffs' motions, a practice that not only maximizes procedural delay but also burdens the Plaintiffs with unnecessary uncertainty and prevents efficient case management. Such last-minute filings often force Plaintiffs to scramble to prepare timely replies, diverting resources from substantive legal arguments and increasing litigation costs.

In addition to their delays, Defendants frequently object to motions and discovery requests on the grounds that the materials submitted are "confusing," "vague," or "overly broad" continually using boilerplate responses to everything. However, these objections lack substantive merit and appear calculated to stall the resolution of the issues at hand. Despite raising these objections, Defendants repeatedly fail to provide clear, substantive responses to Plaintiffs' inquiries. Instead, they offer self-serving answers that disregard the specific questions posed, reframing the inquiries in a manner that suits their narrative rather than addressing the actual substance of the requests. This obstructive behavior not only thwarts Plaintiffs' ability to obtain critical information but also contravenes the purpose of discovery: to promote transparency and allow the parties to prepare for trial efficiently.

We respectfully request the Court's intervention to compel the Defendants to comply with their discovery obligations and procedural deadlines in this matter. As pro se litigants who are homeless and indigent, we are placed at a profound disadvantage by the Defendants' continued delays, evasive conduct, and bad faith practices, which have insurmountably obstructed the progress of this case and caused us significant harm.

The challenges of navigating this litigation are compounded by the extreme difficulties of homelessness. Each day, we face the harsh realities of unstable living conditions, including exposure to freezing temperatures, inadequate shelter, limited access to electricity, and unreliable communication. These environmental hardships drain our physical and mental energy, leaving us with fewer resources to dedicate to this case. Furthermore, the emotional toll of homelessness, coupled with the trauma of the events that gave rise to this lawsuit, exacerbates our distress and undermines our ability to fully participate in these proceedings.

The Defendants' tactics have only amplified these hardships. By submitting discovery responses at the last possible moment, providing incomplete or unusable materials, and filing unnecessary continuances, they have delayed the resolution of this case and inflicted additional emotional and logistical strain on us. For example, Factual Discovery closed on 1/6/25 and on the last day the defendants submitted a "Motion to Compel More Responsive Answers" in which Plaintiffs were not notified until 1/7/25 only validating to Your Honor the bad faith tactics the Defendants continue with as the Plaintiffs did not request a meet and confer to address these issues. These actions serve no legitimate purpose and appear calculated to exploit our limited resources, creating an uneven playing field that undermines the principles of fairness and justice.

As victims of excessive force and misconduct, we already bear the burden of reliving these traumatic events through this litigation. Every delay prolongs our suffering and denies us the opportunity to seek closure and healing. Justice delayed is justice denied, and in our circumstances, delays are particularly devastating. With the winter season upon us, the daily fight for survival takes precedence, leaving us even less capacity to respond to these delays and defend our rights effectively.

We urge the Court to recognize the extraordinary prejudice we face as indigent pro se litigants. The power imbalance in this case is stark, with Defendants benefiting from experienced legal representation and institutional resources, while we struggle to meet even the basic demands of the litigation process. Without timely intervention from the Court, the Defendants' bad faith conduct does continue to obstruct justice and impose unnecessary harm upon us.

Furthermore, the Defendants' actions undermine the judiciary's interest in managing cases effectively and resolving disputes in a timely and equitable manner. The cumulative effect of these delay tactics is to frustrate the administration of justice, delay the resolution of Plaintiffs' claims, and unfairly tilt the litigation process in Defendants' favor.

In light of this consistent pattern of delay and obstruction, Plaintiffs respectfully request that the court take appropriate measures to ensure compliance with procedural rules and to prevent further unnecessary and undue delays that prejudice Plaintiffs' ability to litigate their claims.

---

## VII. Relief Sought Under FRCP

Plaintiffs' requests for relief are reasonable, necessary, and supported by the FRCP:

### 1. Concerns of Document(s) Alteration

The discrepancies identified in discovery documents warrant judicial oversight to address potential misconduct. Producing altered or inconsistent documents undermines the integrity of the legal process (*Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 112 (2d Cir. 2002)).

### 2. Request for Originals and Custodian Certification

Plaintiffs seek access to original, certified documents under FRCP 34(b)(2)(E). Verifying documents origins is essential to preclude prejudice and ensure accuracy.

### 3. Independent Digital Forensic Examination

Plaintiffs request an independent forensic expert to examine the documents. This request is justified given the substantial discrepancies identified (*Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010)).

### 4. Sanctions for Discovery Misconduct: Defendants' evasive responses and delayed clarifications justify sanctions under FRCP Rule 37(b).

### 5. Responsibility Under Rule 26(g)

Defendants have failed to meet their obligation to provide accurate, complete responses under FRCP Rule 26(g). Judicial intervention is necessary to rectify these deficiencies.

---

### VII. Conclusion

For all the reasons set forth above, Plaintiffs respectfully request that this Court overrule and deny Defendants' objections, grant Plaintiffs' Motion to Compel Discovery in its entirety, and schedule an immediate Discovery Conference. Defendants' objections lack both procedural and substantive merit, violating the spirit and requirements of the Federal Rules of Civil Procedure. The record demonstrates that Plaintiffs have made repeated good faith efforts to resolve discovery disputes informally, only to be met with evasive responses, boilerplate objections, and undue delay.

Defendants' conduct—ranging from last-minute filings and incomplete discovery responses to the submission of questionable or altered documents—has prejudiced Plaintiffs, who are proceeding pro se under exceptionally difficult circumstances, including homelessness. Without this Court's intervention, Plaintiffs will remain unable to obtain the evidence necessary to prosecute their claims and protect their constitutional rights. Accordingly, Plaintiffs request that the Court issue an order compelling Defendants to produce all outstanding discovery, address the integrity concerns regarding the Cranston Police Property Form, and facilitate a Discovery Conference to resolve any remaining disputes expeditiously. Plaintiffs further request any additional relief the Court deems just and proper under the circumstances.

Included are:
Exhibit A: Copy of APRA Document
Exhibit B: Copy of Email receiving the APRA Document

Respectfully submitted,

/s/ Joshua Mello
/s/ Rachel Ware
Pro Se Plaintiffs
57 Rolfe Square, Unit 10113
Cranston, RI 02910
401.426.0778

**CERTIFICATION**

I certify that a true and accurate copy of the within was emailed and mailed with signature confirmation, to DeSisto Law LLC on the 9th day of January 2025:

Julia K. Scott-Benevides
DeSisto Law LLC
Providence, RI 02903
(401) 272-4442
julia@desistolaw.com

/s/ Joshua Mello