UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSHUA MELLO AND RACHEL WARE, PLAINTIFFS
 V.
CASE NOS.: 1:2023-CV-00479 & 1:2023-CV-00480
EDWARD ARRUDA AND JOHN ROCCHIO, DEFENDANTS

**PLAINTIFFS' MOTION FOR JUDICIAL NOTICE**

Plaintiffs, Joshua Mello and Rachel Ware, respectfully move this Honorable Court to take judicial notice under Federal Rule of Evidence 201 of the video evidence referenced in discovery, which demonstrates inconsistencies in Defendant Edward Arruda's sworn interrogatory responses. Specifically, Plaintiffs request that the Court take notice of:

1. Surveillance video from Western Hills Middle School, labeled as "Cranston-Initial Disclosures-000055 (Mello)," and
2. Cell phone video from October 21, 2021, labeled as "Cranston-Initial Disclosures-000053 (Mello)."
3. Photographic stills derived from the above videos, which clearly depict key moments of the incident in question.

This evidence is indisputable, readily verifiable, and contradicts Defendant Arruda's sworn testimony. Judicial notice is appropriate because these materials meet the criteria of Rule 201(b)—they are either generally known within the jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

**I. INTRODUCTION**

On January 29, 2025, Defendant Arruda was ordered to supplement his response to an interrogatory by clarifying his testimonial reference (based on the actual testimony) to putting Plaintiff into a so-called "head to head" while descending to the floor, and to state whether and to what degree such testimony describes a technique or procedure that is the subject of any training he has received. The Court specifically required Defendant to state whether this maneuver is part of any formal law enforcement training.

1

Rather than providing a clear and truthful response, Defendant Arruda offered a vague, contradictory, and misleading explanation, attempting to shield himself behind conflicting training programs while evading direct accountability. His responses are riddled with boilerplate objections, vague legal conclusions, and speculative justifications, all deliberately crafted to avoid answering the question. This persistent pattern of evasion, despite a court order requiring more substantive responses, constitutes discovery misconduct. He claims:

1. He is a Defensive Tactics Instructor, implying expertise.
2. He relied on L.E.A.D.S. (de-escalation training) and L.O.C.K.U.P. (physical control training) during the incident.

These statements are mutually exclusive and irreconcilable—a trained use-of-force instructor should be able to state which methodology governed his actions. Defendant Arruda fails to identify whether "head-to-head" is a formally trained technique, leaving open the question of whether he acted within policy or recklessly improvised.

Further, Defendant's response shifts erratically between third-person and first-person perspectives, making it unclear whether the response is a legal narrative prepared by counsel or Defendant Arruda's sworn personal testimony. This perspective shift suggests an intentional effort to blur accountability and creates unnecessary confusion about who is narrating the events.

Defendant Arruda's misleading and self-contradictory response obstructs Plaintiffs' ability to assess the legality of his use of force and warrants judicial intervention.

**II. INCONSISTENCIES IN DEFENDANT'S RESPONSE**

Defendant Arruda's sworn, notarized and certified interrogatory response directly contradicts the video evidence supplied in discovery, revealing that his claims are factually untrue and legally unsupportable. Officer Arrund's descriptions do not align with the level of force observed. Below is a clear breakdown of Defendant Arruda's misstatements versus what the video recording captured:

| **Defendant's Sworn Interrogatory Response** | **Video Evidence** | **Video and timestamp** |
|---|---|---|
| I grabbed Mr. Mello, I put him head to head and I slowly descended to the floor, I took him down. There was no strikes, there wasn't a need of any strikes, we just brought him down | <ul><li>The video shows a violent, forceful takedown, not a "controlled descent."</li><li>Video and photographic evidence depict aggressive force applied to the neck and upper body.</li></ul> | See video of main lobby Cranston-Initial Disclosures-000055 (Mello)<br><br>Time:8:42:39 to 8:42:46 (initial take down took 7 seconds) |
| while the wife was standing over us, video taping and Rocchio alerted me that there were knives, he grabbed the knives and he kind of tossed them to the side, and I never touched the knives, at least to my recollection it was Mr. Vesey that picked the knives up because I saw the video after from the school surveillance and he secured the knives. | <ul><li>Video shows Officer Arruda was outside and not present when Officer Rocchio said to Plaintiff Mello "You have knives on you"</li><li>Video also shows Mr. Vesey attempts to grab the knives but never touches the knives. Officer Rocchio tossed and then retrieved them and tried to secure them on his person and then proceeded to hand them off to Officer Arruda who had just walked back into the vestibule.</li></ul> | See cell phone video. Cranston-Initial Disclosures-000053 (Mello)<br><br>Time Stamp 0:00 to 1:08<br><br>See video of front door, Cranston-Initial Disclosures -000055 (Mello)<br><br>Time Stamp 8:43:42 to 8:44:12 |
| while the wife was standing over us, video taping and Rocchio alerted me that there were knives, he grabbed the knives and he kind of tossed them to the side, and I never touched the knives, at least to my recollection it was Mr. Vesey that picked the knives up because I saw the video after from the school surveillance and he secured the knives. | Watch Cell phone video in slow motion. At time 1:13 Defendant Rocchio hands Defendant Arruda the knife or knives. Defendant Arruda then places the knife or knives in his back left pocket, At 1:31 Defendant Arruda reaches for the knife or knives in his back left pocket which then becomes visible empty. Defendant Arruda then | cell phone video. Cranston-Initial Disclosures-000053 (Mello)<br><br>Time stamp 1:13 to 1:32 |

3

| | | |
|---|---|---|
| | replaces the empty pocket with a cell phone. | |
| Defendant Rocchio attempted to grab Plaintiff Mello's wrist to take him into custody. | The video indisputably shows the grab, which was successful. Defendant Rocchio never releases Plaintiff's arm, even while Defendant Arruda is putting Plaintiff Mello in a choke hold/neck restraint visually from behind and pulling him in the opposite direction, until they go through the doorway. | See video of main lobby Cranston-Initial Disclosures-0000 55 (Mello)<br><br>Time:8:42:39 to 8:42:46 (initial take down took 7 seconds) |
| Defendant further described that Defendant Rocchio was unable to grab his arm, and as a Defensive Tactics instructor Defendant put Defendant's head next to Plaintiff Mello's head because that was the only advantage Defendant could get over him. Finally, Defendant described as Defendant put his head next to Plaintiff Mello's head, Defendant and Defendant Rocchio brought Plaintiff Mello to the ground. | In the video Defendant Rocchio is seen grabbing Plaintiff Mellos wrist and then arm and never loses contact with his arm even while Defendant Arruda places Plaintiff Mello in a choke hold and or neck restraint using his body weight to bring him forcibly to the ground. The wrist grab is not lost until they all go to the ground through the doorway into the vestibule | See video of main lobby Cranston-Initial Disclosures-0000 55 (Mello)<br><br>Time:8:42:39 to 8:42:46 (initial take down took 7 seconds) |
| | | |
| Plaintiff Ware was in the middle of Plaintiff Mello and Defendant Rocchio, and it appeared to Defendant that Plaintiff Ware was grabbing at Officer Rocchio's grip around Plaintiff's right arm. | ● Video shows Plaintiff Ware is only touching her husband and never touches Defendant Rocchio.<br>● The video shows that Plaintiff Ware is not seen grabbing anyone other than Plaintiff Mello, contradicting Defendant Arruda's claim that she was grabbing at Defendant Rocchio's grip on Plaintiff Mello. | See video of main lobby Cranston-Initial Disclosures-0000 55 (Mello)<br><br>Time:8:42:39 to 8:42:46 (initial take down took 7 seconds) |
| Due to the close proximity, Defendant was able to gain control of Plaintiff Mello by going "head to head" which was cradling Mr. Mello's head in between my head and left shoulder, and in a controlled descent, went to a knee to place Plaintiff down onto the carpet in the foyer of the front | ● Defendant Arruda's description of a "controlled descent" is inaccurate based on the video. The motion suggests rapid and forceful action. | See video of main lobby Cranston-Initial Disclosures-0000 55 (Mello)<br><br>Time:8:42:39 to |

4

| | | |
|---|---|---|
| entrance of the school. | <ul><li>Arruda claims a "head to head" restraint was used to gain control, but the video displays a choke hold/neck restraint and an immediate force-driven takedown.</li><li>Rapid, forceful movement contradicts the claim of a "controlled descent" with video evidence of foot sweeping and or tripping of Plaintiff Mello in the process of take down.</li><li>Arruda's body position(s) and moments in the video demonstrate a neck restraint/choke hold and aggressive force, rather than a controlled slow takedown.</li><li>The visible force viewed in the video to Mr. Mello's head and neck is forceful rather than guiding or protective.</li></ul> | 8:42:46 (initial take down took 7 seconds) |
| I was able to utilize skills that I learned though the L.O.C.K.U.P. and L.E.A.D.S. training to safely bring Plaintiff Mello to the ground | <ul><li>As evidenced by the video Plaintiff Mello was not brought to the ground safely. Officer Arruda used Mello's neck and head to bring him to the ground in one quick forceful action.</li><li>Additionally Plaintiff Mello is seen pinned down forcefully, contradicting Defendant Arruda's "controlled" takedown and placed on carpet.</li></ul> | See video of main lobby Cranston-Initial Disclosures-000055 (Mello)<br><br>Time:8:42:39 to 8:42:46 (initial take down took 7 seconds)<br><br>cell phone video. Cranston-Initial Disclosures-000053 (Mello)<br><br>Time stamp 0:00 to 0:26 |

5

Please also see Exhibits A-O which are photographic stills derived from the above videos, which clearly depict key moments of the incident in question. Exhibit A-B depicts Defendant Rocchio's successful wrist and then arm grab of Plaintiff Mello. All Exhibits confirm Plaintiff Ware only touched Plaintiff Mello and not Defendant Rocchio. And Exhibits C-O depict the sequence of Defendant Arruda's engagement with Plaintiff Mello using a choke hold and or neck restraint to bring Plaintiff Mello to the floor.

These discrepancies raise concerns regarding the accuracy of Defendant's sworn statements and warrants judicial notice of the video evidence; they arise in the context of court-ordered discovery responses. Such repeated violations suggest a deliberate effort by the defense to mislead the court, and/or delay proceedings, and/or manipulate the case.

Additionally, Defendant Arruda's response confusingly shifts perspectives inconsistently, raising concerns about whether he is personally testifying or reciting a scripted legal defense.

- Third-person perspective (suggesting an objective narrative prepared by legal counsel):

  - *"Defendant Rocchio made an attempt to take Plaintiff Mello into custody, Defendant Rocchio attempted to take control of Plaintiff Mello's right arm, which prompted Plaintiff Mello to attempt to move his arm away."*
  - Here, Arruda describes events as if he is an outside observer, distancing himself from direct involvement.
- Sudden shift to first-person perspective (indicating a personal statement):

  - *"Due to the close proximity, Defendant was able to gain control of Plaintiff Mello by going 'head to head,' which was cradling Mr. Mello's head in between my head and left shoulder, and in a controlled descent, went to a knee to place Plaintiff down onto the carpet..."*
  - The shift to *"my head and left shoulder"* contradicts the prior detached narrative and creates confusion regarding whether the statement is still an objective summary or Defendant Arruda's personal testimony.

- Return to third-person perspective (blurring accountability):

  - *"I am trained in L.O.C.K.U.P and L.E.A.D.S. De-escalation Strategies and Tactical Options, which is training conducted related to close quarters to a suspect, which is utilized to help officers be efficient and safe in making an arrest."*
  - The statement again removes direct personal responsibility, using vague references to training instead of detailing how Defendant Arruda personally applied these techniques.

These blatant contradictions and perspective shifts expose Defendant Arruda's attempt to rewrite history to shield himself from liability. His failure to provide a straightforward response raises serious concerns about credibility, honesty, and deliberate obfuscation.

## III. LEGAL BASIS FOR JUDICIAL NOTICE

Under Rule 201(b), a court may take judicial notice of facts that are:
 (1) generally known within the trial court's jurisdiction, or
 (2) capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned.

Here, the video evidence from discovery meets both criteria because:

- It was provided by the Defendants themselves, ensuring authenticity.
- It presents an objective record of events, eliminating subjective interpretation.

Courts routinely take judicial notice of video evidence in use-of-force cases when it is undisputed and properly authenticated. See *Scott v. Harris, 550 U.S. 372, 378-81 (2007) (holding that when a videotape "blatantly contradicts" a party's account, courts may rely on the video rather than disputed testimony).*

In *Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008),* the Ninth Circuit found that judicial notice of police video evidence was appropriate when evaluating an officer's justification for using force. Similarly, in *Tucker v. City of Shreveport, 998 F.3d 165, 173 (5th*

7

*Cir. 2021),* the court determined that video footage "can be judicially noticed when it is part of the record and its authenticity is not in dispute."

Here, the surveillance video evidence from Western Hills Middle School and cell phone video evidence from Defendants' own disclosures provide indisputable evidence of the events in question. This evidence contradicts Defendant Arruda's sworn interrogatory responses regarding the use of force against Plaintiff Mello. As such, judicial notice is warranted.

**Legal Accountability for False or Misleading Interrogatory Responses**

**Interrogatories as Sworn Statements**

Under Rule 33 of the Federal Rules of Civil Procedure (FRCP), interrogatory responses must be provided under oath by the responding party—in this case, Defendant Arruda. These responses are legally binding, and any intentional falsehoods or misleading statements can result in serious legal consequences.

**Notarization and Attorney Certification**

Following the sworn statement, interrogatory responses must be notarized, further affirming who is making the statements. However, the responsibility does not end with the responding party. Under FRCP Rule 26(g), the attorney representing the party must also sign and certify the responses. By doing so, the attorney affirms that:

- The responses are truthful and complete.
- They comply with applicable legal rules and evidentiary standards.
- They are not interposed for an improper purpose, such as delay or deception.

The attorney's certification is not a mere formality—it carries significant legal weight. If an attorney knowingly allows false or misleading responses to be submitted, they, too, may be subject to sanctions.

**Consequences for False or Misleading Responses**

Both the responding party and their attorney can face serious consequences for providing false or misleading discovery responses, including:

1. **Perjury (18 U.S.C. § 1621):** False statements made under oath constitute perjury, a federal offense with severe penalties.
2. **Sanctions under FRCP Rule 37:** Courts may impose sanctions for discovery violations, including monetary penalties, evidence exclusions, adverse inferences, or even default judgment.
3. **Attorney Disciplinary Action:** If an attorney certifies false or misleading responses, they may face professional consequences, including disciplinary action by the court or bar association for violating ethical duties under the ABA Model Rules of Professional Conduct.

**Attorney's Role in Enabling Bad-Faith Discovery Violations**

In this case, Defendant Arruda's contradictory sworn statements were not merely accidental inconsistencies—they were court-ordered responses meant to correct prior incomplete and insufficient interrogatory answers. The fact that these falsehoods persisted suggests not only a failure on Defendant Arruda's part but also a failure of his attorney to meet their obligations under FRCP Rule 26(g).

If the attorney knowingly allowed, facilitated, or failed to correct these misrepresentations, this constitutes an intentional effort to mislead the court and manipulate the legal process. Continued bad-faith discovery violations may justify severe sanctions, including those directly against counsel.

**V. RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1. Take judicial notice under Federal Rule of Evidence 201 of the facts presented in the following evidence:
    - Western Hills Middle School Surveillance Video ("Cranston-Initial Disclosures-000055 (Mello)")

- - Cell Phone Video from October 21, 2021 ("Cranston-Initial Disclosures-000053 (Mello)")
  - Photographic stills derived from the above videos, which clearly depict key moments of the incident in question.
2. Recognize that the video evidence directly contradicts Defendant Arruda's sworn interrogatory response.
3. Grant any further relief that this Court deems just and proper.

Plaintiffs request oral argument on this motion if the Court determines that further clarification is necessary.

## VI. CONCLUSION

Defendant Arruda's response is not just evasive—it is a deliberate and calculated attempt to mislead. Plaintiffs request judicial notice of the Western Hills Middle School Surveillance Video ("Cranston-Initial Disclosures-000055 (Mello)") and Cell Phone Video from October 21, 2021 ("Cranston-Initial Disclosures-000053 (Mello)") and an order compelling a truthful, non-evasive, and logically consistent response that conforms to the Court's directives.

As pro se litigants, we are making every effort to navigate the legal system and address the serious violations arising from the Defendants' supplemental interrogatory responses. Given the timeline of events—including receiving the supplemental responses, the filing of the Motion to Dismiss, and the scheduling of the hearing—we are working diligently to determine the most equitable course of action.

Defendant Rocchio provided his supplemental responses on February 18, 2025, followed by the filing of the Motion to Dismiss on February 20, 2025. Defendant Arruda then submitted his supplemental responses on February 26, 2025, and within a week, on March 4, 2025, we received notice of a hearing on the Motion to Dismiss. During this time, we discovered that both Defendants included false statements in their responses and failed to fully comply with the Court's prior order compelling more complete answers.

In order to ensure these motions are properly considered, we understood that they must be submitted at least 10 days prior to the scheduled hearing in accordance with procedural

requirements. As pro se litigants, we are actively navigating and learning the appropriate legal procedures and are making every effort to comply with the Court's rules. We have diligently prepared these motions and are submitting them in a timely manner to facilitate a fair and orderly review. Our intent is to provide all parties with sufficient time to review and respond before the upcoming hearing.

Through this Motion for Judicial Notice, we are submitting video evidence that directly refutes the false statements made in the interrogatory responses. Additionally, in our evidentiary brief opposing Defendants' Rule 37 Motion to Dismiss[1], we address further concerns and procedural issues related to discovery.

As pro se litigants, we are navigating the legal process to the best of our ability to ensure that these serious violations are properly addressed and that the Court takes appropriate action in a timely manner.

Respectfully submitted,

/s/ Joshua Mello
/s/ Rachel Ware
Pro Se Plaintiffs
57 Rolfe Square, Unit 10113
Cranston, RI 02910
kskustomsrideons@gmail.com
401.426.0778

Exhibits A-O are photographic stills of the videos provided clearly depicting key moments of the incident in question.

Video have been supplied to the courts via box.com
Cranston-Initial Disclosures-000055 (Mello) Western Hills Middle School Surveillance Video
Cranston-Initial Disclosures-000053 (Mello)  Cell Phone Video from October 21, 2021

---

[1] See Case Nos.: 1:2023-cv-00479 & 1:2023-cv-00480; EVIDENTIARY BRIEF IN OPPOSITION TO DEFENDANT'S RULE 37 MOTION TO DISMISS

11

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th of March 2025, a copy of the foregoing PLAINTIFFS' MOTION FOR JUDICIAL NOTICE was served via the e-filing system to:

Julia K. Scott-Benevides
DeSisto Law LLC
(401) 272-4442
julia@desistolaw.com


/s/ Joshua Mello
/s/ Rachel Ware