UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSHUA MELLO, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 23-479JJM |
| | : | |
| EDWARD ARRUDA, et al., | : | |
|     Defendants. | : | |
| | : | |
| JOSHUA MELLO and RACHEL WARE, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 23-480JJM |
| | : | |
| JOHN ROCCHIO, et al., | : | |
|     Defendants. | : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is Plaintiffs' motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). ECF No. 53/76.[1] Also pending is Plaintiffs' related motion to strike Defendants' "misleading and scandalous statements" in their opposition to the motion for reconsideration. ECF No. 58/81. For the reasons that follow, the motion for reconsideration is granted in part and denied in part, while the motion to strike is denied.

**I.   Standard of Review for Reconsideration**

---

[1] This Memorandum and Order is issuing in two related cases, 23-cv-479JJM and 23-cv-480JJM. The two cases are consolidated and differ principally in that only Plaintiff Joshua Mello is prosecuting the claim in 23-cv-479JJM, while he is joined by his wife, Plaintiff Rachel Ware, as co-Plaintiff in 23-cv-480JJM, as well as that the ECF docketing numbers do not align because 23-cv-480JJM has had more filings. In the interest of efficiency, only one version of this Order is being issued. Thus, to the extent that 23-cv-479JJM is considered, references to "Plaintiffs" may be interpreted as referring only to Plaintiff Mello. Also, ECF references citing to identical filings in both cases contain, first, the docket number in 23-cv-479JJM and, second, the docket number in 23-cv-480JJM.

"The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly."[2] Fabrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc., 682 F.3d 26, 31 (1st Cir. 2012) (internal quotation marks omitted). To prevail, the moving party "must either clearly establish a manifest error of law or must present newly discovered evidence." Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (internal quotation marks omitted). A motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (internal quotation marks omitted). To the extent that the same legal and factual arguments could have been made at the time of the original hearing and the original decision does not result in manifest injustice, reconsideration should be denied. See McKnight v. Honeywell Safety Prods. USA, Inc., C.A. No. 16-132MSM, 2024 WL 4569927, at *6 (D.R.I. Oct. 24, 2024).

## II.     Analysis of Motion for Reconsideration

### A.     Claims in Issue in these Cases

These cases are based on an incident that occurred on October 21, 2021, at a Cranston middle school attended by Plaintiff Mello's daughter. On that day, Plaintiff Mello, accompanied by Plaintiff Ware, went to the school and school officials responded with concerns arising from an Order of the Rhode Island Family Court regarding whether Plaintiff Mello was barred from

---

[2] Defendants correctly point out that Fed. R. Civ. P. 59, on which Plaintiffs rely, applies to a new trial or to alter or amend a judgment. On reply, Plaintiffs shifted to seeking relief under Fed. R. Civ. P. 60(b), which is an extraordinary remedy generally used to seek relief from a final judgment that is granted only in exceptional circumstances. Pullen-Walker v. Roosevelt Univ., 263 F. App'x 517, 518 (7th Cir. 2008). Mindful of Plaintiffs' *pro se* status, the Court has considered Plaintiffs' motion under the applicable standard for reconsideration of any interim order of the Court. See Wagner v. Adickman, No. CV-19-03216-PHX-SMB, 2021 WL 289663, at *1 (D. Ariz. Jan. 28, 2021) (motion to vacate interim order under Rule 60(b) "is really a motion for reconsideration").

removing his daughter from school. ECF No. 1/20. Plaintiff Mello's reaction resulted in an imbroglio that culminated in two Cranston police officers arresting him through the use of what he alleges was excessive force resulting in physical injury. Id. Following arrest, Plaintiff Mello was charged by the State with resisting arrest, disorderly conduct and possession of a prohibited weapon (knive(s)) other than a firearm. At trial in the Rhode Island Third Division District Court in November 2022, Plaintiff Mello was convicted of disorderly conduct and possession of a prohibited weapon other than a firearm. ECF No. 54/77 at 14-16. As of this writing, these criminal convictions have not been reversed, expunged by executive order or declared invalid; they remain valid criminal convictions under Rhode Island state law. As he confirmed during the hearing on January 24, 2025, Plaintiff Mello's post-conviction relief petition collaterally attacking their viability remains pending. See 23-cv-480JJM, ECF No. 15 at 3-4.

Based on this incident, Plaintiffs filed two cases that asserted two discrete categories of claims. First, they alleged that Plaintiff Mello was the victim of excessive force used by the two arresting police officers and that Plaintiff Ware experienced emotional distress by her proximity to this violent and unprovoked physical assault on her husband in her presence.[3] ECF No. 1/20. Second, they alleged that Cranston police and school officials lied and deceived the state prosecutors and the state court resulting in Plaintiff Mello's wrongful conviction for disorderly conduct and possession of prohibited knives. These second category of claims focus *inter alia* on the length of the knives in issue, alleging that the evidence supporting Plaintiff Mello's conviction for possessing knives longer than permitted by state law was inadequate, manipulated and based on perjury and ineffective assistance of counsel. E.g., 23-cv-480JJM, ECF No. 20 at

---

[3] Leniently read in light of her *pro se* status, this articulation of the Ware claim is derived not just from her complaint, but also from briefing on the motion to dismiss and from Plaintiffs' Rule 16 statement. The Court expresses no view whether the Ware claim states a viable cause of action.

7, 9, 13; 23-cv-479JJM, ECF No. 1 at 22 (alleging police officer lied at criminal trial when he testified that he measured the knives and "brought them to BCI to be logged for evidence"); 23-cv-480JJM, ECF No. 20 at 9 (alleging that Plaintiff Mello's criminal attorney deprived him of a fair trial by failing to acknowledge that the "the knife in question" was "exactly 3 inches which complies with Rhode Island's laws"). As to Plaintiffs' second category of claims, the Court issued an Order holding that they are barred by Heck v. Humphrey, 512 U.S. 477 (1994), and that "the Court dismisses all claims in the Complaint, except for the specific allegation of excessive force against [the two Cranston police officers]." 23-cv-480JJM, ECF No. 16. On Plaintiffs' motion for reconsideration of this Order, the Court held that "[t]here is no basis for the Court to reconsider its Order." 23-cv-480JJM, ECF No. 34. Thus, these second category of claims, including Plaintiffs' allegation that the evidence supporting Plaintiff Mello's conviction for possession of knives prohibited by state law was insufficient, manipulated and tainted by perjury and ineffective assistance of counsel, are not presently in issue in this case.

    B.    <u>Text Orders in Issue</u>

The primary target of Plaintiffs' motion for reconsideration is the Court's Text Order of January 29, 2025, which resolved Plaintiffs' motion arising from their claim of tampered evidence produced in discovery in these cases and entered following an extended in-person hearing held on January 24, 2025:

> TEXT ORDER granting in part and denying in part Plaintiff's [ECF No. 42/65] MOTION *Emergency Discovery Conference Regarding Tampered and Altered Document Produced by Defendants*. Plaintiff's motion was granted to the extent that the Court carefully reviewed Plaintiff's written filings regarding his claim of spoliation of and tampering with evidence and the Court held an extended in-person hearing at which the Court heard Plaintiff's arguments regarding the allegation of spoliation of/tampering with evidence. The Court finds that, as Plaintiff [Mello] conceded during the hearing, this document may arguably be relevant to his ongoing postconviction relief ("PCR") proceedings; however, it has no relevancy to the claims of excessive force in issue in this case. See 23-cv-

> 480JJM, ECF Nos. 16, 34 (claims arising from criminal conviction that is the subject of such ongoing PCR proceedings are Heck-barred).  Further, having carefully considered Plaintiff's submissions and arguments, the Court finds that Plaintiff has not presented anything establishing or permitting the inference that the document in issue was materially altered or tampered with in any way.  Accordingly, any other relief sought by this motion is denied.

See 23-cv-479, 23-cv-480, Text Order of Jan. 29, 2025.  Plaintiffs also ask for reconsideration of the Court's other text orders that issued on the same day; these decisions addressed three other discovery motions (ECF No. 38/61, 41/64, 44/67).  As grounds for the latter contention, Plaintiffs argue that the Court's nearly two-hour in-person hearing[4] was not long enough to afford them a full and fair opportunity to present their arguments on all four motions; Plaintiffs contend that due process required that the Court schedule a separate hearing on each.[5]  Plaintiffs point to no error of law tainting the three discovery decisions unrelated to evidence tampering nor do they contend that there is newly discovered evidence that arguably might support reconsideration of these decisions.  Based on this deficiency and the Court's finding that due process did not require separate oral arguments (or any oral argument) on each of these three motions, to the extent that Plaintiffs' motion seeks reconsideration of the text orders resolving them, the motion is denied.

---

[4] The Court set the in-person hearing on four discovery motions (including the evidence-tampering motion) for one hour beginning at 10 a.m., but Plaintiffs were late, and the hearing did not begin until 10:15 a.m.  To allow Plaintiffs more time, the Court extended the hearing to almost noon, at which time the Court had to stop to address an unrelated matter.

[5] The Court notes that these three discovery motions had been briefed with legal and factual arguments that were fully developed by Plaintiffs and Defendants pursuant to DRI LR Cv 7(a).  Therefore, these three motions could well have been decided by the Court on the papers without adversely impacting Plaintiffs' right to due process.  Domegan v. Fair, 859 F.2d 1059, 1065 (1st Cir. 1988) ("As we have stated with echolalic regularity, the district courts have considerable discretion in deciding whether or not to allow oral argument on a . . . motion"; "eschewal of oral argument was well within the pale").  Due process does not encompass the right to oral argument on a motion.  Id. (citing Spark v. Catholic University of America, 510 F.2d 1277, 1280 (D.C. Cir. 1975) (per curiam)).  Nor (except for the motion arising from the allegedly tampered document) did any of Plaintiffs' motions advise the Court that Plaintiffs were requesting oral argument or an evidentiary hearing as permitted by DRI LR Cv 7(c).

C.     Background Pertinent to Tampering Motion

In the original tampering motion, Plaintiffs argued that the Court should afford them specified[6] relief because Defendants have tampered with and altered a document produced in discovery. The focus of the tampering motion is a three-page document titled "Cranston Police Department Property Form" ("Property Form"), which was Bates-numbered and produced in discovery in these cases. ECF No. 42-1/65-1 at 1-3. The Property Form reflects that the three knives seized from Plaintiff Mello's person on October 21, 2021, were temporarily placed in pass-through storage by Defendant Rocchio on the same day, were moved to permanent storage on the following day, and were destroyed in 2023 (well after Plaintiff Mello had been found guilty at trial). Id.

As developed in the briefing and argument on the original tampering motion, Plaintiffs relied on their belief that the Property Form produced in discovery, which does not have a clearly visible watermark ("crest"), was manipulated because they asked for the same record in an APRA[7] request and the version that was provided as required by APRA [ECF No. 50-3/73-3][8] has a watermark, although it could not be seen on the copy provided to the Court during the hearing.[9] In addition, Plaintiffs argued that Plaintiff Mello's analysis of the metadata of each

---

[6] Plaintiffs' underlying motion asked the Court to convene a discovery conference, which relief the Court granted. It also asked the Court to order Defendant to produce an unaltered certified version of the document, with related information to "clarify its authenticity"; to appoint an independent digital forensic expert at Defendants' expense; to impose Fed. R. Civ. P. 37 sanctions for discovery misconduct; and to grant such other relief as necessary to ensure integrity and fairness of discovery. ECF Nos 42/65 at 4-5.

[7] Access to Public Records Act, R.I. Gen. Laws §§ 38-2-1, *et seq*.

[8] To resolve confusion during the hearing regarding which of the many iterations of the Property Form should be considered by the Court, this version of the APRA-produced form was handed up to the Court and used by the Court during the hearing.

[9] During the hearing, Plaintiff Mello conceded that the handed-up copy of the APRA version of the Property Form lacked a visible watermark: "I can't speak to why the crest is missing . . . the printed copies in front of you are not indicative of what they would look like, on a computer screen . . . the APRA requested document . . . the lower area

version revealed "signs of edits and manipulation." ECF No. 42/65 at 1. Defendants pointed out that the supposed anomalies are the result of the processing of the Property Form for production, including that the digital Bates number appropriately was added to the produced version but is missing from the APRA version. Further, the aspects of the Property Form that might be relevant (albeit to the Heck-barred claims as discussed below) – the typed information listing the three knives by type/manufacturer (e.g., "black folding Husky razor knife") and the handwritten information stating the travel of the three knives in police custody – is identical on each version of the Form; that is, there are no alterations of the entries that might be pertinent to Plaintiffs' claim that Plaintiff Mello did not get a fair trial on the charge of possession of prohibited knives. Accordingly, the Court's original Text Order rules that Plaintiffs have "not presented anything establishing or permitting the inference that the document in issue was materially altered or tampered with in any way." 23-cv-479, 23-cv-480, Text Order of Jan. 29, 2025.

As to what aspect of the Property Form conceivably may be relevant to the only claim in issue in these cases, both versions of the Property Form contain a list of the three knives with no reference to their length and both describe the travel and ultimate destruction of the knives with no reference to removal for measuring. That is, the Property Form may support Plaintiffs' Heck-barred claim that police officers and school officials lied at Plaintiff Mello's criminal trial regarding the travel, measurement and length of the knives. Accordingly, the Court's original Text Order rules that, while the Property Form "may be arguably relevant to [Plaintiff Mello's] ongoing postconviction relief ("PCR") proceedings; . . . it has no relevancy to the claims of

---

here below the letters has a crest." That is, Plaintiffs' evidence established that the watermark is so faint that it may disappear as the Property Form is scanned or copied, as the discovery version of the Property Form has been.

7

excessive force in issue in this case." See 23-cv-479, 23-cv-480, Text Order of Jan. 29, 2025 (citing Court's Order dismissing Heck-barred claims).

Based on these rulings, the Court's original Text Order denied all relief sought by Plaintiffs' motion regarding tampered evidence beyond the granting of the request for an opportunity to present their arguments.

        D.        Reconsideration Based on "Newly Discovered Facts"

In support of reconsideration of the Text Order on the tampering motion, Plaintiffs proffer two categories of "newly discovered evidence."

First,[10] they have attached the produced version of the Property Form and a new APRA version of the Form as Exhibits to the motion for reconsideration; this APRA version has a faint but visible watermark. ECF No. 54/77 at 10-13. Relatedly, they have proffered a surreptitious recording made by Plaintiff Ware on February 3, 2025, of her conversation with a Cranston police officer, "Captain Robertson," ECF No. 53/76 at 2,[11]; as well as an email exchange on February 1-3, 2025, between Plaintiff Ware and Captain Robertson in which he confirmed that a "For Information Only CPD property form" would have a watermark. ECF No. 54/77 at 7-8. According to the recording, Plaintiff Ware questioned Captain Robertson about why parts of the Property Form were typed and parts were handwritten and whether, generally, it is inconsistent with established practice for a Property Form to have typed information. In response, he told her that there is no policy or procedure about how to write the form ("no set uniform way") and that typed information may well appear if a typed sticker was created, in which event, as to the

---

[10] The Court assumes without deciding that this set of evidence could not have been procured and presented to the Court prior to the entry of the challenged Text Order resolving the tampering motion and therefore qualifies as "newly discovered."

[11] See ECF No. 55/78; Docket Note of Feb 13, 2025.

8

Property Form, "you would not see the sticker, you just see one flat sheet." Captain Robertson confirmed that the barely visible watermark would be on the version "that you guys have." The recording does not reveal whether Captain Robertson was shown either or both versions of the Property Form that Plaintiffs have presented to the Court. Based on this recording, Plaintiffs contend that the Property Form's list of evidence is normally handwritten so that both versions of the Form must have been manipulated in unspecified ways and that the lack of a visible watermark on the discovery version is evidence of manipulation.

Having listened carefully to the recording, apart from the other evidentiary issues with it, the Court finds that Captain Robertson appeared at all times to be very courteous and patient and that his statements simply do not establish that the typed list appearing on both the discovery version and the APRA version of this Property Form is outside the normal procedure used to create these forms. Nor does the recording establish anything sinister or suspicious about the lack of a visible watermark on the discovery version of the Property Form. Nor does it establish that there is any other irregularity with any aspect of the two versions of the Property Form. Thus, it fails to establish any basis for the Court to reconsider its Text Order.

Second, Plaintiffs have provided a document entitled "Comprehensive Digital Forensics Technical Analysis Report" that compares the two versions of the Property Form; a video that appears to demonstrate that Adobe© tools permit manipulation of the PDF version produced in discovery[12]; a "spectral analysis"; and a document called "error level analysis." ECF No. 54/77

---

[12] The Court has accepted this evidence as sufficiently "new" to consider it in connection with this motion. The Court notes that, on reply, Plaintiffs argue that this evidence should be accepted as "new" because the in-person format of the January 24, 2025, hearing prevented them from presenting this "critical digital forensic evidence." ECF No. 57/80 at 9. Relatedly, Plaintiffs assert that "the Court did not permit screen sharing or digital file analysis – tools that had previously been allowed in a Zoom hearing." Id. This is false. Plaintiffs did not ask for leave to present their digital forensic evidence; had they asked, the Court would have permitted them to do so using the courtroom's technology. Plaintiffs also assert that the Court's prompt scheduling of oral argument on their motion prevented them from having time to secure "expert forensic testimony" to support their claims. Id. at 9. Yet Plaintiffs have now had almost two months of additional time since the original hearing, yet they still have not

9

at 1, 3, 5,18-27.  Plaintiffs contend that this new evidence buttresses their contention that the produced Property Form could have been manipulated, as well as that it contains images added at different times that suggest "systemic modification."  See ECF No. 54/77 at 26.  The problem with this evidence is that the possibility that a document could be manipulated proves nothing.  Further, the fact that this Property Form was changed over time ("systemic modification") does not suggest tampering.  Rather, it is consistent with the reality that the Property Form was created as the evidence was initially placed in the pass through locker; then it was altered when it was placed in the evidence room; it was altered again when the evidence was destroyed; it was altered again when the "For Information Only" version was processed for APRA purposes (including the redaction of personal identifying information); and it was altered again when it was processed for production in discovery (including the addition of a digital Bates number).  Thus, Plaintiffs' reconsideration motion continues to point to nothing about the differences between the two versions of the Property Form that is suggestive of improper tampering.  Put differently, even if "newly discovered," this evidence utterly fails to establish any basis for the Court to reconsider its Text Order.  Rather, the Court reiterates its finding there is not a scintilla of evidence to suggest that any suspicious or material changes to or tampering with the version of the Property Form that was produced in discovery.  Nor does the Court find any evidence to support Plaintiffs' argument that there is a pattern of misconduct and tampering that undermines the integrity of this case.

    E.    <u>Reconsideration Based Error of Law</u>

---

presented a report from a forensic expert.  Nor did Plaintiffs advise the Court that they needed time to procure an expert report to support their claim of tampered evidence.

Plaintiffs' motion for reconsideration also argues that the Court has misapprehended and/or misapplied applicable law, particularly in finding that the Property Form is not relevant to the excessive force claims that are all that remain in issue in these cases. In support of this argument, Plaintiffs contend that the law provides that police misconduct involving the alteration or destruction of evidence falls outside of the Heck bar even if (as in this case) the challenged evidence is foundational to a conviction that remains intact.[13] Mindful of Plaintiffs' *pro se* status, the Court has considered the cases Plaintiffs cite and finds that they do not support the proposition Plaintiffs advance. For example, Plaintiffs cite McDonough v. Smith, 588 U.S. 109, 114-20 (2019), which holds that the Heck bar lapses, and the statute of limitations starts to run, upon acquittal of the criminal charge allegedly based on fabricated evidence. Similarly, they reference Whitmore v. Harrington, 204 F.3d 784, 784-85 (8th Cir. 2000) (per curiam), in which the court found no Heck bar because success on the claim based on an unlawful-investigative-stop would not necessarily imply the invalidity of later drug convictions. Additionally, Taylor v. Meacham, 82 F.3d 1556 (10th Cir. 1996) does not even mention Heck, while Nelson v. Campbell, 541 U.S. 637 (2004), mentions Heck only by analogy. Mindful of Plaintiffs' *pro se* status, the Court has also considered out-of-circuit cases finding that there may be exceptions to Heck. E.g., Powers v. Hamilton County Public Defender Comm'n, 501 F.3d 592, 601-05 (6th Cir. 2007). Apart from the problem that Powers' exceptions would not apply to Plaintiffs' Heck-barred claims, the argument would fail because the controlling case in our Circuit has squarely rejected the proposition that there are Heck exceptions. Figueroa v. Rivera, 147 F.3d 77, 80-82

---

[13] The Court notes that Plaintiffs' argument seems to amount to another request for reconsideration of the Court's original Order dismissing most of their claims as Heck-barred. Reconsideration of the District Court's dispositive determination that all claims except those alleging excessive force are Heck-barred is beyond the scope of what is in issue in connection with the pending motion for reconsideration.

11

(1st Cir. 1998); Tempest v. Rhode Island, No. 1:20-cv-00523-MSM-LDA, 2022 WL 2817865, at *6 n.13 (D.R.I. July 19, 2022). Nor can Plaintiffs draw support from Ricci v. Rhode Island, No. 1:20-cv-00543-MSM-PAS, 2023 WL 4686025, at *15 (D.R.I. July 21, 2023), in which the Court declined to apply Heck because the criminal charge had been "filed," so there was no conviction to be invalidated.

At bottom, whether Plaintiff Mello illegally possessed the knives in question, whether he was appropriately convicted of that crime and whether the post-trial destruction of the knives impacts the viability of the conviction is simply not related to whether the two Defendant police officers used excessive force when they arrested him.[14] Put differently, the Property Form relates to a circumstance that is entirely irrelevant to the claims and defenses in issue in these cases.[15] Having carefully considered Plaintiffs' new legal arguments, the Court sustains its determination that the Property Form – whether tampered or not – has no relevancy to the claims of excessive force in issue in this case.

### III. Analysis of Motion to Strike

Before closing, the Court considers Plaintiffs' motion to strike Defendants' opposition. ECF No. 58/81. As grounds, Plaintiffs contend that the opposition contains material that is false,

---

[14] On reply, Plaintiffs argue for the first time that the knives are relevant to the use of force because Defendant Rocchio justified the level of force he used based not only on Plaintiff Mello's level of aggression, but also on his belief that Plaintiff Mello was in possession of a knife. ECF No. 57/80 at 5 n.1. This argument certainly renders relevant to the excessive force claim whether Defendant Rocchio became aware of the knife that he testified he felt during the scuffle with Plaintiff Mello (which Plaintiff Mello contends was not prohibited because it was exactly three inches). 23-cv-480JJM, ECF No. 20 at 9. It does not render relevant to the excessive force claim any aspect of the information displayed on the Property Form.

[15] Mindful of their *pro se* status, the Court has struggled to understand Plaintiffs' seeming obsession with the Property Form; in particular, during the extended hearing, the Court tried to explore whether Plaintiffs might have some as-yet-unstated claim arising from some aspect of the Form that would not be Heck-barred. As the Court's original Text Order specifically holds, this effort resulted in Plaintiffs' confirmation of their belief that the alleged tampering with the Property Form somehow supports Plaintiff Mello's claim that he is innocent of the crime of possessing prohibited knives, and that the Form has no relationship to the claims/defenses in issue in this case. Nothing presented on reconsideration suggests otherwise.

misleading and inflammatory and that amounts to an *ad hominem* personal attack. Most particularly, Plaintiffs take issue with Defendants' characterization of their motion for reconsideration as "frivolous[] and vexatious[]." ECF No. 58/81 at 2. The Court does not find that any of the arguments presented in the opposition rise to the level where they should be stricken. In light of the Court's disposition of the motion for reconsideration, *supra*, the Court finds nothing inappropriate in the labeling of Plaintiffs' arguments as frivolous and vexatious. Nor is the Court concerned by the inclusion in the opposition of a response to Plaintiffs' attack on the attorneys for allegedly engaging in professional "misconduct." The Court denies Plaintiffs' motion to strike.

**IV.    Conclusion**

Based on the foregoing, Plaintiffs' motion for reconsideration (ECF No. 53/76) is granted in part to the limited extent that the Court has carefully considered their proffer of "newly discovered evidence" and their argument that the Court misapprehended applicable law as to one of the four motions argued on January 24, 2025. Based on this reconsideration, the Court finds no basis for altering its original Text Orders in these cases based both on the utter dearth of any evidence of document tampering and on the irrelevancy of the document in issue to the claims and defenses in these cases. To the extent that the motion for reconsideration seeks any other relief, it is denied. Plaintiffs' motion to strike (ECF No. 58/81) is also denied.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 18, 2025