UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSHUA MELLO, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | C.A. No. 23-479JJM |
| | : | |
| EDWARD ARRUDA, et al., | : | |
|     Defendants. | : | |
| _____ | : | |
| | | |
| JOSHUA MELLO and RACHEL WARE, | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | C.A. No. 23-480JJM |
| | : | |
| JOHN ROCCHIO, et al., | : | |
|     Defendants. | : | |
| _____ | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is Defendants' motion for sanctions pursuant to Fed. R. Civ. P. 37(b)(2). ECF No. 60/82.[1] Defendants move to dismiss based on the failure of *pro se* Plaintiffs Joshua Mello and Rachel Ware to comply with the Court's January 29, 2025, discovery order requiring them to produce healthcare information and records. For the reasons that follow, I recommend that, to the extent that the motion seeks the remedy of dismissal, it should be

---

[1] This report and recommendation is issuing in two related cases, 23-cv-479JJM and 23-cv-480JJM. The two cases are consolidated and differ principally in that only Plaintiff Joshua Mello is prosecuting the claim in 23-cv-479JJM, while he is joined by his wife, Plaintiff Rachel Ware, as co-Plaintiff in 23-cv-480JJM, as well as that the ECF docketing numbers do not align because 23-cv-480JJM has had more filings. In the interest of efficiency, only one version of this report and recommendation is being issued. Thus, to the extent that 23-cv-479JJM is considered, references to "Plaintiffs" may be interpreted as referring only to Plaintiff Mello. ECF references citing to identical filings in both cases contain, first, the docket number in 23-cv-479JJM and, second, the docket number in 23-cv-480JJM.

denied, but, to the extent that the motion seeks lesser sanctions based on the intentional failure to comply with the order to provide discovery, it should be granted.

### I. Standard of Review

A "party who flouts a court order does so at its own peril." Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 37 (1st Cir. 2012). Fed R. Civ. P. 37(b)(2)(A) provides that the Court may order the imposition of sanctions for the failure to obey a discovery order. Id. In imposing such sanctions, the Rule directs that the Court may "issue further just orders" ranging from outright dismissal to a preclusion order "prohibiting the disobedient party from supporting . . . designated claims . . . or from introducing designated matters in evidence" or an instruction to the jury that a designated fact may be taken as established. Fed. R. Civ. P. 37(b)(2)(A)(i), (ii), (v). Fed. R. Civ. P. 37(b) provides the court with a "veritable arsenal of [available] sanctions in the context of discovery – including directing that the alleged facts be admitted, prohibiting the non-complying party from supporting or opposing claims or defenses [and] striking pleadings in whole or in part." Summitbridge Credit Investments, III, LLC v. Hunt Marine I, LLC, C.A. No. 13-139-ML, 2014 WL 551051, at *1 (D.R.I. Feb. 10, 2014) (internal quotation marks omitted).

When noncompliance with a discovery order occurs, "the ordering court should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). The First Circuit has set out a non-exhaustive list of factors to consider when reviewing whether Fed. R. Civ. P. 37 sanctions are appropriate and what sanction should be imposed. Sein v. Santamaria-Torres, Civil No. 21-1365 (HRV), 2024 WL 3495898, at *6 (D.P.R. July 22, 2024) (citing Vallejo v. Santini-Padilla, 607 F.3d 1, 8 (1st Cir. 2010)). These include "the severity of the discovery violations, the legitimacy of the party's excuse for failing

2

to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." Id. (internal quotation marks omitted). Procedurally, the First Circuit also directs courts to consider whether the offending party had notice of the possibility of sanctions and an opportunity to explain the misconduct and argue against the imposition of any sanction. Id. at *7. The choice of sanction lies within the district court's discretion. AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 435 (1st Cir. 2015).

In choosing what sanction is appropriate, the "First Circuit has cautioned that dismissal with prejudice is a harsh sanction, which should be employed only when a plaintiff's misconduct has been extreme and only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." Reardon v. Lowe's Companies, Inc., 1:21-cv-00362-LEW, 2024 WL 554334, at *2 (D. Me. Feb. 12, 2024) (internal quotation marks omitted), aff'd, No. 24-1269, 2025 WL 947724 (1st Cir. Jan. 22, 2025). Thus, while the most serious sanction – outright dismissal – has been deployed in response to a party's failure to comply with a court order compelling discovery of medical information or documents, Ford v. Kennerly, No. 17-2457, 2018 WL 6436386, at *3-4 (6th Cir. Apr. 26, 2018); Anderson v. Huss, Case No. 2:21-cv-00123, 2024 WL 4480095, at *1-2 (W.D. Mich. Aug. 16, 2024), adopted, 2024 WL 4343454 (W.D. Mich. Sept. 30, 2024), courts facing such circumstances often find the lesser sanction of preclusion to be more appropriate. See, e.g., Navarro de Cosme v. Hospital Paiva, 922 F.2d 926, 932 (1st Cir. 1991) (affirming preclusion of deposition of physician as sanction for failure to comply with court order compelling production of medical records); Hernandez v. R&B Power, Inc., Civil No.:15-1788 (MEL), 2017 WL 5499773, at *9-12 (D.P.R. Nov. 16, 2017) (preclusion order barring plaintiff who refused to comply with order to produce medical records from

seeking compensatory damages for pain and suffering and from testifying at trial as to pain and suffering); Karlik v. Colvin, No. 12-cv-14879, 2014 WL 2095352, at *1-2 (E.D. Mich. May 20, 2014) (granting defendants' motion to exclude medical-based damages evidence at trial where, despite production of some medical records, plaintiff failed to comply with court order to provide medical release).  When lesser sanctions would adequately allay the prejudice to defendant while otherwise allowing adjudication of the case on its merits, the court should choose the sanction that is commensurate with the infraction.  See Sein, 2024 WL 3495898, at *7 (finding that lack of deliberateness renders dismissal too harsh and ordering that plaintiff "shall be allowed to testify about her emotional suffering but is precluded from testifying about, or introducing any evidence of, the psychiatric treatment").

While the court must always use leniency when considering the filings of *pro se* litigants, a plaintiff's *pro se* status is not a basis on which to excuse noncompliance with a court order or the Rules of Civil Procedure.  See Instituto de Educacion Universal Corp. v. United States Dep't of Education, 209 F.3d 18, 23 n.4 (1st Cir. 2000); see Eagle Eye Fishing Corp. v. United States Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994) ("the right of self-representation is not a license not to comply with relevant rules of procedural and substantive law") (internal quotation marks omitted).  Nevertheless, courts should be wary of using dismissal with prejudice to sanction a *pro se* party who failed to comply with just one court order.  Oliver v. Power, No. 1:21-cv-00225-JAW, 2021 WL 4942861, at *2 (D. Me. Oct. 21, 2021), adopted sub nom. Oliver v. Versant Power, 2021 WL 5371550 (D. Me. Nov. 17, 2021).

## II.     Background

### A.     Plaintiffs' Claims and Damage Allegations

These cases are based on alleged excessive force used by Defendants while arresting Plaintiff Mello during an incident that occurred on October 21, 2021, at a Cranston middle

4

school attended by Plaintiff Mello's daughter. Mello v. Arruda, C.A. No. 23-479JJM, C.A. No. 23-480JJM, 2025 WL 847823, at *2 (D.R.I. Mar. 18, 2025). On that day, Plaintiff Mello, accompanied by Plaintiff Ware, went to the school and school officials responded with concerns arising from a Family Court Order regarding whether Plaintiff Mello was barred from removing his daughter from school. Id. Plaintiff Mello's reaction resulted in an imbroglio that culminated in two Cranston police officers arresting him through the use of what he alleges was excessive force resulting in physical injury. Id. As alleged by Plaintiffs, who have submitted several videos of the incident, Plaintiff Mello was taken down to the floor by officers in the school lobby and vestibule while Plaintiff Ware recorded the scene with her phone. After a struggle during which knive(s) were removed from his person, Plaintiff Mello was handcuffed and walked by officers to a vehicle, where he claims officers "slammed" the back of his head on the hood of the police cruiser.[2] See 23-cv-480, ECF No. 20 at 13, 16-17.

In their Complaint in 23-cv-480, Plaintiffs allege that the "intensity of the force utilized [on Plaintiff Mello] was such that immediate medical attention was required, leading to Mr. Mello's urgent transfer to a hospital." ECF No. 20 at 17. In contrast to this allegation, the record reflects that, on October 21, 2021, following his arrest and before booking, Plaintiff was taken by law enforcement to Roger Williams Medical Center ("Roger Williams"). The treating record for this encounter reveals a diagnosis of a forehead abrasion and a complaint of shoulder/neck pain due to neck strain with the recommendation of over-the-counter medication. ECF No. 44-2/67-2 at 35-41.[3] Three days after the incident, Plaintiff Mello was seen at the Garden City Treatment

---

[2] Based on the incident, Plaintiff Mello was criminally convicted of disorderly conduct and possession of a prohibited weapon other than a firearm. Mello, 2025 WL 847823, at *2.

[3] Plaintiffs produced this record in May 2024. ECF No. 44/67 at 2.

Center ("Garden City"), which diagnosed "left rib contusion" and prescribed an NSAID with ice and no recommendation for any follow-up. ECF No. 44-4/67-4.[4] As far as the Court can discern, neither of these records reflects any complaint or diagnosis of head injury, concussion or any other serious physical or any emotional injury. As to Plaintiff Ware, her only involvement in the incident is her presence; she has not alleged any physical injury.

Regarding damages, Plaintiffs allege that, due to the incident, they have suffered "immeasurable pain and suffering" and "emotional distress resulting from the continual deprivation and neglect of [their] rights" which "weighs heavily on [their] well-being" and has "left an indelible mark on [their] psyche[s], leading to overwhelming anxiety," as well as "emotional distress endured by [Plaintiff Mello's] child and . . . family." 23-cv-480, ECF No. 20 at 19, 22. In his Rule 16 statement, Plaintiff Mello alleged that he has "PTSD concerns." 23-cv-479, ECF No. 13 at 2. During his deposition in August 2024, Plaintiff Mello testified under oath that, due to the alleged excessive force used by Defendants:

> I had a concussion. I was blacked out. . . . I had a pretty significant head injury, and some stuff isn't as vague enough. . . . I didn't even remember some of the stuff that happened at the school until I literally saw it. I remember only being smashed off the hood of the cruiser only because I saw it with my own eyes. If I never saw that video, I would have never have remembered it happening. That's how severe of a head injury I have.

ECF No. 44-12/67-12 at 6-7; see ECF No. 44/67 at 7 (Plaintiff Mello claims incident "revealed significant memory gaps"). Plaintiff Mello also confirmed under oath that he sought counselling with his daughter from October 2023 to February 2024, to address not just his child's emotional needs, but also to deal with his own needs based on the emotional trauma caused by the incident. ECF 44/67 at 6-8 (as Plaintiff Mello's interrogatory answer states, "family therapy sessions were

---

[4] Plaintiffs produced this record in September 2024. ECF No. 44-4/67-4.

6

intended to support my minor child's mental and emotional well-being <u>rather than solely addressing my own needs.</u>  This therapy was undertaken to help my minor child process the events described in the Complaint, along with related experiences.") (emphasis added).  Despite his claim that this counseling was, at least in part, for him to address the emotional impact of the incident, Plaintiff Mello has consistently refused to produce any of these counseling records as irrelevant and confidential, nor has he suggested an *in camera* review to discern whether portions of these records should be redacted to protect the privacy of the child.  <u>See</u> ECF No. 44/67 at 6-8.

Otherwise, despite his claim of extreme physical and emotional injury, beyond the minimal injuries reflected in the Roger Williams/Garden City records, Plaintiff Mello represents that he did not seek and has not received any medical treatment for the alleged concussion[5] or any other "specific" treatment for the physical/emotional injuries he claims were caused by the incident.  <u>See</u> ECF No. 44/67 at 7; ECF No. 67/90 at 6-7.  As to the request for information and records regarding other medical treatment in the period preceding and following the incident, he represents that he does not regularly seek medical care and does not have annual physicals or routine doctor visits.  ECF No. 44-8/67-8 at 3, 5; ECF No. 67/90 at 7.  To the extent that he may have had medical treatment, Plaintiff Mello refuses to provide information or documents because he alleges such discovery is irrelevant and because the physical documents are not in his possession.[6]

---

[5] The Court finds troubling that, during argument on the motion to dismiss, Plaintiff Mello represented to the Court that he has never alleged that he had a blackout and concussion as a result of his arrest by Defendants.  This representation is simply not true – at his deposition, Plaintiff Mello testified that he had "a concussion and a blackout."  ECF 44-12/67-12 at 5; <u>see</u> ECF No. 44/67 at 7 (Plaintiff Mello's interrogatory answer admitting that "[d]uring his deposition, Mr. Mello stated that he suffered a concussion from the incident").  This representation was subsequently contradicted by Plaintiff Mello's post-hearing filing in which he alleges that he does claim to have had a concussion, but that "the alleged concussion was self-assessed and not medically treated, and thus, no medical records exist."  ECF No. 74/97 at 3.

[6] Plaintiffs' argument that sanctions are not appropriate because they lack physical possession of medical records should be rejected.  For starters, the interrogatory they both have refused to answer further does not require present

Plaintiff Ware similarly represents that she has suffered extreme emotional distress, well beyond "garden variety," but that she has not received any treatment due to the incident. ECF No. 67/90 at 5-6; see also ECF No. 44/67 at 9. During argument on the motion to dismiss, she represented to the Court that her trauma has been so great that she experiences stress whenever a Cranston police officer drives by, whenever she watches the video depicting the incident and whenever she hears the names of the Defendant police officers. With respect to discovery requesting information regarding her medical treatment, although she concedes that she visits her primary care doctor annually and regularly sees a doctor for asthma, she has refused to provide information about this treatment because she claims it is not relevant. ECF No. 44/67 at 9.

To explain the lack of treatment for what they contend are catastrophic injuries, during the hearing on the motion to dismiss, Plaintiff Ware explained that she and Plaintiff Mello were homeless for two-and-a-half years, which they contend is a result of the incident.[7] During the hearing, both Plaintiffs also confirmed that they intend to seek substantial damages based on their testimony that the incident caused very serious, far more than garden variety, emotional injuries and very serious physical (as to Plaintiff Mello) injuries.

    **B.**    **Defendants' Efforts to Procure Essential Medical Information and Documents**

To defend these damage claims, Defendants propounded Interrogatory 14 seeking the identification of all medical providers for the period beginning three years prior to and following

---

possession of physical records; it simply asks for information that they refuse to supply. ECF No. 44/67 at 5-6, 9. Additionally, medical records are deemed to be in the "possession, custody, or control of a party" if the party has actual "possession, custody, or control" of the materials or "has the legal right to obtain the documents on demand." Amoah v. McKinney, Civil Action No. 4:14-40181-TSH, 2016 WL 1698267, at *3 (D. Mass. Apr. 27, 2016) (internal quotation marks omitted). That is, a "patient is deemed to be in control of [their medical records] because [they] may request the files at any time, and because, by either granting or denying consent, [they] may determine who shall have access to them." Id. (internal quotation marks omitted).

[7] See ECF No. 44-5/67-5 at 14 ("Plaintiffs . . . allege that they are homeless as a result of the incident.").

8

the incident and (as to Plaintiff Mello) Document Request 11 seeking medical records for the five years prior to the incident and continuing to the present. ECF No. 44/67 at 5-9. In response, Plaintiffs produced only the Roger Williams and Garden City records reflecting relatively minimal treatment of Plaintiff Mello in October 2021 and otherwise objected to providing any medical information or documents based on relevance, confidentiality and burden.

On January 6, 2025, Defendants filed a motion to compel more responsive answers focused on this interrogatory and document request. ECF No. 44/67. Plaintiffs "vigorously" opposed the motion and stated that they had "submitted complete responses" to Defendants' "discovery requests about medical records" and did not "possess the documents . . . [D]efendants continue to press for." ECF No. 48/71 at 1, 3. Plaintiffs also objected on the grounds of privacy and privilege, "particularly concerning sensitive medical and mental health information." ECF No. 48/71 at 3.

At the hearing on the motion to compel, the Court made it unambiguously clear that Plaintiffs needed to produce medical information and records (as to Plaintiff Mello) for what the Court set as the applicable time period – whether or not they believe the discovery is "related" to the incident – and explicitly warned Plaintiffs that they cannot prosecute a claim for damages based on alleged physical and emotional injuries and not produce such medical information and records (both physical and mental). The Court cautioned Plaintiffs that, if they fail to produce the medical discovery in issue, it could impact their right to recover damages. Following argument on the motion, the Court reduced the period covered by Defendants' document request, but otherwise found all requested information relevant, granted the motion and ordered Plaintiffs to comply with Defendants' medical discovery requests.

9

To memorialize this discovery Order, on January 29, 2025, the Court entered the following Text Order:

> To the extent that Defendants seek further responses to specified interrogatories and document[] requests seeking health care information from both Plaintiffs [Mello interrogatory 14 and document request 11; Ware interrogatory 14], the Court finds that each Plaintiff has alleged that the incident in issue caused "overwhelming anxiety", "left an indelible mark on our psyche" and resulted in "harm, injuries and damages," as well as "immeasurable pain and suffering," ECF No. 20 at 19-20, including as to Plaintiff Mello his testimony that he suffered "a concussion and a blackout," ECF No. 67-12 at 5. Accordingly, the Court finds that Plaintiffs have directly placed in issue their receipt of health care (mental and physical) during the three-year period prior to and following the incident, that the discovery sought – information as to both Plaintiffs and records if any that are in his possession, custody and control as to Plaintiff Mello – are relevant and that Plaintiffs' federal and state law rights to protection from disclosure of such health care information have been waived. Accordingly, Plaintiffs are ordered to supply supplemental responses within twenty-one days of the issuance of this text order.

23-cv-480, Text Order of Jan. 29, 2025; see also 23-cv-479, Text Order of Jan. 29, 2025 ("Text Order"). The Text Order continues by reiterating the on-the-record caution, specifically warning Plaintiffs that the failure to comply with the Text Order could result in Fed. R. Civ. P. 37 sanctions. 23-cv-480, Text Order of Jan. 29, 2025 ("If Plaintiffs fail to comply with this Order, Defendants may seek remedies pursuant to Fed. R. Civ. P. 37."). Mindful that the parties' submissions seemed to establish the possibility that Plaintiff Ware has no actual damages beyond garden variety emotional distress,[8] the Court cabined the Text Order as to her as follows:

---

[8] In this report and recommendation, the term "garden variety" is used to refer to the kind of emotional distress that a reasonable person of normal sensitivities and mental stability would experience given the wrong alleged, which does not require medical treatment. See, e.g., Ross v. Cox Rhode Island, LLC, C.A. No. 21-118-JJM-LDA, 2022 WL 1100862, at *1 (D.R.I. Apr. 13, 2022) (when plaintiff is not alleging emotional damage different from what a reasonable person of normal sensitivities and mental stability would experience given the wrong alleged, requiring the production of their personal medical records is not relevant and is an unnecessary invasion of privacy); Verrier v. Blue Triton Brands, Inc., No. 2:20-cv-00443-JAW, 2021 WL 7161106, at *1 (D. Me. July 31, 2021) ("Garden variety claims refer to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel" while "claims for serious distress refer to claims for the inducement or aggravation of a diagnosable dysfunction or equivalent injury") (internal quotation marks omitted); Duarte v. St. Barnabas Hospital, 341 F. Supp. 3d 306, 319 (S.D.N.Y. 2018) (evidence of garden variety mental suffering is "generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury") (internal quotation marks omitted).

> This Order is subject to the right of Plaintiff Ware to revoke the waiver of her right to confidentiality of health care records by withdrawing her claim of emotional or other injury beyond "garden variety" emotional distress by filing a signed and enforceable stipulation <u>acceptable to Defendants</u> waiving forever her right to seek or to recover any compensatory damages beyond "garden variety" emotional distress, provided that such stipulation must be filed within fourteen days of this Order.

23-cv-480, Text Order of Jan. 29, 2025 (emphasis in original). To address Plaintiffs' confidentiality concerns about providing medical information and documents, the Court promptly granted their motion for a protective order (ECF No. 62/85) covering medical records, mandating that discovery must be maintained as confidential, used solely for purposes of this case and that access to the medical information and records must be limited. Text Order of Feb. 26, 2025.

In response to the Text Order of January 29, 2025, Plaintiffs produced one additional record reflecting Plaintiff Mello's treatment on July 8, 2022, (more than eight months after the incident) with an optometrist who performed an examination based on Plaintiff Mello's complaint that he was "having blurred vision since concussion" that happened "a couple weeks ago." ECF No. 68/91 at 3-4. This physician noted that the eye examination was normal with no ocular defects and recommended that Plaintiff Mello follow up about his concerns with a neurologist; it also notes that Plaintiff Mello had a "Vaso Vagel Reaction" after the examination and was taken to the hospital by ambulance. ECF No. 68/91 at 1-5. Apart from producing this record, during briefing and argument on the motion to dismiss, Plaintiff doubled down on their refusal to comply with the Court's Text Order of January 29, 2025. During argument, each of them stated his/her intent to persist in the refusal to respond further to Defendants' discovery seeking medical information and/or records.

    **C.**    **Evidence that Plaintiffs Have Willfully Withheld Medical Information and Documents Resulting in Prejudice to Defendants**

By sifting for clues in Plaintiffs' filings, representations and production, as well as in publicly available sources, Defendants have clearly established that each Plaintiff has received medical treatment that is potentially relevant to show that Plaintiffs had access to and received medical treatment in the period following the incident. Such treating information and records – that Plaintiffs refuse to identify and/or produce in discovery – are critically relevant in that they may well prove that neither Plaintiff experienced the claimed catastrophic emotional injuries, as well as that, as to Plaintiff Mello, his only physical injuries are the minor abrasion, shoulder/neck pain, and rib contusion reflected in the two records that were produced (the Roger Williams record from the day of the incident and Garden City record from three days later). Yet in defiance of the Text Order, none of the information or documents have been provided.

As to Plaintiff Mello, his representation that there is no relevant medical treatment during the period following the incident is dramatically contradicted by public sources and the produced optometry record. These collectively reveal that, eight months after the incident, in June 2022, Plaintiff Mello claims that he was assaulted at a rally at the Rhode Island State House. ECF No. 45-1/68-1 at 2-3; see also ECF No. 45/68 at 2. It seems likely that this is the incident that caused the "concussion" complained of to the optometrist on July 8, 2022. ECF No. 68/91 at 3 ("concussion[] . . . happened a couple weeks ago"). Further, the produced optometry record reflects that Plaintiff Mello was taken to the hospital by ambulance on July 8, 2022, which appears to be confirmed by Plaintiff Ware's social media posting of July 10, 2022. ECF No. 45/68 at 2. The posting includes a photograph of Plaintiff Mello covered with electrodes as diagnostic treatment for an assault "while covering the Rally at the Statehouse on June 24" after which he was "rushed to the ER."[9]  Id.  With no information or records produced for any of these

---

[9] It is not possible to ascertain whether this posting reflects a second trip to the hospital right after the State House Rally or whether it is the same as the one on July 8, 2022.

medical encounter(s),[10] Defendants cannot ascertain whether they would constitute evidence to rule out or undermine the proposition that Plaintiff Mello experienced a similar or even more serious injury eight months before (due to the incident) or whether the serious physical injuries and serious emotional distress he complained of at his deposition was caused not by the incident in issue but by this subsequent event.  Nor can Defendants ascertain whether there may be other medical information and documents (such as routine medical encounters) that establish that Plaintiff Mello had no injury other than what is reflected in the Roger Williams/Garden City records.  Similarly, Plaintiff Mello's refusal to produce the counseling records that he admits pertain at least in part to the incident leaves Defendants unable to ascertain whether and to what extent these counseling records would support or undermine Plaintiff Mello's claim that he has suffered extremely serious emotional consequences.

As to Plaintiff Ware, she has admitted that, although she "did not consult or receive treatment from any psychological professionals during the period," she saw her "primary care doctor annually for general check-ups and physicals," and received asthma treatment.  ECF No. 44/67 at 9.  Yet she has refused to disclose any additional information related to these visits because she alleges that they "are routine and unrelated to the claims in the case" and because the records were "protected health information that is irrelevant" to the case.  ECF No. 44/67 at 9.  When pressed about the claim of severe emotional distress during the hearing on the motion to dismiss, Plaintiff Ware explained her lack of treatment by noting that "we have been homeless for two-and-a-half years and I have not sought medical help nor has my husband."  With no

---

[10] There are other less conclusive clues that Plaintiff Mello has had or may have had other medical encounters that are responsive to the discovery covered by the Text Order.  For example, the optometrist's record suggests a prior encounter to review medical and other history in February 2022.  In addition, this record reflects a recommendation of follow up with a neurologist for the concussion suffered at the State House rally; if Plaintiff Mello followed this recommendation, the resulting record would be extremely relevant.

13

information produced for any of her routine medical encounters, Defendants cannot ascertain whether Plaintiff Ware's full proximate (to the incident) medical history as requested (but not provided) would rule out or undermine the proposition that, since the incident, Plaintiff Ware has been suffering (as she claims) from overwhelming anxiety and significant emotional distress. For example, whether a patient exhibits symptoms of serious emotional distress is generally covered during an annual physical with a primary care provider, yet Defendants cannot ascertain if such screening was done during Plaintiff Ware's routine encounters and, if so, whether the very symptoms Plaintiff Ware is now claiming were not mentioned or were denied. Nor can Defendants develop evidence to undermine Plaintiff Ware's contention that Plaintiffs did not have access to health treatment because of homelessness.

In sum and in light of the Santini-Padilla factors, 607 F.3d at 8, I find that Defendants have demonstrated that Plaintiffs had access to medical care and received medical care, the discovery of which is highly relevant to and may well undermine Plaintiffs' damage claims. I further find that Plaintiffs have defied the discovery Text Order by willfully refusing to produce this medical information and (as to Plaintiff Mello) these medical records (including the counseling records). Based on Plaintiffs' refusal to provide the medical discovery ordered to be produced by the Text Order, I further find that Defendants have been seriously prejudiced because they are unable to develop evidence to rebut Plaintiffs' claims that they suffered catastrophic injuries but could not get treatment due to the homelessness they allege was a consequence of Defendants' use of excessive force. I further find that Plaintiffs have been repeatedly warned of the potential consequences of their refusal to comply with the Text Order: at the hearing on the motion to compel on January 24, 2025; in the Text Order that issued on January 29, 2025; by the arguments in Defendants' February 20, 2025, motion; and during the

hearing on the motion to dismiss on March 25, 2025. And I find that Plaintiffs have had ample opportunity to explain their misconduct and argue against the imposition of any sanction, including during the hearing on March 25, 2025, as well as in their many filings in opposition to the motion for sanctions and in response to the January 29, 2025, Text Order. See e.g., ECF Nos. 61/84, 67/90, 74/97.

### III.  Appropriate Sanction

Based on the Court's consideration of the "totality of events," Young, 330 F.3d at 81, it is clear that the Court should impose a Fed. R. Civ. P. 37(b) sanction. Mindful of the Court's Santini-Padilla findings, the Court's challenge is how to craft a sanction that is an appropriate response to Plaintiff's intentional behavior in contravention of the Text Order (despite multiple warnings), which has resulted in serious prejudice to Defendants. The pivotal consideration is that, while Plaintiffs' refusal to produce medical discovery seriously impacts damages, it does not impact the merits of the underlying excessive force claim. Thus, this is a circumstance where a lesser sanction focused only on damages would adequately allay the prejudice to Defendants while allowing adjudication of the merits of Plaintiffs' claim that their constitutional rights have been violated. See Sein, 2024 WL 3495898, at *7. Accordingly, and mindful of Plaintiffs' *pro se* status, I find that outright dismissal is too harsh. Instead, I recommend that the Court adopt a preclusion Order as follows:

   1. With respect to Plaintiff Mello's claim of physical injury, he should be precluded from introducing evidence and from testifying or presenting testimony by others regarding physical symptoms beyond those reflected in the Roger Williams and Garden City treating records.

> 2. With respect to Plaintiffs' claims of emotional injury, both Plaintiffs should be precluded from introducing evidence and from testifying or presenting testimony by others regarding mental symptoms beyond garden variety emotional distress. See Ross v. Cox Rhode Island, LLC, C.A. No. 21-118-JJM-LDA, 2022 WL 1100862, at *1 (D.R.I. Apr. 13, 2022) (defining "garden variety").

Further, to the extent that Plaintiffs' testimony or argument at trial exceeds what is permitted by this preclusion Order, I recommend that, in its discretion, the Court give a curative instruction to the jury.[11]

A coda: Defendants request costs and attorney's fees for the expenses they have incurred due to Plaintiffs' failure to provide medical records and information. ECF No. 60-1/82-1 at 6. In light of Plaintiffs' *pro se* status and their representations that they have been homeless, I recommend that the Court refrain from awarding fees and costs at this time. Plaintiffs are cautioned, however, that a new violation of an Order of the Court is committed at their peril, in that they remain at risk that the Court may order them to pay fees and costs, particularly if a pattern of noncompliance is established.

## IV.   Conclusion

I recommend that Defendants' motion (ECF No. 60/82) for Fed. R. Civ. P. 37(b)(2)(A) sanctions be denied to the extent that the motion seeks dismissal of the action. However, I recommend that the motion be granted to the extent that it seeks lesser Fed. R. Civ. P. 37(b)(2)(A) sanctions in that I recommend that the Court issue an Order precluding Plaintiff

---

[11] Such an instruction is normally formulated after the conclusion of evidence or during trial; therefore, it is premature to conclude that one will actually be given or to craft its contours. See Scott v. IBM Corp., 196 F.R.D. 233, 250 (D.N.J. 2000).

Mello from seeking damages for physical injuries beyond the symptoms in the two records from October 2021 that were produced and precluding both Plaintiffs from seeking damages for emotional injuries beyond garden variety.

     Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 28, 2025