UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOSHUA MELLO and RACHEL WARE,
   Plaintiffs,

v.                    C.A. No. 1:23-cv-00479-JJM-PAS
                       (consolidated with 1:23-cv-00480-JJM-PAS)

JOHN ROCCHIO, and EDWARD ARRUDA,
   Defendants

---

**PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS' COUNSEL, JULIA K. SCOTT-BENEVIDES**

---

**INTRODUCTION AND PRELIMINARY STATEMENT**

Plaintiffs move to disqualify Attorney Julia K. Scott-Benevides based on a sustained pattern of misconduct that has deprived Plaintiffs of a fair process and threatens the integrity of these proceedings.

Counsel's conduct has repeatedly crossed the line. She (1) made a materially false representation to this Court; (2) submitted attorney-authored answers that are non-responsive under Rule 33; (3) relied on deposition transcripts before affording Plaintiffs the Rule 30(e) review-and-errata process; (4) pursued a discovery dispute despite prior notice that the records at issue do not exist; and (5) produced a non-conforming Cranston Police Department evidence-destruction record that mixes typed and handwritten entries and lacks customary insignia. This is not zealous advocacy; it is record manipulation that blocks a fair trial. Under these circumstances, settlement is the most practical way to prevent further prejudice and expense.

The most recent example shows the problem. In Defendants' August 8, 2025 response, counsel stated in footnote number 2 on page 5 that Plaintiffs alleged she represented "the Cranston City

Solicitor" and "the Cranston Prosecutor" during Plaintiff Mello's post-conviction relief proceedings. That statement is false. Plaintiffs alleged—and the Court's docket, counsel's Notice of Appearance (Dec. 14, 2023), contemporaneous email, and letter on firm letterhead confirm—that she represented Defendant Catalano at that time. This was not a misunderstanding; it was a calculated misstatement that discredits Plaintiffs and shields counsel from scrutiny.

This misrepresentation contravenes counsel's duty of candor to the tribunal, including Rule 3.3(a)(1) of the Rhode Island Rules of Professional Conduct, and warrants the Court's exercise of its inherent authority to preserve the integrity of proceedings. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). But it is not the only instance. The pattern includes:

- **False Representation to the Court (August 8, 2025).** Counsel misstated Plaintiffs' allegation, contradicting the docket and her own filings.

- **Use of Unreviewed Deposition Transcripts.** Plaintiffs were not afforded Rule 30(e) review and correction, yet counsel relied on those transcripts to seek sanctions.

- **Non-Responsive Interrogatory Answers.** The sworn answers read as attorney-authored advocacy rather than factual responses from the parties, contrary to Rule 33.

- **Manufactured Dispute Over Nonexistent Medical Records.** Despite Plaintiffs' repeated notice—including before Magistrate Judge Almond—that such records do not exist, counsel escalated a brief production delay into a motion to dismiss.

- **Non-Conforming CPD Evidence-Destruction Record.** The CPD document concerning the destruction of Plaintiff Mello's knife appears irregular: it lacks the CPD crest,

contains mixed typed/handwritten entries, has no label or tracking information, and shows multiple indicia of alteration.

This pattern is incompatible with a fair process. Plaintiffs cannot obtain a fair trial under these conditions, and public confidence is harmed if such conduct is tolerated. Disqualification is therefore necessary. The First Circuit instructs courts to safeguard "the scrupulous administration of justice" and "the integrity of the bar." *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984). Plaintiffs respectfully request disqualification and appropriate corrective measures. The City should not continue litigating on a record affected by counsel's misstatements and non-conforming evidence.

Plaintiffs believe settlement is the most efficient and just resolution at this point. We are ready to engage in prompt, good-faith negotiations directly with Defendants. Further motion practice about counsel's conduct helps no one; settlement prevents additional prejudice and cost.

**COUNSEL'S AUGUST 8, 2025 MISREPRESENTATION: A MATERIAL FALSE STATEMENT THAT UNDERMINES TRIAL INTEGRITY**

The most recent—and an egregious—example of Attorney Scott-Benevides's misconduct occurred in Defendants' Response filed August 8, 2025. At page 5, footnote 2, counsel falsely represented to this Court that Plaintiffs alleged she represented "the Cranston City Solicitor" and "the Cranston Prosecutor" during Plaintiff Mello's post-conviction relief proceedings in Kent County. That statement is false.

Plaintiffs never alleged such a thing. What Plaintiffs alleged — and what the Court's own docket, emails, and counsel's own Notice of Appearance indisputably prove — is that Attorney

3

Scott-Benevides represented Defendant Catalano as of December 14, 2023. This is not conjecture; it is documented fact. Plaintiffs supplied multiple exhibits confirming representation, including:

1. Attorney Scott-Benevides's Notice of Appearance filed December 14, 2023;
2. Email correspondence confirming her representation of Defendant Catalano;

Despite these unambiguous facts, Attorney Scott-Benevides told the Court something that is flat out not true.

## A. The Legal Standard – Candor Toward the Tribunal

- Rhode Island Rule of Professional Conduct 3.3(a)(1): A lawyer "shall not knowingly make a false statement of fact or law to a tribunal."
- Rule 8.4(c) & (d): Misrepresentation and conduct prejudicial to the administration of justice constitute professional misconduct.
- Misstating what Plaintiffs alleged—contrary to the docketed Notice of Appearance—violates counsel's duty of candor to the tribunal.

**Case Law:**

- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991) – Courts have inherent power to sanction attorneys who commit fraud on the court.
- *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) – Fraud on the court arises when an attorney "sets in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate."

4

- *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 457 (4th Cir. 1993) – "Candor and honesty are the paramount duty of an attorney. A lie is not a tool of advocacy."

These standards exist to protect the integrity of the judicial process. When an attorney lies about something plainly disproven by the Court's own docket, the integrity of every past, present and future filing is compromised.

## B. Why This False Statement Matters

This is not a harmless misstatement. It is a deliberate distortion designed to shield Attorney Scott-Benevides from scrutiny by discrediting Plaintiffs' allegations of her involvement at the PCR hearing. By recasting the allegation as something Plaintiffs never said, counsel attempted to insulate herself from accountability while simultaneously undermining Plaintiffs' credibility.

If the Court tolerates such conduct, the adversarial process collapses. Plaintiffs cannot obtain a fair trial against counsel who makes false statements directly to the tribunal and whose misrepresentations are then excused or overlooked.

## C. Pattern Consistent with This Misrepresentation

This most recent false statement is the culmination of a sustained pattern:

- Ghostwriting Defendants' interrogatory responses in her own legalistic language and after a court order requiring a supplemental response.
- Manufacturing a discovery dispute over medical records that do not exist.
- Weaponizing unreviewed deposition transcripts to secure sanctions.

5

- And now, lying outright about her own representation of a defendant during critical PCR proceedings.

Each episode reflects the same theme: Attorney Scott-Benevides manipulates the record, fabricates narratives, and deceives the tribunal.

## D. Remedy: Disqualification and Settlement

Courts have repeatedly emphasized that disqualification is appropriate where counsel's misconduct undermines the fairness of the proceeding. See *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984) ("The guiding principle is the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar.").

Here, continued participation and conduct by Attorney Scott-Benevides destroys a fair hearing but forces Plaintiffs to litigate against a lawyer who has already demonstrated a willingness to make false statements to the Court itself which jeopardizes a fair trial.

The only remedy sufficient to restore fairness is disqualification. And practically, this case should not be driven further into expensive, protracted litigation by an attorney whose repeated misconduct taints every stage of proceedings. Settlement is the logical and just resolution: it spares taxpayers the mounting costs of defending an indefensible position and prevents further erosion of public trust in this Court's ability to provide a fair forum.

**Improper Use of Unreviewed and Uncorrected Deposition Transcripts**

Another example of Attorney Scott-Benevides's misconduct involves the handling of Plaintiffs' depositions. Under Federal Rule of Civil Procedure 30(e)(1), once a deposition is completed, the deponent must be given the opportunity to:

1. Review the transcript or recording, and
2. Sign a statement listing any changes in form or substance, with reasons for the changes.

This safeguard ensures accuracy and prevents unfair use of transcription errors or misstatements against the deponent.

Here, Plaintiffs were never provided the opportunity to review or sign their deposition transcripts, nor to make corrections or clarify potential errors. Despite this, Attorney Scott-Benevides relied on the unreviewed transcripts to move for sanctions, arguing that Plaintiff Mello claimed in his deposition to have suffered a concussion and that medical records therefore existed. In truth:

- Plaintiffs had repeatedly stated no such medical records exist.
- The alleged "concussion statement" is either a transcription error or a mischaracterization.
- At the January 24, 2025 hearing, Plaintiffs directly contested the transcript's accuracy in open court.

Yet defense counsel persisted in weaponizing the unreviewed transcript to press for sanctions.

## A. Legal Authority

- Rule 30(e)(1): Explicitly provides the deponent with 30 days to review and make changes. Denying this right renders reliance on the transcript premature and improper.
- **Case Law:**
  - *Reilly v. TXU Corp.*, 230 F.R.D. 486, 490 (N.D. Tex. 2005) – Courts recognize the Rule 30(e) right as mandatory; a transcript cannot be used as final until the review opportunity is given.
  - *Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir. 1995) – It is error to treat deposition testimony as binding where the deponent was denied the right to review and correct.
  - *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) – A deposition transcript that is not reviewed under Rule 30(e) is not "final" and cannot fairly be relied upon to establish critical facts.
  - *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 266 (3d Cir. 2010) – Courts have reversed reliance on transcripts where a Rule 30(e) review was denied, stressing that even minor errors may prejudice litigants.

## B. Prejudicial Effect

Attorney Scott-Benevides's reliance on these unreviewed transcripts directly prejudiced Plaintiffs. She not only used them to frame Plaintiffs' testimony inaccurately but leveraged them to obtain sanctions for discovery noncompliance based on records that do not exist. This is a textbook example of procedural unfairness leading to substantive prejudice. We are pro se and this case directly affects our lives; repeated misstatements cause real intentional prejudice.

## C. Pattern Of Abuse

8

This misconduct aligns with counsel's broader pattern: ghostwriting discovery responses, manufacturing disputes over nonexistent medical records, and misrepresenting Plaintiffs' allegations to the Court. Her misuse of deposition transcripts continues the same theme — manipulating the record to her clients' advantage regardless of the truth.

**Mischaracterization and Narrowing of Plaintiffs' Claims**

Another facet of Attorney Scott-Benevides's misconduct is her persistent effort to mischaracterize Plaintiffs' lawsuits as if they concern only "use of force." This is a deliberate distortion of the record. Plaintiffs' pleadings assert multiple, distinct constitutional violations—including unlawful arrest, retaliation, due process violations, defamation, and misconduct in discovery. Reducing these claims to "excessive force" alone does not merely simplify the issues; it strategically insulates her clients from accountability on the broader misconduct alleged.

This tactic undermines the interest of justice in two ways:

It prejudices Plaintiffs. By miscasting the litigation as a single-issue case, counsel invites the Court to ignore or discount entire categories of constitutional harm. This creates a skewed record that denies Plaintiffs fair consideration of their full claims.

It shields Defendants. Counsel's narrowing strategy functions as a protective device for her clients, diverting attention away from the unlawful arrests, retaliatory trespass orders, spoliation of evidence, and ongoing misconduct that extend well beyond the excessive force incident.

The First Circuit has cautioned against litigation tactics that misrepresent or obscure the true scope of claims, as they strike at the "scrupulous administration of justice" (Kevlik v. Goldstein, 724 F.2d 844, 848 (1st Cir. 1984)). By recasting this litigation as if it were solely about use of

9

force, Attorney Scott-Benevides once again manipulates the record to her clients' advantage at the expense of both fairness and truth.

### D. Necessity of Disqualification

By preventing Plaintiffs from exercising their Rule 30(e) rights, then weaponizing the unreviewed transcripts for sanctions, Attorney Scott-Benevides acted in violation of the Federal Rules and her duty of candor. This conduct alone would warrant corrective action. When combined with her broader pattern of deceit, it demonstrates why disqualification is the only remedy sufficient to preserve fairness.

**NON-COMPLIANT INTERROGATORY ANSWERS UNDER RULE 33 (AND D.R.I. LR Cv 33(b))**

The Court ordered Defendants Rocchio and Arruda to provide more responsive interrogatory answers. What Plaintiffs received were not the Defendants' own sworn recollections, but attorney-crafted narratives drafted and filtered by counsel, signed perfunctorily by the parties.

For example, Defendant Arruda's supplemental response to Interrogatory No. 14 (regarding his testimony about placing Plaintiff "head to head" before taking him to the ground) does not read as a factual recollection in his own words. Instead, it is saturated with legalistic phrasing designed to mirror defense counsel's litigation strategy. Arruda's response states:

> "Given the totality of the circumstances in this situation with Plaintiffs, I was able to utilize skills that I learned through the L.O.C.K.U.P. and L.E.A.D.S. training to safely bring Plaintiff Mello to the ground."

This is not the language of a lay witness. It is the stylized advocacy of an attorney carefully framing the incident in *Graham v. Connor* "objective reasonableness" terminology. Likewise, the responses are prefaced by sweeping boilerplate objections ("Defendant objects to the confusing nature of this interrogatory," "Defendant objects as it seeks information regarding facts that may be in dispute"), which are plainly the words of counsel, not the defendants' own sworn testimony.

### A. Violation of the Federal Rules

The Federal Rules are clear:

- **FRCP 33(b)(3)** – Each interrogatory "must… be answered separately and fully in writing under oath."
- **FRCP 33(b)(5)** – "The person who makes the answers must sign them, and the attorney who objects must sign any objections."
- **D.R.I. LR Cv 33(b)** likewise prohibits generic, boilerplate objections and requires specificity.

While Defendants affixed signatures, the answers themselves are not theirs. They are ghostwritten by counsel, in violation of Rule 33's purpose of securing the party's own knowledge under oath.

Moreover, under FRCP 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Attorney-drafted advocacy in place of firsthand factual responses is evasive by definition.

### B. Ethical Misconduct – Counsel as Unsworn Witness

11

By substituting her own stylized legal narrative into Defendants' sworn responses, Attorney Scott-Benevides effectively becomes a witness to what Defendants allegedly meant or intended to say. This places her in direct violation of Rule 3.7 of the Rhode Island Rules of Professional Conduct (Lawyer as Witness), which prohibits an attorney from acting as trial counsel in a matter where her own testimony is necessary.

In other words, if Plaintiffs challenge the authenticity of these responses, the only person who can explain the wording is counsel herself — demonstrating the impermissible conflict she has created.

**C. Pattern of Manipulation and Bad Faith**

This discovery abuse does not stand in isolation. It is part of a broader pattern of misconduct by Attorney Scott-Benevides:

- Filing an eleventh-hour motion to compel on the final day of discovery (January 6, 2025), with an incorrect attorney address, demanding information Plaintiffs had already stated repeatedly they did not possess — including during a discovery conference with Magistrate Judge Almond, also with no more extensions to be granted by the court.
- Misrepresenting that Plaintiffs had failed to produce medical records related to the use-of-force incident, when in fact there were none. The only additional medical record came from an unrelated ER visit with a photo produced by defense counsel herself, which Plaintiffs then identified and produced. Plaintiffs had consistently explained — including in conference before Judge Almond — that no further use-of-force medical records existed. Counsel nevertheless pressed forward with a motion to compel, and when Plaintiffs promptly requested the isolated ER record from the doctor's office (which took

12

- a few days to arrive), she escalated immediately to a motion to dismiss. This was not advocacy; it was a calculated bad-faith attempt to weaponize a non-issue and take away a critical health and wellness concern from the Defendants actions.
- Submitting a false representation in footnote form to this Court on August 8, 2025, by claiming Plaintiffs alleged she represented the "City Solicitor" and "Cranston Prosecutor" during Plaintiff Mello's PCR proceeding, when in fact Plaintiffs alleged only that she represented Defendant Catalano — a fact conclusively proven by the Court's own docket and her own notice of appearance dated December 14, 2023.

Taken together, these actions reveal a pattern: counsel does not merely represent her clients, she manipulates the discovery process, misrepresents the record to the Court, and injects her own narrative into sworn testimony. Such conduct undermines the adversarial process and prevents Plaintiffs from obtaining a fair trial.

**D. Necessity of Disqualification**

The integrity of these proceedings cannot be preserved so long as Attorney Scott-Benevides remains as counsel of record. Her repeated misrepresentations, her role in ghostwriting her clients' discovery, and her unethical escalation tactics collectively disqualify her under both the Federal Rules and the Rhode Island Rules of Professional Conduct.

Disqualification is the only remedy sufficient to restore fairness and protect the integrity of the judicial process.

**Submission of Doctored and Manipulated Evidence in Discovery**

13

Perhaps the most troubling aspect of Attorney Scott-Benevides's misconduct arises from her role in producing manipulated evidence during discovery. Among the documents Defendants produced was a purported Cranston Police Department record concerning the destruction of Plaintiff Mello's knife. This document is central to the litigation, as the length of the blade was the subject of dispute in connection with Plaintiff Mello's weapons charge.

This evidence suffers from multiple fatal defects:

1. **Destruction of Evidence During Appeal.** The knife was destroyed by the Cranston Police Department while Plaintiff Mello's appeal was still pending on the weapons charge. There are also two different dates with signatures that the evidence was destroyed on. Destroying contested evidence during the pendency of an appeal is spoliation. See *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.").

2. **Missing Department Crest.** The destruction form produced by Defendants is missing the official Cranston Police Department crest. Captain Robertson himself admitted that the form should bear the crest, underscoring that the version produced is irregular and non-standard.

3. **Hybrid, Manipulated Format.** The document is a hybrid: partly handwritten and partly typed, without any indication of an evidence label, batch number, or tracking log. This is directly contrary to CPD's own stated procedure, which requires such forms to be completed by hand because officers do not enter property data directly into a tablet or computer.

4. **Doctored Digital Form.** The version produced in discovery shows multiple signs of digital manipulation. Typed text has been overlaid onto handwritten entries without any official marking or explanation, creating a hybrid document inconsistent with other obtained CPD's property documents received from APRA's.

By producing this manipulated document in discovery, Attorney Scott-Benevides presented evidence that is not authentic and not reliable. Such conduct undermines the discovery process and strikes at the integrity of the judicial proceeding itself.

**A. Legal Authority**

- **Fed. R. Civ. P. 26(g)(1):** By signing discovery responses, an attorney certifies that the disclosure is "complete and correct as of the time it is made." Producing a manipulated or doctored record violates this certification.
- **Fed. R. Civ. P. 37(c)(1):** Authorizes sanctions where a party fails to provide truthful, accurate disclosures.
- **Case Law:**
  - *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) – Courts have inherent power to sanction attorneys who commit fraud on the court.
  - *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) – Fraud on the court includes "the presentation of fabricated evidence calculated to interfere with the fair adjudication of the case."
  - *Hull v. Mun. of San Juan*, 356 F.3d 98, 101 (1st Cir. 2004) – Spoliation and the use of tainted evidence strike at the "heart of the judicial process" and warrant severe sanctions.

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) – Fabricated evidence is not merely an injury to one litigant; it is a wrong against the integrity of the judicial process itself.

**B. Why This Matters**

The destruction of the knife during a pending appeal is itself highly suspect. But worse, the document produced in discovery is not authentic: it lacks the CPD crest, contains hybrid handwritten/typed entries inconsistent with standard procedure, and shows signs of digital manipulation. By submitting this doctored record, counsel misled Plaintiffs and the Court into treating manipulated evidence as authentic.

This is not zealous advocacy; it is fraud on the court. As *Hazel-Atlas* makes clear, tampering with evidence "involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."

**C. Necessity of Disqualification**

Counsel who produces doctored evidence cannot be trusted to litigate fairly. The submission of manipulated documents goes to the very core of trial integrity. If Plaintiffs are forced to proceed against counsel who fabricates or conceals the true nature of material evidence, the promise of a fair hearing evaporates. The Court's duty to preserve its own integrity demands disqualification.

**CONCLUSION AND RELIEF REQUESTED**

The record before this Court is clear. Attorney Julia K. Scott-Benevides has engaged in a sustained pattern of misconduct that makes a fair trial impossible. She has:

16

- Lied directly to this Court in her August 8, 2025 filing, misstating Plaintiffs' allegations in a manner contradicted by the Court's own docket and her own notice of appearance;

- Weaponized unreviewed deposition transcripts in violation of Rule 30(e), using them as the foundation for sanctions based on testimony Plaintiffs never had the opportunity to correct;

- Ghostwritten her clients' interrogatory responses in her own legalistic language, depriving Plaintiffs of the sworn testimony required under Rule 33;

- Manufactured a discovery dispute over medical records that do not exist, escalating a minor delay into a motion to dismiss despite Plaintiffs' prior explanation before Magistrate Almond; and

- Produced a manipulated destruction record for Plaintiff Mello's knife, destroyed during his pending appeal, that lacks the CPD crest, bears hybrid handwritten/typed alterations, and shows signs of digital manipulation.

- She has also engaged in a sustained effort to strip Plaintiffs' lawsuits down to a single "use of force" narrative, willfully ignoring and mischaracterizing the broader constitutional violations at issue. This tactic not only prejudices Plaintiffs by obscuring the full scope of their claims but also functions as a shield for her clients, protecting them from accountability for retaliation, unlawful arrest, defamation, and misconduct beyond the use of force incident.

Each of these violations, standing alone, would warrant sanction. Taken together, they show a lawyer who does not respect the Court's authority, the discovery rules, or the integrity of the judicial process. This is not zealous advocacy; it is a calculated strategy of misrepresentation, obstruction, and abuse.

17

The First Circuit has made clear that "[t]he guiding principle is the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984). Courts also retain inherent authority to protect their proceedings from fraud, deceit, and the presentation of fabricated evidence. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). When counsel repeatedly makes materially false statements to this Court, manipulates the record, and submits doctored documents, the integrity of the trial itself is destroyed.

For these reasons, Plaintiffs respectfully request that this Court:

1. Disqualify Attorney Julia K. Scott-Benevides and her firm from further representation of the Defendants in this matter;
2. Strike all filings and discovery responses tainted by her misconduct, including the August 8, 2025 response and the doctored destruction record;
3. Impose appropriate sanctions under Fed. R. Civ. P. 26(g), 37, 28 U.S.C. § 1927, and the Court's inherent authority, and;
4. Direct the parties toward settlement discussions, recognizing that the City should not be forced to defend claims on the basis of a record irreparably tainted by counsel's dishonesty and fraud on the Court.

Only disqualification and corrective action can restore fairness to these proceedings. The City and its taxpayers should not bear furhter burden of her misconduct. Plaintiffs have a constitutional right to a fair trial, and the public has a right to confidence in the administration of justice. Both rights are threatened so long as Attorney Scott-Benevides remains as counsel of record.

Finally, Plaintiffs note that they are not finished exploring their legal options to hold those responsible for this misconduct fully accountable. Julia Scott-Benevides's actions are not acceptable, nor should they ever be tolerated in federal or state court. The duty of candor and fairness is the bedrock of the adversarial process, and when that duty is abandoned, the only remedy that preserves justice is disqualification and accountability. Anything less would reward fraud upon the Court and leave the judicial process compromised.

Dated: August 28, 2025

Respectfully submitted,

/s/ Joshua Mello
/s/ Rachel Ware
57 Rolfe Square, Unit 10113
Cranston, RI 02910
kskustomsrideons@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th of August 2025, a copy of the foregoing PLAINTIFFS' MOTION TO DISQUALIFY DEFENSE COUNSEL JULIA K. SCOTT-BENEVIDES was served via the e-filing system and via email to:

| | |
|---|---|
| Julia K. Scott-Benevides | Kathleen A. Hilton, Esq. |
| DeSisto Law LLC | DeSisto Law LLC |
| (401) 272-4442 | (401) 272-4442 |
| julia@desistolaw.com | Katie@desistolaw.com |

/s/ Joshua Mello
/s/ Rachel Ware

19

**Exhibit List**

- **Exhibit A** – Email correspondence from Attorney Scott-Benevides (dated December 14, 2023) confirming representation of Defendant Catalano.

- **Exhibit B** – Defendants' Memorandum in Support of Objection to Plaintiffs' Motion to Stay Summary Judgment Proceedings (filed August 8, 2025), at page 5, footnote __, containing counsel's false representation.

- **Exhibit C** – Defendant Arruda's Supplemental Interrogatory Response (highlighting ghostwritten legalistic phrasing inconsistent with personal recollection).

- **Exhibit D** – Defendant Rocchio's Supplemental Interrogatory Response (demonstrating attorney-drafted boilerplate objections and phrasing inconsistent with personal testimony).

- **Exhibit E** – Defendants' Motion to Compel (filed January 6, 2025), filed on the final day of discovery with incorrect attorney address, demanding medical records Plaintiffs had already stated do not exist.

- **Exhibit F** – Defendants' Motion to Dismiss for alleged failure to comply with discovery order, filed immediately after Plaintiffs' brief delay in obtaining unrelated ER record.

- **Exhibit G** – Cranston Police Department destruction form regarding Plaintiff Mello's knife (produced in discovery), missing the CPD crest, containing hybrid handwritten/typed entries, inconsistent with standard procedure, and showing signs of digital manipulation.