UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSHUA MELLO,<br>    Plaintiff,<br><br>v.<br><br>EDWARD ARRUDA, *et al.,*<br>    Defendants. | C.A. No. 23-479JJM |
| JOSHUA MELLO and RACHEL WARE,<br>    Plaintiffs,<br><br>v.<br><br>JOHN ROCCHIO, *et al.*,<br>    Defendants. | C.A. No. 23-480JJM |

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

These cases allege the unconstitutional use of excessive force in connection with and following the arrest of Plaintiff Joshua Mello at a Cranston middle school by the Cranston police officers working as school resource officers who are named as Defendants – Officer Edward Arruda and Officer John Rocchio. Now pending before the Court is the motion for summary judgment filed by *pro se* Plaintiffs Joshua Mello and Rachel Ware pursuant to Fed. R. Civ. P. 56. ECF No. 79/102.[1] Also pending are Plaintiffs' related motion to strike Defendants' "improper

---

[1] This Report and Recommendation is issuing in two related cases, 23-cv-479JJM and 23-cv-480JJM. The two cases are consolidated and differ principally in that only Plaintiff Joshua Mello is prosecuting the claim in 23-cv-479JJM, while his wife, Rachel Ware, is named as a co-Plaintiff in 23-cv-480JJM. Further complicating who is implicated by the pending motion for summary judgment, in 23-cv-480JJM, by Text Order on August 28, 2025, the Court granted Defendants' motion for judgment on the pleadings dismissing the claims of Plaintiff Rachel Ware in 23-cv-480, but affording her until September 29, 2025, to file a motion for leave to file a second amended complaint. In light of the possibility that she may remain as a party, for 23-cv-480JJM, references in this Report and Recommendation to "Plaintiffs" refer to Plaintiff Mello and Plaintiff Ware, while for 23-cv-479JJM, references to "Plaintiffs" refer only to Plaintiff Mello. Because the ECF docketing numbers in the two cases do not align (23-cv-

evidence and arguments" (ECF No. 95/120) and Plaintiffs' request for judicial notice of certain video evidence (ECF No. 96/121).

Citing Scott v. Harris, 550 U.S. 372, 380-81 (2007), which holds that summary judgment may enter based on video evidence that utterly discredits the nonmovant's "fiction[al]" version of events, Plaintiffs argue that the video recordings[2] of the events in issue clearly establish that there is no genuinely disputed issue of material fact that: (1) one of the Cranston police officers, Defendant Arruda, used objectively unreasonable force against Plaintiff Mello when he placed him in a dangerous neck restraint ("chokehold") and forcefully and violently took him to the ground during the arrest, and (2) the other Cranston police officer, Defendant Rocchio, used objectively unreasonable force when he forcibly smashed Plaintiff Mello's body onto the hood of a police vehicle after Plaintiff Mello was handcuffed and fully compliant.  See ECF 79-1/102-1 at 3.  Therefore, Plaintiff Mello contends he is entitled to judgment on liability against each of these Defendants.  Despite her lack of substantive allegations forming the basis for a viable claim,[3] Plaintiff Ware also asks the Court to enter summary judgment in her favor.

The two motions and the request have been referred to me, for report and recommendation as to the motion for summary judgment and for determination as to the motion

---

480JJM has had more filings), all cited ECF references contain, first, the docket number in 23-cv-479JJM and, second, the docket number in 23-cv-480JJM.

[2] Both parties rely on videos.  Plaintiffs rely on what they have marked as Plaintiffs' Exhibits A, B, C, D and E.  Defendants rely on what they have marked as Defendants' Exhibits D, G and J.  Plaintiffs' exhibit designations are confusing as to what they intended as Plaintiffs' Exhibit A; it appears to the Court that Plaintiffs' Exhibit A and Defendants' Exhibit D are the same video, although Plaintiffs may have intended to rely on all of the surveillance videos (Defendants' Exhibits J, G and D) as Plaintiffs' Exhibit A.  Plaintiffs' Exhibit B is an excerpt from Plaintiffs' Exhibit A/Defendants' Exhibit D.  Plaintiffs' Exhibit D appears to be an excerpt from Defendants' Exhibit G, although Plaintiffs assert it is an excerpt from Plaintiffs' Exhibit A.  This confusion has had no adverse impact on the *pro se* Plaintiffs in that the Court has carefully considered all of the videos without regard to which party designated them.

[3] See n.1 supra.

to strike and the request for judicial notice. For the reasons that follow, I recommend that the motion for summary judgment be denied, and I have granted in part and denied in part the motion to strike and the request for judicial notice. The latter rulings are reflected in separate text orders that are issuing today. In considering the two motions and the request, the Court has deployed the leniency required for any *pro se* litigant. Mello v. Arruda, C.A. No. 23-479JJM, C.A. No. 23-480JJM, 2025 WL 1225220, at *2 (D.R.I. Apr. 28, 2025), adopted, 2025 WL 1433383 (D.R.I. May 19, 2025).

I.  **Standard of Review and Applicable Law**

The legal standard is well settled: the Court must grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is "material" if it might affect the outcome of the suit; a dispute is "genuine" if a reasonable jury could find for the non-moving party. Id. at 248. A party must also be entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the non-moving party. Cont'l Cas. Co. v. Canadian Univ. Ins., 924 F.2d 370, 373 (1st Cir. 1991); see Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 7 (1st Cir. 2025) ("When all is said and done, the [district] court must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor, but paying no heed to

3

conclusory allegations, improbable inferences, [or] unsupported speculation.") (cleaned up). Summary judgment is a "drastic remedy" because it deprives the parties of their Seventh Amendment right to have their case tried by a jury. Colman v. Faucher, 128 F. Supp. 3d 487, 490 (D.R.I. 2015). It also serves as an important check on the parties: the nonmovant may not rely on "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation," but must produce "specific facts" to support their claims or defenses. Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020) (internal quotation marks omitted).

When the claim in issue (as here) is based on the wrongful use of excessive force pursuant to 42 U.S.C. § 1983, the Court must be guided by the United States Supreme Court's longstanding holding that such claims require evaluation under the reasonableness standard of the Fourth Amendment as well as that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Graham v. Connor, 490 U.S. 386, 395-96 (1989) (internal quotation marks omitted). Whether the force used is excessive is a factual determination that requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. For example, in Reynoso v. Endres, C.A. No. 22-cv-044-JJM-PAS, 2025 WL 1286012, at *6 (D.R.I. May 2, 2025), despite videos showing the moments before, during, and after the arrest in issue, the Court denied summary judgement because it found that the facts pertaining to the excessive force claim were in dispute. On the other hand, if the video evidence is clear and the nonmoving party's version of events is utterly discredited by the video such that no reasonable jury could believe the nonmovant, the court may adopt the facts as depicted in the video and enter summary judgment. Scott, 550 U.S. at 380-81

4

(error to deny summary judgment in favor of police officer when claimant's version of events was "visible fiction"); see Meehan v. Quicken Loans, Inc., C.A. No. 19-560-WES-PAS, 2021 WL 5630803, at *2 (D.R.I. Dec. 1, 2021) (in reliance on Scott, because nonmovant's version of facts was "blatantly contradicted" by objective audio recordings, so that no reasonable jury could believe nonmovant's version, summary judgment entered) (internal quotation marks omitted), adopted by text order (D.R.I. Feb. 15, 2022), aff'd, No. 22-1147, 2022 WL 19076613 (1st Cir. Sept. 7, 2022).

## II.    Factual Background[4]

### A.    Disputed Events as Described in Non-Video Evidence

This case is based on an incident that occurred on October 21, 2021, at the Cranston middle school attended by Plaintiff Mello's daughter. Mello v. Arruda, C.A. No. 23-479JJM, C.A. No. 23-480JJM, 2025 WL 847823, at *2 (D.R.I. Mar. 18, 2025). On that day, Plaintiff Mello, accompanied by Plaintiff Ware, went to the school during school hours to remove his daughter (who had texted him for help with an issue with her clothing). Id.; see also ECF No. 89-4/114-4 at 3. Initially, only Plaintiff Mello entered the school. ECF 79-2/102-2 ¶ 1. As he entered, a school employee asked him to put on a mask to comply with Covid guidelines and he refused, threw the proffered mask in the trash and entered the building to sit in the school lobby. ECF No. 89-2/114-2 at 90; ECF No. 79-3/102-3 at 35. When this employee asked him to wait outside while his daughter was summoned, he refused, remaining inside the main lobby of the school. ECF No. 89-2/114-2 at 90. When school officials raised concerns arising from the

---

[4] In compliance with the Local Rules, the parties have filed Statements of Undisputed ("SUF") and Disputed Facts ("SDF") supported by a plethora of attached evidence including discovery responses, deposition excerpts, witness statements, police reports, the file (including testimony) from Cranston's Office of Professional Standards' investigation of Plaintiff Mello's complaints about the incident, audio recordings of testimony during Plaintiff Mello's criminal trial and a Cranston Police Department policy addressing the use of force, in addition to the surveillance and cell phone videos of the incident, as well as still photographs extracted from the videos.

5

Family Court Order[5] on file with the school (which provided that Plaintiff Mello was barred from removing his daughter from school before dismissal without written consent from the child's mother, which he did not have), he began to become irate and belligerent, yelling loudly and using profane language directed at school officials. ECF No. 89-2/114-2 at 90-97. In response to Plaintiff Mello's loud, belligerent and volatile conduct in the school lobby while students and teachers were present, school officials called for assistance from the two Cranston school resource officers, Defendants Arruda and Rocchio; school officials also placed the school on lockdown. See id.; see also ECF No. 79-3/102-3 at 3, 29. While Plaintiffs admit that they went to the school in response to Mello's daughter's text, Plaintiffs vigorously dispute that Plaintiff Mello was disruptive during this phase of the incident; they also contend that school officials' reaction to Plaintiff Mello's conduct was not reasonable.

The two Defendant police officers quickly arrived to observe an agitated, irate parent. ECF No. 79-3/102-3 at 28, 40. As Defendants' evidence establishes, one of the officers (Defendant Arruda) spoke to the child's mother by phone in an attempt to resolve the incident and get Plaintiff Mello out of the school. ECF No. 79-3/102-3 at 30 ("I just wanted the child and him out of the school, let them settle it and let her come back . . . I wanted it to end."). The child's mother provided oral consent ("to keep the peace," according to Defendant Arruda) to allow Plaintiff Mello to temporarily remove the child from the school; according to Defendant Arruda, the child's mother also told him that Plaintiff Mello had engaged in similar conduct

---

[5] Plaintiffs dispute the reasonableness of the school's and subsequently the Defendant police officers' reliance on this Family Court Order because the Family Court had entered a more recent Order that nullified it. See ECF No. 91/116 ¶¶ 2-4. Defendants allege, and Plaintiffs do not materially dispute, that the school did not receive the correct Family Court Order until after October 21, 2021. ECF No. 91/116 ¶ 5; see ECF No. 89-5/114-5 at 3-4.

resulting in his arrest at another school.[6]  ECF No. 79-3/102-3 at 30, 34; 89-2/114-2 at 2.  Also to deescalate the incident, Defendant Arruda agreed that Plaintiff Mello could ask Plaintiff Ware (who had been waiting outside) to enter the school.  ECF No. 79-3/102-3 at 30 ("so I allowed him to bring somebody in to an already hostile situation, hoping that she would calm him down").

As described by Defendants and other witnesses, these efforts were ineffective in deescalating Plaintiff Mello's aggressive and belligerent conduct.  See e.g. ECF No. 89-2/114-2 at 90-97.  When he was shown a copy of the Family Court Order, Plaintiff Mello tried to rip it up and would have but for one of Defendant Officers grabbing it.  ECF No. 89-4/114-4 at 9 ("Q: So you tried to rip up that Order; correct?  A: . . . I was . . . going to. . . .  I didn't even get a chance to.").  When told that the child's mother would "allow[]" him to remove the child, his conduct escalated, becoming even louder, more interruptive and more belligerent, despite being told that his behavior was exposing him to arrest for disorderly conduct.  ECF No. 79-3/102-3 at 30, 41-42 ("the more we tried to get him to calm down, it seemed like he got more upset and irate").  Nor were Plaintiff Ware's attempts to calm him effective; as described by Defendant officers, she was pushing Plaintiff Mello back as he was trying to step forward, and he was trying "to move her out of the way to get towards where [Defendant Rocchio] was."  ECF No. 79-3/102-3 at 42.  During this phase of the incident, Defendants Arruda and Rocchio tried to position themselves to move Plaintiff Mello out of the school lobby, leaving him free to leave the building at any time to protect "everyone else in the school because of his more aggressive behavior."  ECF No. 79-3/102-3 at 42.  As they did so, Defendant Rocchio noticed what appeared to be belt clips

---

[6] Plaintiffs dispute the appropriateness of Defendant Arruda's reliance on this information as background to inform the police response to the unfolding incident because Plaintiff Mello's "arrest . . . was . . . expunged."  ECF No. 92/117 at 22.

potentially for knives in one of Plaintiff Mello's pockets.  ECF No. 79-3/102-3 at 42.  Plaintiffs fiercely dispute this version of events, arguing that, because Plaintiff Mello did not engage in actual physical violence (such as lunging or reaching for the knives or a person in a threatening way), nothing in these circumstances justified the subsequent arrest and the force used to effect it.  See generally ECF No. 92/117 at 9.

These events led to Defendant Rocchio's decision to initiate Plaintiff Mello's arrest for disorderly conduct.  When one final warning failed, Defendant Rocchio waited for a moment until Plaintiff Ware stepped to the side.  ECF No. 79-3/102-3 at 44.  He grabbed Plaintiff Mello's arm, while from the other side, Defendant Arruda used a "head-to-head" maneuver to safely finish pushing Plaintiff Mello out of the school lobby into the vestibule and take him to the ground in a controlled descent in the vestibule.  ECF No. 79-3/102-3 at 16, 31, 44.  A significant struggle followed before Defendants were able to apply handcuffs; after handcuffs were applied as Defendant Rocchio tried to find the knives, Plaintiff Mello continued to kick and aggressively roll, push and thrash his body.  ECF No. 79-3/102-3 at 31, 44.  During this "commotion," Defendant Rocchio removed a total of three knives from Plaintiff Mello's person (one of which was subsequently found by the state to be of illegal length supporting one of Plaintiff Mello's criminal convictions).  ECF No. 79-3/102-3 at 44-45.  Finally, Defendant officers raised Plaintiff Mello to his feet and walked him outside to the street to await the arrival of a vehicle appropriate for transport of a person in custody.  ECF No. 79-3/102-3 at 45.  Defendant Rocchio described Plaintiff Mello, while walking to the street, as "combative and resistant the whole way."  ECF No. 79-3/102-3 at 45.  When Defendant Rocchio attempted to lean Plaintiff Mello forward over the police vehicle that was present (to complete the required secondary search), he continued to resist and push back.  In the moment, as Defendant Rocchio describes, Plaintiff Mello stopped

resisting; as a result, when Plaintiff Mello was pushed down on the vehicle, "he did go down on the car a little bit harder than I would have expected because he had been pushing back against our weight," although Defendant Rocchio did not believe that Plaintiff Mello's head struck the vehicle, "just his chest."  ECF No. 79-3/102-3 at 45-46; ECF No. 89-2/114-2 at 76.  Defendants admit that they used force in connection with this arrest and that Plaintiff Mello was injured as a result.  ECF No. 79-3/102-3 at 21, 25.  As Defendant Rocchio described, Plaintiff Mello appeared to have a rug burn on his forehead from "the rug or the mat inside that vestibule."  ECF No. 79-3/102-3 at 48; see ECF No. 79-3/102-3 at 3 ("Joshua had a rug burn on the side of his forehead.").

Plaintiffs hotly dispute this version of the events.  They contend that the arrest was unreasonable because there was no probable cause[7]; that the "head-to-head" maneuver used by Defendant Arruda was actually a chokehold that was excessive and unreasonable; and that Defendant Arruda's takedown was unnecessary, excessively violent and unreasonable.  See ECF No. 79-1/102-1; ECF No. 92/117.  They further argue that, once handcuffed, Plaintiff Mello stopped resisting and became completely compliant so that the force Defendant Rocchio used to lean him over the police vehicle for a search was excessive and gratuitous.  ECF No. 79-1/102-1.

B.     Version of Events Depicted in Videos

The Court has reviewed the video evidence in the light most favorable to the nonmovant Defendants, with all reasonable inferences resolved in their favor, as the law requires at the summary judgment phase, and makes the following observations.

---

[7] Because Plaintiff Mello was convicted by the State of disorderly conduct arising from his conduct, as well as of possession of an illegal knife, this argument is Heck-barred.  See 23-cv-480, ECF Nos. 16, 34.  The fact that a post-conviction petition is pending in the Superior Court does not impact this conclusion.  23-cv-480, ECF No. 16 at 2.

9

Plaintiffs' Exhibit A is a school surveillance video that depicts the school's main lobby. It has no sound. It displays the portion of the incident that occurred in the school main lobby, beginning at 8:19 a.m. on October 21, 2021, when Plaintiff Mello first entered the school, until 9:00 a.m.,[8] after he had been arrested and removed. It shows Plaintiff Mello entering the school with no mask, while what appear to be other school officials and students who may be seen in passing are masked. After he interacts with persons who appear to be school officials, he sits and waits. Two male school officials return and interact with him. Then one of Defendant officers arrives. He interacts with Plaintiff Mello and inserts a protective hand (without touching either Plaintiff Mello or the school official) between Plaintiff Mello and the school official to whom Plaintiff Mello is talking. This school official shows a document to Plaintiff Mello and Defendant officer can be seen grabbing at the document as Plaintiff Mello is about to rip it. The document tears and pieces fall to the floor, which are subsequently picked up by Defendant officer. Plaintiff Mello leaves the lobby and returns with Plaintiff Ware; he grabs the phone in her hands and seems to begin filming. The other Defendant officer then arrives. A child enters and is protectively escorted by school officials through the lobby seemingly in an attempt to quickly skirt and avoid the incident. Defendant officers flank Plaintiff Mello, backing him (without touching or physically contacting him) towards the exit door. Plaintiff Ware inserts herself between Plaintiff Mello and the two Defendant officers and seems to be trying to calm Plaintiff Mello down (touching his shoulder and turning to hold his face in her hands), but he pushes her aside. The takedown follows; it is also displayed on Exhibit B, which an excerpt of Exhibit A and is discussed in more detail below.

---

[8] These times do not appear in the Exhibit; they come from Plaintiffs' request for judicial notice. ECF No. 96/121 at 1.

Plaintiffs' Exhibit E is a cell phone video with both sound and a visual display. It depicts the pre-arrest interaction between Plaintiffs Mello and Ware and persons who appear to be school officials and the two police officer Defendants. The perspective of this video is such that Plaintiff Mello appears to be filming it in that he is not visible, although he can be heard. See ECF No. 79-3/102-3 at 41 (Plaintiff Mello was recording with his cell phone). Viewed in the light most favorable to the nonmovants, this video displays Plaintiff Mello loudly, aggressively and belligerently speaking to two school officials, who are standing somewhat back and looking fearful,[9] and to Defendant police officers, who move to be standing closer to him but not pushing or visibly crowding him. Plaintiff Mello is yelling over them and aggressively interrupting them. When Plaintiff Mello is told by one of Defendants that his child's mother had been contacted and confirmed that Plaintiff Mello would be "allow[ed]" to take the child, he can be heard becoming even more enraged and belligerent, shouting over officers, with Plaintiff Ware also speaking loudly. ECF No. 79-3/102-3 at 30. During this tirade, as least once, Plaintiff Mello used profane language to address Defendant officers. This video depicts a school official escorting a child into the school, seemingly trying to skirt the incident with an arm over the child's shoulder to protect him/her; a fact finder could well interpret this aspect of the video as displaying a school official trying to protect the child from the frightening and disturbing scene Plaintiff Mello was causing.

As displayed on this video, Defendant officers tried to calm Plaintiff Mello and told him that his daughter would be released to him once he calmed down but that he was at risk of arrest for disorderly conduct if he did not desist. This video also depicts Plaintiff Ware's ineffective

---

[9] Plaintiff Mello argues that this can be interpreted as "lurking disengagement" by a school official. ECF No. 92/117 at 6. Having reviewed the videos, the Court finds that a fact finder could readily conclude that the school officials were hanging back because Plaintiff Mello's behavior was frightening and extremely disruptive, potentially endangering them and students.

attempts to calm him down, including that he can be heard also loudly telling her to "stop, leave me alone." Finally, one of the officers informs Plaintiff Mello that school administrators would not bring his daughter to him until he was calm and that the next thing that is "going to be is that you're going to be in custody" and Plaintiff Mello yells back loudly, "you're not calling the shots," and the video ends as the arrest is initiated. This video corroborates Plaintiffs' contention that Plaintiff Mello was demanding that Defendant Officers must stay six feet away from him,[10] but it squarely contradicts Plaintiffs' argument that he did so in a calm way. His behavior as displayed on this video is anything but calm. Thus, this video may readily cause a reasonable fact finder to conclude that Plaintiff Mello was intentionally creating a loud and frightening disruption potentially endangering the children who were present in the school and that he sustained and escalated this behavior aggressively refusing to calm down over several minutes despite efforts by Defendant officers and by Plaintiff Ware to get him to do so.

Plaintiffs' Exhibit B is very short and displays a more distant perspective of the events depicted from the end of Exhibit E through the arrest. It is extracted from the longer surveillance video filed as Plaintiffs' Exhibit A. In this video, what might be three school officials can be seen hanging back, with the two Defendant officers standing in front of Plaintiff Mello and Plaintiff Ware between them. This video depicts the initiation of the arrest by one officer who grabs Plaintiff Mello's arm and the other officer who leans in and puts an arm over Plaintiff Mello's upper body/shoulder with a hand on his neck/head, bringing him to the ground while backing him out of the lobby into the vestibule. Because of the distance between the camera and

---

[10] Defendant Officers do not dispute that Plaintiff Mello repeatedly demanded that the officers must stand at least six feet away from him nor do they contend that they backed away from him as he demanded. See ECF No. 79-3/102-3 at 31. Rather, as they explained, they held their ground consistent with their stated goal of moving Plaintiff Mello out of the center of the school lobby towards the vestibule and exit to get him out of the school to end the incident. See ECF No. 79-3/102-3 at 30.

the incident, the precise events are difficult to discern, except that this video does not clearly display a chokehold.

Plaintiffs' Exhibit C has both video and sound. Apparently a cell phone video taken by Plaintiff Ware, Exhibit C depicts the events in the vestibule following the takedown as the two officers attempt to handcuff and stop the resistance of Plaintiff Mello who is struggling. As displayed on this video, Plaintiff Mello was not compliant and was presenting aggressive resistance, including that, once he was handcuffed, the officers several times tried to stop using force to restrain him, but Plaintiff Mello continued to aggressively twist, thrash and kick to evade them. This video also appears to show one of Defendant officers finding a knife in Plaintiff Mello's clothing as he was struggling.

The last video is Plaintiffs' Exhibit D; an exterior school surveillance video, it has no sound; it is an excerpt of Defendants' Exhibit G. It displays the two officers walking Plaintiff Mello towards a police vehicle, each holding one of his arms. The events in issue are distant from the perspective of the camera so this video is difficult to interpret. It appears to show that, once the three individuals reached the front of the police vehicle, one of Defendant officers abruptly pushed Plaintiff Mello so that he was bending at the waist face down over the vehicle. This video does not clearly display that Plaintiff Mello was "[s]mashed" but it does show that his feet left the ground. ECF No 79-2/102-2 at 1. With no sound and the distance between the camera and the events in issue, the Court is unable to ascertain from the video whether Plaintiff Mello was, or was not, engaged in verbal and physical resistance, as Defendant Rocchio alleges. ECF No. 89-2/114-2 at 77.

**III.    Analysis**

13

The Court need not linger long – because fact issues abound, I recommend that this case needs to proceed to a fact finder and that Plaintiffs' motion for summary judgment (ECF No. 79/102) should be denied. In particular, having watched them carefully, I find that the videos on which Plaintiffs rely do not utterly discredit Defendants' version of the events; to the contrary, when viewed in the light most hospitable to Defendants and indulging all reasonable inferences in their favor as the law requires, Quintana-Dieppa, 130 F.4th at 7, I find that these videos are susceptible of the interpretation presented by Defendants, including that Plaintiff Mello's disorderly conduct was seriously disruptive and frightening, potentially endangering children and staff at a public school during school hours so that, although the crimes (disorderly conduct and possession of illegal knives) are misdemeanors, their severity in context was significant, and that Plaintiff Mello's aggressive and persistent resistance during and after arrest justified the extent of the force that Defendants deployed. See Graham, 490 U.S. at 396 (reasonableness of force depends on such factors as severity of crime, degree of active resistance and nature of force used). Thus, this case is far from the circumstance described in Scott, where the nonmovant's interpretation was so thoroughly discredited by the video evidence as to be labeled as "visible fiction." Scott, 550 U.S. at 381. Put differently, I find that, mindful of the entirety of the record presented, including the videos, a reasonable fact finder could find in favor of Defendants. Therefore, a trial is needed to resolve these disputed facts.

Regarding Plaintiffs' request for judicial notice (ECF No. 96/121), to the extent that it asks the Court to accept the videos as authentic depictions from various perspectives of the events in issue, the request is granted. This proposition is not disputed by Defendants, who also

14

rely on several of the same videos and pointedly do not object to the request to this extent.[11] Thus, I have accepted these videos as competent evidence at the summary judgment phase and carefully considered them as described above. To the extent that the request for judicial notice seeks to require the Court to adopt a particular interpretation of the videos, it is denied.

Regarding Plaintiffs' motion to strike improper evidence and arguments (ECF No. 95/120), the Court has considered each of six categories of evidence that Plaintiffs contend should be stricken. Beginning with the last one (factual disputes lacking evidentiary citations), Plaintiffs somewhat disingenuously argue that Defendant failed to provide record citations to support any of their factual disputes, which the Court assumes (because Plaintiffs have not specified) is intended to mean Defendants' Statements of Disputed and Additional Undisputed Facts.[12] Finding this to be untrue, this aspect of the motion to strike is denied. Next, Plaintiffs seek to strike from the summary judgment record excerpts from the depositions of Plaintiffs and of the mother of Plaintiff Mello's child; as grounds, they appear to contend that Defendants somehow had a duty to supply Plaintiffs with copies of the complete transcripts before being permitted to rely on them. Because the law imposes no such duty, these aspects of the motion to strike are denied. Next, Plaintiffs challenge reliance on Defendant Arruda's statements regarding what the child's mother told him during his call to her; they contend that this is improper hearsay that may not be considered at the summary judgment phase. The problem is that the child's mother's declarations[13] (that she would "allow[]," Plaintiff Mello to remove the child to keep the

---

[11] Defendants point out – correctly – that Plaintiffs' request for judicial notice was not necessary in that videos like these whose authenticity is not in issue do not require "judicial notice" to be seriously considered at the summary judgment phase of the case.

[12] It is unclear what Plaintiffs seek to strike in reliance on this argument. Because the argument is unfounded, there is no need for the Court to consider the matter further.

[13] Defendants also rely on another declaration by the child's mother – that she and Plaintiff Mello are the child's parents. ECF No. 114-3 at 2. This is not hearsay because it is based on her sworn deposition testimony.

peace and that there had been a similar incident resulting in Plaintiff Mello's arrest at another school) are not presented for the truth but rather to establish that Defendant Arruda heard them and used the information as he understood it in dealing with the disruption being caused by Plaintiff Mello. ECF No. 79-3/102-3 at 30; 89-2/114-2 at 2. Relatedly, Plaintiff Mello contends that the Court should strike references to Defendants being made aware of and considering a "similar incident," ECF No. 79-3/102-3 at 34 ("[h]e did this before"), resulting in Plaintiff Mello's arrest at another school, because the "prior arrest . . . was later disposed of by filing and subsequently expunged." ECF No 95/120 at 2. As Defendants correctly argue, expungement "does not and cannot undo historical facts or convert once-true facts into falsehoods." Martin v. Hearst Corp., 777 F. 3d 546, 551 (2d Cir. 2015). Thus, neither the deposition excerpts nor the out-of-court declarations of the child's mother should be stricken.

Finally, Plaintiffs ask the Court to strike Defendants' unsworn expert report, which was included with the summary judgment materials. See ECF No. 89-2/114-2 at 4. Some courts in this Circuit have held that an unsworn expert report is not cognizable at the summary judgment phase, unless it has been supplemented with a declaration affirming its content under penalty of perjury. Watts v. Liberty Mutual Personal Insurance Co., Civil Action No. 23-12845-BEM, 2025 WL 2163913, at *2 & n.5 (D. Mass. July 30, 2025). Others have permitted consideration of an unsworn expert report because the expect can testify at trial nullifying any hearsay objection. Willis v. Rio Mar Resort - MTG Co., LLC, Civil No. CV 21-1515 (FAB), 2023 WL 5899911, at *1 (D.P.R. Sept. 11, 2023). Because the Court does not need to consider the expert report to find that the factual disputes preclude the entry of summary judgment, there is no need for the Court resolve this legal question. Accordingly, this aspect of the motion to strike is granted to the

limited extent that the expert report need not be considered at this phase of the case to resolve the pending motion.[14]

For all of these reasons, the motion to strike is being granted in part and denied in part by separate text order.

## IV.   Conclusion

Based on the foregoing, I recommend that Plaintiffs' motion for summary judgment (ECF No. 79/102) be denied.  Also based on the foregoing, by separate text orders, Plaintiffs' request for judicial notice (ECF No. 96/121) and Plaintiffs' motion to strike (ECF No. 95/120) are granted in part and denied in part.  As to the summary judgment recommendation, any objections to this Report and Recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this Report and Recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 9, 2025

---

[14] This ruling has no impact on the admissibility of the expert's opinions or testimony at trial.