UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOSHUA MELLO and RACHEL WARE,
   Plaintiffs,

v.                     C.A. No. 1:23-cv-00479-JJM-PAS
                         (consolidated with 1:23-cv-00480-JJM-PAS)

JOHN ROCCHIO, and EDWARD ARRUDA,
   Defendants.

**PLAINTIFFS' OBJECTION TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

**Introduction and Standard.** Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the Court must conduct de novo review of the specific portions of the R&R to which objection is made. Plaintiffs object in full. The R&R (1) permits Defendants to use Rule 12(c) as a second, out-of-time attempt to re-litigate issues already resolved at Rule 12(b) (2/8/24); (2) miscredits defense characterizations over the operative pleadings and docket; (3) penalizes Plaintiffs for amending only after the Court itself invited a motion; (4) resolves factual disputes (including video inferences) at a futility stage; and (5) repeats sanctions rhetoric without Rule 11 process. The Court suggested that Plaintiffs seek leave to amend based on newly discovered facts, while expressly noting that allowance was not guaranteed. Plaintiffs did so in direct response to the Court's guidance. The R&R concludes that allowance would cause undue prejudice to Defendants. Respectfully, any claimed prejudice flows not from Plaintiffs' decision to amend, but from the procedural posture created by Defendants' own motion practice, which prompted the need for amendment in the first instance. This should have been addressed over a year ago

1

but counsel Scott-Benevides moved forward with answering the amended complaint and moved into discovery.

**I. Rule 12(c) Was Improperly Used as a Second 12(b) and to Re-litigate Settled Issues**

**A. Law-of-the-case / waiver.** The Court previously disposed of the Heck-barred theories and left Rachel Ware in granted in the order dated 3/13/24. Discovery proceeded; Defendants then answered rather than seek reconsideration or interlocutory review. Only after Plaintiffs filed a motion for summary judgment did new counsel file a Rule 12(c) motion aimed at removing Ware—relitigating what had effectively been resolved at the pleadings phase. A 12(c) motion "judged by the same standard as 12(b)(6)" cannot function as a second attempt to erase claims the Court allowed to proceed absent new law, new evidence, or clear error. That is exactly what happened here. The R&R's own background shows the case had advanced toward trial, with a long-passed amendment deadline, which underscores the procedural unfairness of allowing a late, duplicative 12(c) attack.

**B. The consolidation record and operative pleadings control—not counsel's gloss.** The R&R repeatedly treats Defendants' narrative as if it were the record itself, including the suggestion that Heck-barred claims were still being "surreptitiously" injected. But Plaintiffs consistently maintained that 479's claims remained active (excessive force) and 480's Heck-barred theories were dismissed without prejudice. The R&R acknowledges there is no single clear order laying this out, yet it credits Defendants' view and proposes an expansive "make plain" ruling "to end forever" Plaintiffs' position—going well beyond the narrow Ware amendment question.

**C. Bottom line.** Defendants waived any renewed Rule 12 challenge to Ware by (1) litigating and obtaining the Heck dismissal they sought while not removing Ware, (2) answering and

2

proceeding into merits discovery, and (3) springing a late 12(c) after Plaintiffs filed for summary judgment. The R&R errs by legitimizing that tactic and by faulting Plaintiffs for responding to the procedural posture defense counsel created.

**II. The R&R Misapplies Rule 16(b) and Ignores Rule 15(a)'s Liberal Standard**

**Good cause is shown—and the Court invited amendment.** The R&R concedes the Court allowed Ware to move to amend because her opposition to 12(c) articulated additional facts not previously pled. That invitation itself is the core of Rule 16(b) "good cause," and Plaintiffs acted diligently once the Court opened the door.

**Speculative prejudice is curable.** Any claimed prejudice is speculative and curable. The R&R suggests the SAC would require re-opening discovery and motion practice, yet this can be narrowly tailored through a limited order—one brief deposition of Officer Arruda confined to the Ware-contact issue, optional short expert supplementation, and a targeted summary-judgment window. Trial would not be derailed, and any burden would be minimal and proportionate to the narrowly drafted amendment.

Critically, this posture was not created by Plaintiffs. It was Defendant Attorney Hilton's procedurally improper Rule 12(c) Motion for Judgment on the Pleadings—filed *after* summary judgment—that repositioned the case and forced this amendment. That motion attempted to re-litigate issues already resolved by the Court during the Rule 12(b)(6) dismissal proceedings in early 2023. Because the Court permitted that motion to proceed, equity and procedure require that Plaintiffs be allowed to amend in response.

Good cause therefore exists: the need for amendment arose directly from defense counsel's out-of-order motion practice and the Court's own instruction that Plaintiff Ware amend. Plaintiffs should not be penalized for consequences created solely by defense-driven procedural deviation.

**Rule 15 governs alongside Rule 16.** *Foman*'s "freely give leave" standard applies. Labels like "eleventh-hour" cannot override diligence demonstrated by amending precisely when the Court permitted it. Denying amendment on this record departs from the liberal policy favoring decisions on the merits—especially for pro se litigants.

**Plaintiff Ware's Claims Relate Back as a Matter of Law Under Rule 15(c).** The Report and Recommendation incorrectly concludes that Plaintiff Ware's amended claims do not relate back. Under Fed. R. Civ. P. 15(c)(1)(B), an amendment relates back when it arises from the same conduct, transaction, or occurrence described in the original pleading. Here, Plaintiff Ware's claims arise from the same incident, on the same date, involving the same defendants, and the same nucleus of operative fact described in the initial complaint. They therefore plainly relate back. See Mayle v. Felix, 545 U.S. 644, 664 (2005) (relation back proper where claims share a common core of operative facts); Tiller v. Atl. Coast Line R.R., 323 U.S. 574, 581 (1945) (new legal theory relates back when based on same occurrence). Further, there can be no assertion of surprise or lack of notice. During discovery, Plaintiffs produced a written statement from Ms. Ware detailing the same incident, including her account of being physically grabbed and moved by officers. While Rule 15(c) does not depend on discovery disclosures, this documented account reinforces what the pleadings already established—Defendants were aware, from the outset of this litigation, of the factual basis for Ms. Ware's claims. This confirms that her amended claims arise from the same core events and satisfy the relation-back standard as a matter of law. See

4

Fed. R. Civ. P. 15(c)(1)(B); Mayle, 545 U.S. at 664. Accordingly, the Magistrate's conclusion to the contrary reflects a misapplication of Rule 15(c).

**III. "Futility" Was Found by Resolving Disputed Merits and Credibility**

**A. Fourth Amendment seizure (Torres).** The R&R re-casts the contact with Ware as merely "incidental/minimal" and then treats that factual view as dispositive. But intent and character of the touching are fact questions, not resolved on a Rule 12(b)(6)/futility check. The R&R itself summarizes the SAC's key factual allegation: Arruda "made direct, non-consensual physical contact … by physically pulling or pushing her aside." Whether that was intentional force to restrain/relocate Ware (a *Torres* seizure) cannot be decided against Plaintiffs at this stage by the court's preferred video inference.

**B. Qualified immunity is premature.** QI turns on fact-specific reasonableness and intent. Where the seizure allegation is credited at the pleadings stage, QI cannot defeat amendment.

**C. State-law battery.** Battery requires intentional, non-consensual touching—exactly what Ware alleges. The R&R's "incidental" label cannot replace well-pled facts.

**IV. The R&R's Heck "Make-Plain" Proposal Is Overbroad and Unnecessary**

The R&R recommends a District Court order "to end forever" any suggestion that Heck-barred claims survive "in either case," even while deciding a narrow motion to amend centered on Ware's contact allegation. That sweeping remedy is neither necessary to resolve the amendment nor appropriate to impose through an R&R on a discrete procedural motion. Any Heck clarification should be limited to the prior rulings and should not spill into Ware's independent claims or constrain future amendments supported by a changed posture. Additionally when the

5

order was made about the Heck Bar claims it was only for case 480 and the docket reflects that as there is no order about Heck Bar claims in 479.

Furthermore the Report and Recommendation devotes substantial analysis to claims that are indisputably barred under Heck v. Humphrey, 512 U.S. 477 (1994). Plaintiffs do not dispute the applicability of Heck to those claims at this stage. However, the extended analysis was unnecessary, as the claims must still be included in any amended complaint by operation of law—not because they are viable, but because an amended complaint supersedes the prior complaint and must contain all claims to avoid altering the pleading structure. See Fed. R. Civ. P. 15(a); Krinsk v. SunTrust Banks, 654 F.3d 1194, 1201 (11th Cir. 2011) (an amended complaint replaces the original in its entirety).

Because the amended complaint must stand as a complete pleading, omission of the Heck-barred claims would improperly change the filing instead of amending it. The Court could have briefly acknowledged the Heck Bar and proceeded to address the substantive allegations raised by Plaintiff Ware, which are the operative focus of the amendment. Instead, the disproportionate attention given to claims that cannot progress under Heck diverted the analysis from the issues properly before the Court.

Plaintiffs respectfully submit that judicial economy would have been better served by a brief acknowledgment of the Heck limitation, followed by direct consideration of the non-Heck-barred claims at issue in the amended pleading which only involve Plaintiff Ware.

**V. The R&R Improperly Credits Defense Narrative Over the Docket and Operative Pleadings**

**6**

The R&R asserts Plaintiffs are "surreptitiously" injecting Heck-barred claims through the SAC while simultaneously acknowledging the Court invited Ware to move based on new facts. It also characterizes these cases as "trial-ready" but then faults Plaintiffs for responding to a late Rule 12(c) filing the defense chose to bring which is out of procedure since Plaintiff Ware survived a 12(b) dismissal back in February of 2023. Those internal tensions show the R&R over-weights defense briefing and under-weights the pleadings and prior orders. It often feels as though the Court accepts defense counsel's statements as fact, even when evidence directly contradicts them, while a pro se litigant's assertions are presumed wrong by default. If we are truly incorrect, we ask that the record prove it—with facts, not argument. To date, we have not been disproven by tangible evidence, only by opposing counsel's assertions. We respectfully request rulings grounded in the record, not rhetoric.

**VI. Sanctions Rhetoric Without Rule 11 Process Should Not Be Adopted**

The R&R reprises accusations that Plaintiffs persist in "scurrilous" assertions and threatens sanctions. Sanctions require specific notice and (where party-initiated) a 21-day safe harbor. No such process occurred. The District Judge should decline to adopt any sanctions language in resolving a Rule 15/16 motion; if the Court has concerns, it should issue a separate order identifying exact statements and allow a response. Notably, the Second Amended Complaint does not address the disputes or concerns Plaintiffs have had with defense counsel. Despite this, the Magistrate's Report and Recommendation introduces unrelated issues, which has unnecessarily broadened the scope and conflated matters outside the pleadings.

The R&R's discussion of Plaintiffs' prior motion to disqualify counsel is outside the scope of the Motion for Leave to Amend and has no bearing on the Rule 15/16 analysis before the Court. The

7

merits of statements made in that separate motion are not at issue here, nor are they part of the Second Amended Complaint, which contains no allegations concerning litigation misconduct or attorney disqualification. Plaintiffs unequivocally and unfettered stand by the factual assertions made in their earlier filing, but those matters are distinct and should not influence this ruling.

More troubling, the R&R's approach risks conditioning access to relief on silence and acquiescence—penalizing Plaintiffs for raising legitimate concerns about counsel misconduct or judicial bias. Such treatment effectively aims and intends to chill protected petitioning activity and undermines the First Amendment right "to petition the Government for a redress of grievances" and the Fifth Amendment guarantee of due process. See *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002) (petitioning government cannot be punished merely because it is disfavored or unsuccessful); *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741–42 (1983) (protecting "reasonably based" lawsuits from retaliation). Pro se litigants are especially entitled to be heard without fear that their efforts to hold officers of the court accountable will be recast as sanctionable defiance. See *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

The constitutional guarantee of due process encompasses the right to a meaningful opportunity to be heard before an impartial tribunal. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). When a court implies that continued advocacy or criticism may itself warrant punishment, it erodes that protection and demonstrates that justice is conditioned on deference rather than truth. Plaintiffs do not seek special treatment—only assurance that their filings will be evaluated on the record and law, not on perceived tone or persistence. The proper question before the Court remains narrow: whether amendment is justified and non-prejudicial—not whether Plaintiffs have criticized opposing counsel or judicial conduct/misconduct in prior motions.

**8**

**VII. Pro Se Leniency and Merits-First Preference Warrant Granting Leave**

The First Circuit affords pro se litigants some leniency—especially where a court has flagged a pleading gap and invited a targeted motion to amend. The narrow amendment here (a single, focused contact-seizure allegation) is precisely the kind of refinement Rule 15 exists to permit. Denying leave because the magistrate prefers a different video inference risks reversible error and needless appellate complexity.

**Conclusion**

In sum, the Report and Recommendation rests on procedural irregularities and factual mischaracterizations that, if adopted, would deny Plaintiffs the very fairness and impartiality that the judicial process is meant to guarantee. Plaintiffs have followed the Court's guidance, acted diligently, and sought only the opportunity to clarify their claims within the bounds of the law. The barriers now raised—after discovery, after summary judgment briefing, and after the Court's own invitation to amend—serve no purpose but to silence and discourage legitimate petitioning activity. The Constitution protects every litigant's right to be heard without fear or favoritism. Plaintiffs therefore respectfully urge the District Court to reject the R&R, to permit the proposed amendment, and to reaffirm that justice in this forum remains grounded in the rule of law, equal access, and truth—not in procedural manipulation or selective silence.

**Requested Relief**

Plaintiffs respectfully request that the Court:

1. Reject the R&R;
2. Grant Ware leave to file the SAC limited to her direct-contact claims against Arruda;

9

3. Any potential prejudice is fully mitigated by a narrow case-management order limiting any additional litigation to: (1) an optional, two-hour deposition of Officer Arruda confined solely to the Ware-contact issue; (2) optional, short expert supplementation not exceeding five pages per side; and (3) a single, limited summary-judgment briefing not exceeding fifteen pages and restricted exclusively to the Ware-contact issue. These guardrails prevent expanded discovery, eliminate delay, and foreclose any claim of undue prejudice

4. Decline to adopt any sanctions language and strike this language from the record; and

5. Grant such other relief as is just.

Respectfully submitted,

/s/ Joshua Mello
/s/ Rachel Ware
57 Rolfe Square, Unit 10113
Cranston, RI 02910
kskustomsrideons@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th of November 2025, a copy of the foregoing PLAINTIFFS' OBJECTION TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATIONwas served via the e-filing system and via email to:

Julia K. Scott-Benevides         Kathleen A. Hilton, Esq.
DeSisto Law LLC                  DeSisto Law LLC
(401) 272-4442                   katie@desistolaw.com
julia@desistolaw.com

/s/ Joshua Mello
/s/ Rachel Ware