**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**JOSHUA MELLO,**
    Plaintiff,
    v.
 **JOHN ROCCHIO and EDWARD ARRUDA,**
    Defendants.

 **C.A. No. 1:23-cv-00479-JJM-PAS**

---

**JOSHUA MELLO and RACHEL WARE,**
    Plaintiffs,
    v.
 **JOHN ROCCHIO and EDWARD ARRUDA,**
    Defendants.

 **C.A. No. 1:23-cv-00480-JJM-PAS**

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

*(Fed. R. Civ. P. 11 and 28 U.S.C. § 1927)*

---

# I. INTRODUCTION

Defendants' motion is not a legitimate Rule 11 request—it is the latest in a pattern of threats, harassment, intimidation and retaliation meant to punish Plaintiffs for exposing misconduct, exercising appellate rights, and filing protected complaints. The filing weaponizes Rule 11 to intimidate two pro se civil-rights litigants and whistleblowers in this case, whose pleadings are supported by record evidence and prior administrative findings.

The Court should deny the motion in full and instead sanction defense counsel for bad-faith multiplication of proceedings, distortion of the record, and repeated disregard of this Court's directives.

## II. THE "SAFE-HARBOR" NOTICE DEMANDS EVIDENCE, NOT ADJECTIVES

If Defendants sincerely believe Plaintiffs' filings are "frivolous," the remedy is simple: prove it—with evidence, not adjectives. Rule 11 places the burden squarely on the moving party to show that a challenged paper lacks factual or legal foundation. *Miltier v. Downes*, 935 F.2d 660 (4th Cir. 1991). Conclusory labels such as "irrelevant" or "baseless" are not substantive or a substitute for proof.

Plaintiffs therefore renew their December 13, 2024 good-faith request: produce the original, unaltered discovery materials that Defendants insist are "not hybrid" documents. If Defendants can substantiate their assertions with verifiable, authenticated evidence produced through proper discovery and subject to adversarial testing, then the Court may evaluate whether any claims fail as a matter of law. Plaintiffs do not concede dismissal is appropriate, nor do they waive any appellate rights. Rather, Plaintiffs simply maintain that the truth of the record must be established before any adjudication on the merits can occur. Conversely, if Defendants cannot produce such evidence, this case cannot ethically or constitutionally proceed to trial, and the appropriate path forward would be good-faith resolution through mediation—not sanctions, intimidation, or continued misrepresentation.

Defendants' Rule 11 "safe-harbor" notice is fatally defective for a more fundamental reason: the letter contains no date of drafting or issuance whatsoever, provides no indication of when service occurred, and includes no certificate or statement of service. Although it references a unilateral response deadline ("on or before November 17, 2025"), Rule 11(c)(2)'s twenty-one-day safe-harbor period runs from the date of service of the actual motion—not from an arbitrary deadline chosen by counsel. Without a date on the letter itself or any documentation establishing

when service occurred, there is no way to determine when the 21-day period began, whether proper notice was given, or whether Defendants complied with Rule 11's strict procedural prerequisites. Courts require strict adherence to the safe-harbor rule; an undated or ambiguously served notice is insufficient as a matter of law because it prevents verification of compliance and leaves the nonmoving party—particularly pro se litigants—in an inherently uncertain and prejudicial position. This omission is not a trivial oversight, but instead emblematic of the recurring procedural irregularities and careless litigation practices that have characterized Defendants' conduct throughout this case.

**The Rule 11 Safe-Harbor Letter Is Jurisdictionally Defective and Cannot Support Sanctions**

Even assuming arguendo that Defendants had a substantive basis for sanctions—which they do not—their Rule 11 motion fails for a more fundamental reason: no valid Safe Harbor notice was ever issued. Rule 11(c)(2) requires strict compliance with the procedural prerequisites of service, timing, and notice before a sanctions motion may be filed or considered. Because the Safe Harbor letter is undated, contains no service information, and is unsupported by any certificate or statement of service, the Court cannot determine (1) when service occurred, (2) whether twenty-one full days elapsed before filing, or even (3) whether the Safe Harbor period ever began. This defect is not merely technical—it renders Rule 11 compliance incapable of verification as a matter of law, and the burden of establishing compliance rests solely with the moving party.

Compounding this defect, Defendants did not attach the Safe Harbor letter to their filed motion, depriving the Court of any evidentiary basis to assess compliance. The record therefore contains

no competent evidence establishing the date of service, the triggering of the Safe Harbor period, or that Plaintiffs were afforded the notice Rule 11 requires. Under these circumstances, the Court is without authority to impose Rule 11 sanctions. A Rule 11 motion filed without valid Safe Harbor compliance is a nullity and must be denied on that basis alone.

**Defendants' Duplicative Filings Independently Require Denial of Sanctions**

Defendants' Rule 11 motion is further undermined by their decision to file duplicative sanctions motions in both 1:23-cv-00479 and 1:23-cv-00480, despite the Court's explicit July 16, 2024 directive that "No further extensions of this deadline will be granted" and that filings must occur only in the lead consolidated matter. Defendants ignored that order and instead multiplied proceedings by submitting *the identical sanctions motion* in both dockets, seeking the same relief and asserting the same arguments word-for-word. This is precisely the type of duplicative, wasteful litigation conduct Rule 11 and Local Rules are intended to prevent.

Rather than streamline the case as ordered, Defendants increased the burden on the Court and the parties, forcing Plaintiffs—pro se litigants—to respond twice to the same improper filing. The duplicative motions were not inadvertent; they follow a recurring pattern of Defendants disregarding Court directives while simultaneously accusing Plaintiffs of improper litigation practices. The irony is unavoidable: Defendants seek sanctions for alleged litigation abuse while actively engaging in the very conduct they claim to oppose.

This alone warrants denial. A party cannot violate a Court order, multiply filings, and then seek sanctions based on efficiency and procedure.

**The Sanctions Defendants Request Are Unauthorized Under Rule 11**

Even if Defendants had complied with Rule 11's procedural requirements—which they did not—the sanctions they request are not permitted under Rule 11 as a matter of law. Rule 11(c)(4) limits sanctions to those "sufficient to deter repetition of the conduct," and expressly ties any monetary award to expenses incurred in responding to the specific challenged filing. Defendants instead request:

- attorney's fees unrelated to the challenged filings,

- fees for future filings not yet made,

- pre-filing restrictions,

- mandatory review or approval of Plaintiffs' future submissions,

- dismissal if Plaintiffs file additional motions,

- and the imposition of case-wide litigation controls.

None of these remedies are authorized under Rule 11. Rule 11 does not permit:

- prospective sanctions,

- pre-filing injunctions,

- dismissal based solely on alleged litigation conduct,

- or fee-shifting unrelated to a specific challenged paper.

By requesting sanctions that would restrict Plaintiffs' access to the Court and punish filings not yet made, Defendants convert Rule 11 into a de facto gag order. Their request would require Plaintiffs to seek permission before filing motions, subject their filings to pre-screening or approval, and risk dismissal for raising arguments Defendants disfavor. Such relief is not only beyond the scope of Rule 11—it is constitutionally impermissible. Access to the courts and the right to petition for redress are protected rights, and courts have repeatedly held that filing

restrictions are an extraordinary remedy that may only be imposed after a documented record of extreme abuse and with full procedural safeguards. Defendants identify no such record here, nor could they.

This overbroad request highlights the fundamental defect in Defendants' position: they ask the Court to silence Plaintiffs rather than address the substance of Plaintiffs' evidence and claims. Rule 11 is a narrow deterrent mechanism, not a tool to control litigation strategy, suppress filings, or insulate government actors from accountability. Defendants' attempt to use Rule 11 as a speech restriction underscores the improper purpose behind their motion and demonstrates that their goal is not deterrence, but suppression.

Defendants' request for pre-filing restrictions and mandatory pre-screening also seeks relief that courts reserve for vexatious litigant injunctions, an extraordinary remedy imposed only in the rarest circumstances. Federal courts require multiple safeguards before restricting a litigant's ability to file:

- a documented record of extreme and repeated abusive filings,

- specific factual findings by the Court,

- notice and an opportunity to be heard, and

- narrowly tailored restrictions that do not bar legitimate access to the courts.

Defendants provide none of these prerequisites. Instead, they attempt to obtain the functional equivalent of a vexatious litigant order through a Rule 11 motion—without evidence, without findings, and without the procedural protections required by law. Their request would effectively bar Plaintiffs from pursuing claims, challenging misconduct, or preserving issues for appeal, while permitting Defendants to continue litigating freely. Courts have repeatedly rejected

attempts to bypass the vexatious litigant standard through sanctions motions, recognizing that doing so would create a dangerous precedent enabling parties to silence opponents rather than address the merits of their arguments. Defendants' effort to impose filing restrictions through Rule 11 is therefore procedurally improper and constitutionally suspect.

Defendants' overbroad sanctions request therefore violates Rule 11(c)(4) and provides another independent basis for denying their motion. Defendants cannot weaponize Rule 11 to obtain relief the Rule does not authorize, particularly while simultaneously violating Court orders and multiplying proceedings through duplicative filings.

## Defendants' Systematic Pattern of Misstatements and Vagueness Prevents Any Meaningful Response

Defendants' sanctions motion also continues a systemic pattern of misstatements and vague accusations that deprive Plaintiffs of any meaningful opportunity to respond or correct alleged deficiencies. Rule 11 requires a moving party to identify the specific statement, filing, or representation that is purportedly false or frivolous, and to explain why it violates the Rule. Defendants instead offer sweeping characterizations—labeling Plaintiffs' filings "false," "baseless," "frivolous," "harassing," and "vexatious"—without identifying a single page, paragraph, quotation, or statement to which these labels supposedly apply. Defendants use fourteen different adjectives to avoid providing a single citation, quotation, or page reference supporting their accusations, underscoring that their sanctions request rests entirely on rhetoric rather than record.

This failure is not merely argumentative; it renders the sanctions motion procedurally defective. Plaintiffs cannot withdraw or correct filings when Defendants refuse to identify what language

they claim is sanctionable. Moreover, Defendants' failure to identify a single specific statement, filing, or representation they contend violates Rule 11 creates a due process deficiency that independently bars sanctions. Rule 11's safe-harbor mechanism is premised on the fundamental requirement that the party accused of misconduct be given notice sufficient to permit withdrawal or correction. When the moving party refuses to identify what language is allegedly sanctionable, compliance becomes impossible. Plaintiffs cannot correct, withdraw, or amend filings when Defendants conceal the very statements they challenge. Courts have consistently held that sanctions cannot issue where the accused party lacks notice of the specific conduct at issue, because doing so would transform Rule 11 into a punitive device rather than a corrective one. Rule 11 does not authorize sanctions based on generalized dissatisfaction or conclusory rhetoric, and it cannot be used to punish litigants for filings they have no meaningful opportunity to address. The absence of specificity therefore deprives Plaintiffs of the procedural protections Rule 11 requires and provides yet another independent basis for denying Defendants' motion. Rule 11 does not authorize sanctions based on generalized dissatisfaction or conclusory rhetoric, and courts consistently reject motions that fail to specify the conduct at issue. Without specificity, there is no notice, no ability to cure, and no basis for sanctions. Defendants' refusal to identify specific statements is yet another independent reason their motion must be denied.

### III. PROCEDURAL BACKGROUND

On July 16, 2024, this Court ordered that *"All parties should only be docketing in the LEAD consolidated matter, CA 23-479."* Defendants have since routinely violated that directive by filing exclusively in one docket, misrepresenting consolidation and defining a court order.

Plaintiffs' challenged filings—such as the *Notice of Objection and Preservation of Error* and *Motion to Alter or Amend*—were fact-based submissions intended to preserve judicial error and document evidentiary inconsistencies (including hybrid discovery files, conflicting interrogatories, and undisputable video evidence of force).

Defendants responded not with evidence but with a Rule 11 "safe-harbor" threat letter, serving no corrective purpose and timed coincidentally after Plaintiffs lodged disciplinary complaint against Attorney Julia Scott-Benevides.This chronology reveals motive, not coincidence.

## III. ARGUMENT

### A. Plaintiffs' Filings Are Well-Grounded in Fact and Law

The seriousness of the misconduct underlying Plaintiffs' filings cannot be dismissed as mere disagreement or "frivolous" rhetoric, as Defendants repeatedly claim. In a closely analogous case within the First Circuit, former Lawrence Police Captain Michael Mangan was federally indicted for civil rights violations and submitting false reports after video evidence showed him assaulting a detainee in custody and falsifying the official narrative. Federal prosecutors viewed that conduct—captured on video and contradicted by reporting officers—as sufficiently serious to warrant criminal prosecution. Here, Plaintiffs possess comparable, and in several respects more extensive, evidence of custodial force, injury, and materially altered police narratives, yet Defendants and the Rhode Island Attorney General insist that "no criminal conduct occurred," and now seek to punish Plaintiffs for raising these issues. The contrast underscores that Plaintiffs' concerns are not baseless; they reflect the type of misconduct that has resulted in criminal accountability in this very region.

The Mangan prosecution also demonstrates that when law enforcement misconduct involves custodial force captured on video and materially false reporting, federal authorities routinely treat such conduct as actionable. The only meaningful difference here is not the conduct, but the institutional response. Rather than investigating the inconsistencies in the police narrative, the Rhode Island Attorney General issued a summary conclusion that "no criminal conduct occurred," despite video evidence, altered reports, and sworn testimony now repudiated by Defendants themselves. Defendants then weaponized that conclusion to label Plaintiffs' filings "false" and "frivolous," and now seek sanctions to silence further scrutiny. This disparity highlights a troubling selective tolerance for misconduct and reinforces that Plaintiffs' filings are objectively reasonable and grounded in evidence that, in other jurisdictions, has prompted criminal charges—not sanctions against the reporting party. This comparison alone satisfies Rule 11(b)'s objective reasonableness standard, as filings supported by evidence that has prompted criminal prosecution in comparable circumstances cannot be deemed frivolous as a matter of law.

**Documented Pattern of Manipulating Official Records**

Plaintiffs further object to Defendants' request for sanctions because Defendants' own discovery productions have revealed a documented pattern of manipulating or altering official records, which directly undermines their credibility in bringing such a motion. During discovery, Defendants produced the *approved* police report for the October 21, 2021 arrest. However, Plaintiffs later discovered that the version disseminated to the media and relied upon by the Cranston School Department was not this approved report, but an *unapproved*, unverified draft that contained false and misleading information. This unapproved version was circulated publicly before the approved report was available, contributing to significant reputational harm

and the spread of false information throughout the school community and broader local community. The unapproved police report was also supplied in discovery after Plaintiffs requested access to a PDF that was in an email supplied in discovery.

The fact that the Cranston Police Department released an unapproved report—containing demonstrably inaccurate statements—while withholding the approved and corrected version from the public, raises serious concerns about the integrity of Defendants' record-keeping practices. This conduct mirrors the troubling patterns of document manipulation and "report rewriting" seen in other jurisdictions, such as the well-publicized Mangan misconduct case in Massachusetts, where officers were found to have altered official records to support predetermined narratives. The similarities are not merely historical comparisons; they are directly relevant because Plaintiffs have alleged the same type of ongoing misconduct in this case.

Additionally, the discovery record in this case demonstrates that Defendants have manipulated official records in a manner directly relevant to Plaintiffs' constitutional claims and the integrity of these proceedings. Specifically, Defendants produced the *approved* police report for the October 21, 2021 arrest during discovery, yet it is now clear that the version disseminated to the media, school officials, and community was an *unapproved*, inaccurate draft containing false information. That unapproved report was circulated publicly before the approved version existed in the system, creating a false narrative later relied upon to justify Defendants' actions. The intentional release of an unverified report—while withholding the corrected one—constitutes the same type of document manipulation at issue in the Mangan misconduct matter and reflects an ongoing pattern of altering, withholding, or selectively releasing official records. This conduct goes directly to the constitutional violations at issue, the credibility of Defendants'

representations to the Court, and the broader pattern of bad-faith behavior underlying Defendants' Rule 11 motion.

Accordingly, Defendants' request for sanctions should be denied. Defendants cannot reasonably accuse Plaintiffs of misconduct when the evidence already before the Court demonstrates that critical documents were altered, selectively released, or misrepresented by Defendants themselves during the underlying events and throughout the discovery process.

Rule 11(b) applies an objective-reasonableness test, *Mills v. Brown*, 372 F. Supp. 2d 683 (D.R.I. 2005). Each motion cited by Defendants contained verified exhibits, sworn statements, and evidentiary support. Disagreement with a litigant's conclusions is not sanctionable. *CQ Int'l Co. v. Rochem Int'l, Inc.*, 659 F.3d 53 (1st Cir. 2011).

**B. Defendants Misuse Rule 11 for an Improper Purpose**

The  motion submitted to the courts is textbook intimidation. Rule 11's "safe-harbor" is meant to permit correction, not coerce withdrawal. See *Advisory Comm. Note (1993 Amend.)* and *Roadway Express v. Piper*, 447 U.S. 752 (1980). Targeting indigent pro se civil-rights litigant whistleblowers with additional sanctions which aims to threaten and suppress filings is itself an "improper purpose" under Rule 11(b)(1).

**C. The October 8 Order Made No Factual Findings of "Falsity"**

Defendants repeatedly misstate that the Court "found" Plaintiffs' allegations false. No evidentiary hearing occurred, and no findings were entered under Rule 52(a). Characterizing dicta as adjudicated fact violates counsel's duty of candor, R.I. R. Prof. Cond. 3.3(a)(1).

**D. Plaintiffs Acted in Good Faith to Preserve Judicial Error**

Plaintiffs' filings seek appellate clarity, not harassment. Under *Haines v. Kerner*, 404 U.S. 519

(1972), *pro se* litigants are entitled to liberal construction.

**E. Plaintiffs Should Not Be Sanctioned for Speaking the Truth**

Sanctioning Plaintiffs for presenting evidence-based facts would be improper. Defendants have

not disproven a single statement we have made—because they cannot. The courts and

Defendants simply calling our assertions "false" does not make them false. It is an opinion, not a

showing under Rule 11. We stand firmly and steadfast on what we have submitted.

What is sanctionable is Defendants' strategy of threatening Rule 11 in bad faith,

mischaracterizing the record, and expanding these proceedings through avoidance and

misdirection. This conduct falls squarely within 28 U.S.C. § 1927 as unreasonable and vexatious

multiplication of litigation. The Court should admonish counsel to prevent continued misuse of

sanctions as a weapon rather than a corrective tool.

**F. Defendants' Motion Rests on Assertions, Not Evidence**

Defendants' Motion for Sanctions accuses Plaintiffs of filing "frivolous," "irrelevant," and

"unsubstantiated" pleadings. Yet throughout the motion, Defendants never once supply *evidence*

disproving a single factual assertion raised by Plaintiffs. The burden under Rule 11 is on the

moving party to demonstrate a filing's lack of factual or legal foundation—not to rely on

repetition, blanket denials and rhetoric. See *Miltier v. Downes*, 935 F.2d 660 (4th Cir. 1991).

Defendants' assertion that Plaintiffs are "sophisticated litigants" is both inaccurate and fundamentally contradictory to their simultaneous claim that Plaintiffs' filings are "frivolous" and "vexatious." Plaintiffs did not choose to proceed pro se in any forum. In the underlying criminal matter, Mr. Mello is pro se only because he was denied appointed counsel despite repeated requests, leaving him with no legal representation in a case carrying serious consequences. Similarly, in this federal civil-rights action, Plaintiffs requested court-appointed counsel—a request this Court denied, saying we have demonstrated competency to proceed, expressly noting that no right to appointed counsel exists in civil litigation. Plaintiffs never sought to litigate these matters alone; they were forced into pro se status by circumstance, financial hardship, conflicts within Rhode Island's small legal community, and a demonstrable reluctance by practitioners to take cases involving entrenched municipal misconduct. Against this backdrop, Defendants' attempt to weaponize Plaintiffs' involuntary pro se status into an argument for sanctions is profoundly unfair and logically incoherent. Plaintiffs are not "sophisticated" by choice, but rather litigants navigating complex constitutional issues without the benefit of counsel. Rule 11 cannot be contorted into a punishment for the very disadvantage Plaintiffs have been forced to endure.

If Defendants believe the disputed discovery document is not a hybrid, they can easily prove it: produce the signed authenticated original. Plaintiffs made that exact good-faith request in writing on December 13, 2024, and it remains unaddressed. Instead of providing verification, Defendants substitute evidence with accusation—repeating unsubstantiated characterizations and pursuing sanctions as a distraction from the record. We should not be punished for requesting the truth and transparency. Which is something we are not getting in these proceedings.

14

Defendants also continue to misstate the record. Only the *Heck-barred* claims were dismissed in Case No. 480; the remainder of Plaintiffs' constitutional and misconduct claims remain active in 479. **No order exists** dismissing those claims. Yet Defendants repeatedly pretend otherwise and mislead the Court by stating the only claim is use of excessive force.

Equally misleading is the Magistrate's insistence that discovery issues—such as the hybrid document—are "irrelevant." That document and the destruction of the knife evidence while Mr. Mello's appeal was pending hits at the very heart of Plaintiffs' police-misconduct claims. The defense's and courts attempt to re-label material evidence as "irrelevant" exemplifies the gas-lighting that has plagued this case from the beginning.

Even the Magistrate Judge acknowledged "confusion" about the consolidated docket but nonetheless adopted defense characterizations rather than requiring the correct record clarification.

Plaintiffs have said it repeatedly and will say it plainly one more time: no order exists in Case 479 removing any claims. The defense's selective storytelling cannot change the docket.

### G. The Conflict of Interest and Bad-Faith Representation

Defendants further intentionally misrepresent the role of Attorney Julia Scott-Benevides. She was representing Catalano—the very prosecutor accused of misconduct—when she appeared at Mr. Mello's post-conviction relief hearing on December 18, 2023 and met with City Solicitor Christopher Millea. That intersection of representation is not merely "irrelevant," it is a textbook conflict of interest that goes directly to the integrity of the proceedings.

Defendants' repeated claim that Plaintiffs are "confused" is belied by their own conduct: they respond point-by-point to most every factual issue we raise. Their boiler-plate accusations of confusion are nothing more than a rhetorical smokescreen to conceal their failure to address substance. Not once have they produced documentation disproving our claims of document irregularity. The Cranston Police Captain Robertson explained how that document should look and how it was made and the property form given in discovery does not match what he describes , plain and simple. We will continue to point out these irregularities. Prove us wrong.

An official record lacking the Cranston Police crest is not just a "minor formatting or oversight issue"—it is a sign of unauthenticated or altered origin when others were received in a less formal manner and yet retain that office crest. Plaintiffs have consistently requested signed authenticated original copies  yet none has been provided. The defense cannot meet evidence with adjectives and expect the Court to look away.

## H. False Certified Statements and the Appearance of Perjury

One of the clearest indicators of bad-faith litigation conduct in this case is the discovery response in which Defendants—through interrogatories signed under oath by Officer Arruda and certified by Attorney Scott-Benevides—asserted that *Mr. Mello ripped the document*. The video evidence shows the opposite: Mr. Mello did not rip anything. The tear occurred only because Arruda abruptly and aggressively grabbed the form out of Mr. Mello's hand, causing it to rip. Plaintiffs have pointed this out repeatedly as this was a key point used in his October 21, 2021 arrest to charge him with disorderly conduct.

Despite allegedly having reviewed the videos, defense counsel continued to certify this false narrative. Only recently has the law firm shifted its story, now stating that Arruda ripped the

paper, which directly contradicts Defendants Arrunda's testimony given under oath in Mello's trial and the sworn interrogatory answers counsel previously certified.

This raises a serious concern:

If the original answers were signed under oath by Arruda and are contradicted by clear video evidence, then the officer's sworn statements are false. Whether this constitutes perjury is a matter for the appropriate authorities—but it unquestionably constitutes misconduct and false certification under Rules 26(g) and 33(b).

Counsel's willingness to certify discovery they knew (or should have known) was false only reinforces the legitimacy of Plaintiffs' complaints regarding Attorney Scott-Benevides and further undermines Defendants' credibility in bringing any Rule 11 motion.

**The Real Motive—Intimidation, Not Efficiency**

This motion for sanctions is not about conserving judicial resources; it is about intimidation. Defendants want to punish Plaintiffs for insisting on truth and accountability. Plaintiffs have even proposed mediation to resolve this matter in good faith, but Defendants refused—preferring protracted litigation that generates billable hours while perpetuating injustice. Plaintiffs seek resolution, not endless fighting. What they will not accept is silence through fear. Justice demands exposure, not concealment, of misconduct "growing like a cancer" beneath official immunity.

**Improper Personal and Criminal References and Retaliatory Motive**

On page 9, Defendants go beyond calling Plaintiffs "vexatious"—they deliberately inject an unrelated, retaliatory "pending criminal matter" to taint the Court's perception of Mr. Mello and

defame him by insinuation. Rule 11 is not a vehicle for character assaintion, and such references are irrelevant and unfairly prejudicial (see Fed. R. Evid. 404(b), 403). The tactic is especially improper where the underlying allegation has been administratively overturned by EOHHS (Jan. 17, 2025). The Court should disregard and strike these insinuations and treat their inclusion as evidence of improper purpose under Rule 11(b)(1).

Those statements are both irrelevant and misleading. The "pending criminal matter" arose from the same retaliatory campaign by Cranston Police with an investigation launched after Defendant Arruda supplied an unverified video of an alleged incident. In turn the Cranston Police Detectives requested the Violent Fugitive Task Force arrest the plaintiffs. The plaintiffs were then roadside raided at gunpoint in their minivan after leaving Family Court to address that incident and en route to the Sheriff's Department. Demonstrating another excessive use of force by the Cranston Police Department. Plaintiffs were neither violent nor fugitives. Including such events in a Rule 11 motion serves no purpose other than harassment and prejudice, violating R.I. R. Prof. Cond. 4.4(a) and 8.4(d).

**J. Factual Background and Ongoing Retaliatory Prosecution Despite Administrative Exoneration (Clarification Required Due to Defendants' Improper Use of a "Pending Criminal Matter")**

The same "pending criminal matter" referenced by Defendants has already been formally nullified by the Rhode Island Executive Office of Health and Human Services. On January 17 2025, Appeals Officer Lori Stabile issued a written decision (Docket No. Y24-80) that unequivocally cleared Mr. Mello:

*"The Petitioner was not trying to hurt his child, but talk with her. Any marks on the child cannot be proven to be made by the Petitioner. Emotional harm cannot be determined based on the evidence submitted. There is not sufficient evidence to support the DCYF indication of Physical Abuse/Excessive Inappropriate Discipline. Appeal Granted."* [1]

The Appeals Officer's findings further confirm that this incident did not arise from abuse or improper conduct, but from a parent attempting to reestablish contact with his child after being unjustly cut off. As the decision states: *"The parents of the child have joint custody, but it clearly was not being followed… the Petitioner was frustrated by the lack of contact with his child… he had been cut off from her for more than a month… It is undisputed that there was a concerning incident at school involving the child and her phone… and the Petitioner felt strongly that he needed to address the issue because the school contacted him about the phone use."*

This makes the State's continued prosecution—and Defendants' reliance on that collapsed allegation—even more indefensible. The administrative findings show a parent acting reasonably under difficult circumstances, not a person committing abuse.

Rather than honor that exoneration, the Rhode Island Attorney General and Cranston Police have pressed forward with charges that collapse under the reversal—continuing prosecution in defiance of official exculpatory findings. Such persistence evidences retaliatory motive and violates the principles articulated in *Hartman v. Moore*, 547 U.S. 250 (2006) and *Gibson v. Superintendent*, 411 F.3d 427 (3d Cir. 2005).

---

[1] Rhode Island Executive Office of Health and Human Services, Appeal of Joshua Mello, Docket No. Y24-80 (Decision by Appeals Officer Lori Stabile, Jan. 17 2025).

Even after exoneration, when Mr. Mello moved to dismiss the charges under Rule 9.1, the presiding judge refused to review the EOHHS decision labeling them "extraneous"—a mandatory procedural ruling that does not negate the finding of innocence. Defendants' invocation of that still-pending prosecution in this Rule 11 motion thus transforms a cleared citizen into a rhetorical target, underscoring the retaliatory nature of their conduct across forums.

This entire "criminal matter" hinges on Tonya Morena lying to the Cranston Police—lies captured on the SVU interview video and later contradicted under oath in her own deposition in this case conducted by the defense. In that SVU recording, Morena openly states she explicitly instructed the child to "yell and scream to get the cops called," [2] revealing the calculated and manipulative intent behind her report. Morena did not act out of concern; she acted to weaponize law enforcement to further her ongoing campaign of parental alienation and custodial interference while intentionally violating a court order. She then worked in direct collusion with Cranston officers, who seized upon her fabricated narrative to further retaliate against Mr. Mello and his wife. The result was not just a baseless charge—it amplified the abuse inflicted on their daughter and produced what can only be described as a state-aided kidnapping, all based on allegations that the EOHHS Appeals Office has now formally and unequivocally proven false and condemned the Aubin Center's evaluation.

## K. Conclusion and Relief Requested

The contrast here is impossible to ignore. When comparable misconduct—custodial force on a restrained individual, falsified reporting, and the public release of inaccurate police

---

[2] "The child's mother told police that she advised her child to scream at the top of her lungs if she needed help regarding her father because that would be the only way someone would help her." page 7 number 15 under findings of fact in the EOHHS Appeal.

narratives—occurred in the Mangan matter, federal prosecutors responded with criminal charges. In this case, Plaintiffs have uncovered similar, and in several respects more extensive, evidence of misconduct, yet Defendants ask this Court not to address it, but to punish those who exposed it. A sanctions order under these circumstances would not deter abuse of the judicial process; it would deter the reporting of misconduct and reward those who manipulate official records to avoid accountability. Rule 11 was never intended to function as a mechanism for institutional self-protection. To impose sanctions here would signal that government actors may alter records, shift narratives, and retaliate against whistleblowers with impunity, while those who document the truth risk judicial penalty. That is a precedent this Court should firmly reject.

In the end, the issue remains simple: if Defendants believe they possess authenticated, unaltered records that objectively disprove Plaintiffs' claims, they should present that evidence through proper discovery and allow the Court to evaluate it under the appropriate legal standards. Plaintiffs do not concede that dismissal would be appropriate, nor do they waive any rights to challenge such a ruling. Rather, Plaintiffs maintain that no fair adjudication can occur unless the authenticity and completeness of the record is established. If Defendants cannot substantiate their assertions with verifiable evidence, then the appropriate path forward is to engage in good-faith mediation and resolution as a trial will not be fair—not to escalate threats, sanctions, or continued misrepresentation. Nothing in this filing should be construed as consent to dismissal with prejudice or as a waiver of Plaintiffs' appellate rights.misrepresentation.

Defendants' motion epitomizes the misuse of Rule 11—retaliation disguised as procedure. Accordingly, because Defendants failed to strictly comply with Rule 11(c)(2)'s mandatory Safe Harbor requirements, the motion for sanctions is procedurally void and must be denied as a

matter of law. Plaintiffs have acted in good faith, with evidentiary support and administrative exoneration. The Court should:

1. Deny Defendants' Motion for Sanctions in its entirety;

2. Address defense counsel's misuse of Rule 11 and their unreasonable multiplication of proceedings under 28 U.S.C. § 1927, and issue such corrective measures as the Court deems proper to deter further bad-faith tactics;

3. Admonish Defendants' counsel for repeated misrepresentations and disregard of the July 16 2024 order; and

4. Plaintiffs further request that the Court strike those portions of Defendants' motion that reference other civil lawsuits and an unrelated, administratively-overturned criminal matter, as such statements serve only to defame Plaintiff Mello and improperly taint the Court's perception.

5. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Joshua Mello
/s/ Rachel Ware

57 Rolfe Square, Unit 10113
Cranston, RI 02910
kskustomrideons@gmail.com

Exhibit A: EOHHS Appeals decision

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of November 2025, a true and accurate copy of the foregoing was served by email and filed electronically upon:

Kathleen A. Hilton, Esq. and Julia K. Scott-Benevides, Esq.
DeSisto Law LLC
katie@desistolaw.com | julia@desistolaw.com

/s/ Joshua Mello
/s/ Rachel Ware